IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

ROBERT A. SHAHEEN, an individual, and    CASE NO. 3-08-cv-2123-25TEM
PATRICIA S. SHAHEEN, an individual,

       Plaintiffs,

vs.

MORGAN STANLEY & CO. INCORPORATED,
a Delaware company, and MORGAN STANLEY
DW INC., a Delaware Company,

       Defendants.

_____/

## **NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1334, Defendant MORGAN

STANLEY & CO. INCORPORATED, and as successor to MORGAN STANLEY, DW INC.

("Morgan Stanley") gives notice of the removal of the civil action titled Robert A.

Shaheen, an individual, and Patricia S. Shaheen, an individual vs. Morgan Stanley & Co.

Incorporated, a Delaware Company, and Morgan Stanley DW Inc., a Delaware Company,

in the Fourth Judicial Circuit, in and for Duval County, Florida, Case No.: 2008-CA-

001251-XXXX-MA, Division CV-D (the "State Court Action") to the United States

District Court for the Middle District of Florida, whose district and division embraces the

state court where this action is now pending.[1]  Defendant timely files this Notice of

Removal pursuant to U.S.C. §§ 1441(a) and 1446.  As grounds for removal, Morgan

Stanley states:

---

[1]  Plaintiffs named Morgan Stanley & Co. Incorporated and Morgan Stanley DW Inc. as defendants.  These two entities merged in April, 2007 and the successor entity is Morgan Stanley & Co. Incorporated.

## I.

## GROUNDS FOR REMOVAL

1.      On or about January 28, 2008, the above-captioned Plaintiffs filed the State Court Action in the Fourth Judicial Circuit of Florida, in and for Duval County.

2.      On February 12, 2008, Plaintiffs served Morgan Stanley & Co. Incorporated with the Complaint.  A true and correct copy of all process, pleadings and orders which have been served upon Morgan Stanley & Co. Incorporated in the State Court Action is attached as Exhibit A, pursuant to 28 U.S.C. § 1446(a).

3.      This State Court Action may be removed to this Court pursuant to 28 U.S.C. § 1441, which permits removal from state court of any civil action "brought in a State Court of which the district courts have original jurisdiction . . . ."  This is a civil action in which this Court has original jurisdiction under 28 U.S.C. § 1332, which provides that the district courts shall have original jurisdiction over all civil actions in which there is diversity of citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.      At the time the action was filed and the time of filing this Notice of Removal, Plaintiffs were, and are, citizens of the State of Florida.

5.      At the time the State Court Action was filed and at the time of filing this Notice of Removal, Morgan Stanley & Co. Incorporated was, and is, a Delaware corporation with its principal place of business in New York, New York, and as such, is a citizen of the States of Delaware and New York.[2]

---

[2] Prior to the merger, Morgan Stanley DW Inc. was a Delaware corporation with its principal place of business in New York, New York and as such, was a citizen of the States of Delaware and New York.

6.    Therefore, there is diversity of citizenship between the parties.

7.    Further, the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs. Plaintiffs' Complaint on its face alleges a claim for breach of contract in which Plaintiffs allege they were entitled to participate in a Rescission Offer and receive $125,000 plus interest from Morgan Stanley. See Complaint, ¶¶ 38, 42-45. The Complaint specifically alleges that "Morgan Stanley was obligated under the Rescission Agreement to pay the Shaheens $125,000 plus interest at 7%, upon the Shaheens acceptance of the Rescission Offer." Complaint, ¶ 43. The Complaint further alleges that "[t]o date Morgan Stanley has failed to pay the Shaheens pursuant to the terms of the Rescission Agreement and thus, it is a breach of the Rescission Agreement." Complaint, ¶ 44. Therefore, the jurisdiction amount is satisfied on the face of the Complaint.

8.    In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, Morgan Stanley will give written notice of the removal to Plaintiffs and will file a copy of this Notice of Removal with the State Court.

9.    This Notice of Removal is timely under 28 U.S.C. § 1446 because it is filed within thirty (30) days after service of the Complaint on Morgan Stanley & Co. Incorporated, which occurred on February 12, 2008.

10.    As stated above, Defendant Morgan Stanley DW Inc. merged with Defendant Morgan Stanley & Co. Incorporated effective April 2007 prior to filing of this Complaint. Therefore, all Defendants have consented and join in this Notice of Removal.

11.    Morgan Stanley filed this Notice of Removal to ensure timely removal to this Court.  By effecting this Removal, Morgan Stanley does not waive any jurisdictional or other defenses that might be available to it, including (without limitation) those defenses relating to jurisdiction, venue, and service of process, or rights under any contract, including, without limitation, the right to compel arbitration of any dispute or enforcement of a forum selection clause.

**WHEREFORE**, Morgan Stanley respectfully requests that the above action now pending against it in the Fourth Judicial Circuit Court of Florida, in and for Duval County, be removed to this Court.  Morgan Stanley requests that this Court accept jurisdiction of the State Court Action, that the State Court Action be placed upon the docket of this Court for further proceedings the same as though this action originally had been instituted in this Court, and that this Court make such other and further orders as are just and equitable.

Respectfully submitted,

GREENBERG TRAURIG, P.A.

By: _____
Joseph C. Coates, III, Esq.
Florida Bar No. 772860
John D. Perry, Esq.
Florida Bar No. 0639680
777 S. Flagler Drive
Suite 300 East
West Palm Beach, FL  33401
Telephone:  (561) 650-7900
Facsimile:  (561) 655-6222

*Attorneys for Morgan Stanley*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail this 27 day of February, 2008, with proper postage prepaid, properly addressed to:

Alan S. Wachs, Esq.
Chris T. Harris, Esq.
Jennifer M. Coleman, Esq.
VOLPE BAJALIA, WICKES, ROGERSON & WACHS
501 Riverside Avenue, 7th Floor
Jacksonville, Florida 32202

_____
Joseph C. Coates, III

WPB 381,782,544v3 039657.121200

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO. 2008 -CA- 0 0 1 2 5 1    -XXXX-MA
DIVISION:

ROBERT A. SHAHEEN, an individual, and
PATRICIA S. SHAHEEN, an individual,

        Plaintiffs,

**DIVISION CV-D**

v.

MORGAN STANLEY & CO.
INCORPORATED, a Delaware company, and
MORGAN STANLEY DW INC., a Delaware
Company,

        Defendants.
        _____/

## SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this
lawsuit on defendant:

      **MORGAN STANLEY & CO. INCORPORATED**
         **c/o its Registered Agent**
        **CT CORPORATION SYSTEM**
        **1200 S. PINE ISLAND ROAD**
        **PLANTATION, FL 33324**

## IMPORTANT

    A lawsuit has been filed against you. You have 20 calendar days after this summons is
served on you to file a written response to the attached Complaint with the Clerk of the Court. A
phone call will not protect you. Your written response, including the case number given above and
the names of the parties, must be filed if you want the court to hear your side of the case. If you do
not file your response on time, you may lose the case, and your wages, money and property may

1

RECEIVED
FEB 1 2 2008

thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

DATED ON January 28, 2008.

Jim Fuller
As Clerk of Said Court

By: _P Reitz_____
    As Deputy Clerk

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO:
DIVISION: CA-001251        -XXXX-MA'

ROBERT A. SHAHEEN, an individual, and
PATRICIA S. SHAHEEN, an individual,

     Plaintiffs,

v.

MORGAN STANLEY & CO.
INCORPORATED, a Delaware company, and
MORGAN STANLEY DW INC., a Delaware
Company,

     Defendants.

_____/

## DIVISION CV-D

## SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this lawsuit on defendant:

**MORGAN STANLEY DW INC.**
**C/O SECRETARY OF STATE**
**P.O. BOX 6327**
**TALLAHASSEE, FL 32314**

## IMPORTANT

     A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the Clerk of the Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the court. There are other legal requirements. You

1

may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

DATED ON January 25, 2008.



Jim Fuller
As Clerk of Said Court

PEGGY BATES

By:_____
        As Deputy Clerk

2

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
02/12/2008
CT Log Number 513080438

**TO:**    Alita Wingfield, Vice President
Morgan Stanley Law Division
Litigation Department, 1633 Broadway
25th Floor
New York, NY 10019

**RE:**    **Process Served in Florida**

**FOR:**    Morgan Stanley & Co. Incorporated (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Robert A. Shaheen, etc. and Patricia S. Shahee, etc., Pltfs. vs. Morgan Stanley & Co. Incorporated, etc. and Morgan Stanley DW Inc., etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Initial Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Duval County Circuit Court, FL<br>Case # 16-08-CA-1251 |
| **NATURE OF ACTION:** | Breach of Contract - Failure to comply with obligation under certain Rescission Agreement to pay Plaintiff's $125,000 plus interest at 7% upon acceptance of Rescission Offer |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/12/2008 at 13:35 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service |
| **ATTORNEY(S) / SENDER(S):** | Jennifer M. Coleman<br>Volpe, Bajalia, Wickes Rogerson & Wachs<br>501 Riverside Avenue<br>7th Floor<br>Jacksonville, FL 32202<br>(904) 355-1700 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 798373168181<br>Image SOP - Page(s): 57<br>Email Notification, Alita Wingfield Alita.Wingfield@morganstanley.com<br>Email Notification, Barbara Valente Barbara.Valente@morganstanley.com<br>Email Notification, Mel Klusky mel.klusky@morganstanley.com<br>Email Notification, Damian MacDonald Damian.MacDonald@morganstanley.com<br>Email Notification, Crystal Pruden crystal.pruden@morganstanley.com<br>Email Notification, Christopher M Wilson Christopher.M.Wilson@morganstanley.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Donna Moch |
| **ADDRESS:** | 1200 South Pine Island Road<br>Plantation, FL 33324 |
| **TELEPHONE:** | 954-473-5503 |

Page 1 of  1 / IT

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

ROBERT A. SHAHEEN, an individual, and
PATRICIA S. SHAHEEN, an individual,

CASE NO.: 2008-CA-001251-XXXX-MA
Division CV-D

       Plaintiffs,

vs.

MORGAN STANLEY & CO. INCORPORATED,
a Delaware company, and MORGAN STANLEY
DW INC., a Delaware Company,

       Defendants.

_____/

## WITHDRAWAL OF WAIVER OF SERVICE OF PROCESS

On February 21, 2008, Defendant Morgan Stanley DW Inc. ("Morgan Stanley DW")

served a Waiver of Service of Process. Morgan Stanley DW withdraws the Waiver of Service of

Process because it no longer exists as a separate legal entity. Previously, in April 2007 Morgan

Stanley DW merged with Morgan Stanley & Co. Incorporated and Morgan Stanley & Co.

Incorporated is the successor entity. Plaintiffs had previously served Morgan Stanley & Co.

Incorporated on February 12, 2008. Therefore, based on the merger, service was made on

Morgan Stanley & Co. Incorporated and as the successor to Morgan Stanley DW. Therefore, the

waiver as to Morgan Stanley DW has no effect because it was not a separate legal entity at the

time the action was filed.

GREENBERG, TRAURIG, P.A.

_____
Joseph C. Coates III, FBN 772860
777 South Flagler Drive, Suite 300 East
West Palm Beach, Florida 33401
Telephone (561) 650-7900
Facsimile (561) 655-6222

*Attorneys for Morgan Stanley & Co. Incorporated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 27th

day of February 2008 by Federal Express delivery on:

Alan S. Wachs, Esq.
Chris T. Harris, Esq.
Jennifer M. Coleman, Esq.
VOLPE BAJALIA, WICKES, ROGERSON & WACHS
501 Riverside Avenue, 7th Floor
Jacksonville, Florida  32202

_____
Joseph C. Coates, III

*WPB381784580.1-039657.121200 2/27/2008*

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO: *2008-CA-001251-XXXX-MA*

DIVISION:

ROBERT A. SHAHEEN, an individual, and
PATRICIA S. SHAHEEN, an individual,

        Plaintiffs,

v.

MORGAN STANLEY & CO.
INCORPORATED, a Delaware company, and
MORGAN STANLEY DW INC., a Delaware
Company,

        Defendants.

_____/

## INITIAL COMPLAINT

Plaintiffs Robert A. Shaheen and Patricia S. Shaheen (collectively, the "Shaheens")

hereby sue Defendants Morgan Stanley & Co. Incorporated and Morgan Stanley DW Inc.,

(collectively, "Morgan Stanley"), and in support thereof alleges as follows:

## PERSONAL JURISDICTION AND VENUE

1.    This is an action for damages in excess of $15,000, exclusive of interest, costs and

attorneys' fees.

2.    *The Shaheens are individuals residing in the State of Florida.*

3.    Morgan Stanley & Co. Incorporated is registered to do business in Florida.

Morgan Stanley & Co. Incorporated is a corporation organized and existing under the laws of the

State of Delaware with is principal place of business in New York, New York. Morgan Stanley

is in the business of selling securities nationwide. Morgan Stanley conducts extensive business

in the State of Florida, including conducting business in Duval County, Florida.

4.     Morgan Stanley DW Inc. is a corporation organized and existing under the laws of the State of Delaware with is principal place of business in Purchase, New York, and as of January 16, 2007, in the business of selling securities in the State of Florida.

5.     The Court has personal jurisdiction over Morgan Stanley DW Inc., pursuant to Florida's long-arm statute, section 48.081, Florida Statutes, as a result of Morgan Stanley DW Inc. operating, conducting, engaging in, or carrying on business or business activities throughout the State of Florida, including presenting an offer to rescind specified securities transactions to the Shaheens in the State of Florida.

6.     This action arises from a breach of a securities rescission contract between the Shaheens and Morgan Stanley that was entered into between the parties related to a securities rescission offer made by Morgan Stanley to the Shaheens in the State of Florida and where performance of the contract was to take place in the State of Florida.

## GENERAL ALLEGATIONS

7.     On or about June 1, 2000, pursuant to a securities offering made by Morgan Stanley, the Shaheens purchased 10,000 shares of an entity called Petra Diamonds Limited.

8.     On or about June 2, 2000, also pursuant to an offering made by Morgan Stanley, the Shaheens purchased an additional 115,000 shares of Petra Diamonds Limited.

9.     As a result of the foregoing, the Shaheens purchased a total of 125,000 shares in Petra Diamonds Limited from Morgan Stanley (collectively, the "Petra Shares").

10.    Upon information and belief, Petra Diamonds Limited was in or around June 2000 attempting to engage in the business of diamond mining in the continent of Africa.

11.    Shortly following the Shaheens' purchase of the Petra Shares, upon information and belief, Petra Diamonds Limited attempted to acquire an entity named Oryx Natural Resources, however, the acquisition apparently failed.

12.    Upon information and belief, the executive director of Petra Diamonds Limited held an ownership interest in Oryx Natural Resources, which entity held a concession for diamond mining in the continent of Africa.

13.    Upon information and belief, as a result of the failed acquisition, the trading of Petra Diamonds Limited's shares on the London AIM market was suspended.

14.    Robert Shaheen thereafter contacted Petra Diamonds Limited's executive director and requested an explanation for the sudden loss of the Shaheens' investment in Petra Diamonds Limited, having only recently made that investment.

15.    The executive director of Petra Diamonds Limited offered to exchange the Shaheens' Petra Shares for an equivalent number of shares in Oryx Natural Resources, the entity that Petra Diamonds Limited had attempted to acquire.

16.    In follow up to that offer, on or about October 15, 2000, a representative of Oryx National Resources wrote the Shaheens stating that it was issuing Oryx Natural Resource shares to the Shaheens in exchange for the Petra Shares.  A duplicate of the October 15, 2000 letter is attached at **Exhibit "A."**

17.    In order to obtain their shares in Oryx Natural Resources the Shaheens were instructed to transfer the Petra Shares to an entity called Arctic Investments, which was apparently owned by the executive director of Petra Diamonds Limited.

18.     In reliance on the October 15, 2000 letter from Oryx Natural Resources, the Shaheens complied and transferred their Petra Shares to Arctic Investments and expected to thereafter receive an equivalent number of shares in Oryx Natural Resources.

19.     However, following October 15, 2000, having already conveyed the Petra Shares to Artic Investments, and not having received their promised interest in Oryx Natural Resources, the Shaheens engaged in unsuccessful efforts to obtain proof of their ownership in Oryx Natural Resources.

20.     As a result of the foregoing, following the October 15, 2000 letter, the Shaheens were under the belief that their investment in Petra Diamonds Limited was lost.

### The Rescission Offer

21.     Then, on or about January 16, 2007, Morgan Stanley made a recession offer to the Shaheens regarding the Petra Shares.  A true and correct duplicate of the Rescission Offer is attached hereto and incorporated herein as **Exhibit "B."**

22.     Morgan Stanley, as evidenced by the Rescission Offer, apparently violated Florida's blue sky laws, or Federal securities laws, or both, when it offered the Petra Shares for sale in Florida to the Shaheens.

23.     At the time the Shaheens received the Rescission Offer; they had long since *transferred their Petra Shares to Arctic Investments, but had not received their shares in Oryx* Natural Resources.  Thus, by January 2007, the Shaheens continued to believe their investment in Petra Diamond Limited to be a total loss.

24.     Following receipt of the Rescission Offer, the Shaheens prepared the Acceptance Form that was included within the Rescission Offer, and timely returned that document to Morgan Stanley accepting the Rescission Offer thereby forming the "Rescission Agreement".  A

true and correct duplicate of the Acceptance Form is attached hereto and incorporated herein as **Exhibit "C."**

25.    Morgan Stanley thereafter requested that the Shaheens provide additional documentation regarding the Shaheens' ownership interest, or the disposition thereof, of the Petra Shares.

26.    Having never received confirmation from Oryx Natural Resources regarding their alleged interest in that company, the Shaheens were at the time of the Rescission Offer likewise in doubt as to the status of their ownership in Petra Diamonds Limited.

27.    The Shaheens, in an effort to document their former ownership in Petra Diamonds Limited, timely provided Morgan Stanley with a brokerage statement showing their ownership at one time of the Petra Shares.

28.    The foregoing was apparently insufficient to Morgan Stanley, who requested additional information from the Shaheens. At no time during this exchange between the Shaheens and Morgan Stanley did Morgan Stanley advise the Shaheens it was rescinding the Rescission Offer, and instead, by virtue of its conduct in requesting additional information, Morgan Stanley was clearly holding the Rescission Offer open to the Shaheens.

29.    The Shaheens diligently sought to acquire additional documentation regarding their ownership of and the disposition of the Petra Shares, including having a representative physically travel to London, England and then to the Dubai to trace the disposition of the Petra Shares.

30.    The Shaheens thereafter timely provided the additional documentation they had obtained to Morgan Stanley, including providing Morgan Stanley with duplicates of the "Capita Registrars" account detail, showing ownership history of the Petra Shares. A true and correct

duplicate of Capita Registrars account detail is attached hereto and incorporated herein as **Exhibit "D."**

31.     Despite the foregoing, Morgan Stanley refused to perform its obligations under the Rescission Agreement.

32.     The Shaheens, despite Morgan Stanley's refusal to perform its obligations under the Rescission Agreement, continued their research into the ultimate disposition of the Petra Shares and their promised but not delivered shares in Oryx Natural Resources.

33.     The records thereafter obtained by the Shaheens March 2007 *suggest* that the Shaheens' Petra Shares were indeed transferred to an entity called Artic Investments, and that the Shaheens were allegedly conveyed an interest in Oryx Natural Resources.

34.     Heretofore, other than the October 15, 2000 letter, the Shaheens had never seen any documentation regarding the final disposition of the Petra Shares or the status of their alleged ownership interest in Oryx Natural Resources.

35.     As a result of the Shaheens' investigation, the Shaheens obtained documentation evidencing they were no longer the registered owners of the Petra Shares at the time of the Rescission Offer, thus the Shaheens had no ability to deliver the Petra Shares to Morgan Stanley.

36.     Further, other than what appears to be an ex post facto share certificate that purports to represent that the Shaheens own an interest in Oryx Natural Resources, which entity is upon information and belief bankrupt, the Shaheens have never received anything of value *from their initial investment in the Petra Shares.*

37.     Therefore, as to the initial $125,000.00 that the Shaheens invested in Petra Diamonds Limited, the Shaheens have nothing of value to show for it.

38.    As a result of the foregoing, the Shaheens timely accepted Morgan Stanley's Rescission Offer, and Morgan Stanley was therefore obligated to pay the Shaheens $125,000 plus interest at 7%, pursuant to the terms thereunder.

39.    As of the date of this Complaint, Morgan Stanley has failed to pay the Shaheens pursuant to the terms of the Rescission Agreement and is therefore in breach of same.

40.    The Shaheens have hired the undersigned law firm and is obligated to pay the firm a reasonable fee for its services.

## COUNT I
### (Breach of Contract – Rescission Agreement)

41.    The Shaheens hereby reallege and incorporate by reference paragraphs 1 through 38, as if fully set forth herein.

42.    The Shaheens sue Morgan Stanley for breach of contract.

43.    Morgan Stanley was obligated under the Rescission Agreement to pay the Shaheens $125,000 plus interest at 7%, upon the Shaheens acceptance of the Rescission Offer.

44.    To date, Morgan Stanley has failed to pay the Shaheens pursuant to the terms of the Rescission Agreement and thus, it is a breach of the Rescission Agreement.

45.    The Shaheens have suffered damages as a result of Morgan Stanley's breach of the Rescission Agreement.

WHEREFORE, Plaintiffs Robert A. Shaheen and Patricia S. Shaheen demands judgment against Defendants Morgan Stanley & Co. Incorporated and Morgan Stanley DW Inc. for breach of contract, together with all applicable interest and cost, and for such other relief as the Court finds necessary.

DATED this _28_ of January, 2008.

VOLPE, BAJALIA, WICKES
ROGERSON & WACHS

By: _____
Alan S. Wachs
Florida Bar No.: 980160
Chris T. Harris
Florida Bar No.: 107115
Jennifer M. Coleman
Florida Bar No.: 13368
501 Riverside Avenue, 7th Floor
Jacksonville, Florida 32202
(904) 355-1700
(904) 355-1797 (facsimile)

Attorneys for Plaintiffs, Robert A.
Shaheen and Patricia S. Shaheen

8

# Exhibit "A"

FROM : MERRILL LYNCH                FAX NO. : 9046346132            Oct. 19 2000 09:06AM P2



15th October 2000.

Mr Scott King,                                    Fax : 0019046346132
Merrill Lynch,
Florida.

## Reference : Mr Shaheen.

Dear Mr King,

With reference to our conversation of last week, I confirm our intention to exchange Mr Shaheen's equity in Petra Diamonds Ltd for shares in Oryx Natural Resources.

Please can you confirm to the below address in Oman, in writing, the current holdings of Mr Shaheen in Petra, and the average price at which they were purchased or alternatively the total purchase price.

Please also confirm the name of the company or individual to which the Oryx Natural Resources equity should be issued.

I will thereafter arrange for the transfer of the equivalent Oryx Natural Resources shares to your client or his nominee.

The Petra shares that are being exchanged should be transferred to our company, Arctic Investments, and the certificates sent to the below address in Oman.

I look forward to hearing from you shortly.

Yours sincerely,

Geoffrey White.
Deputy Managing Director.

---

Cayman Islands registered company number CR-39710 at Piccadilly Centre, PO Box 30688 SMB, Grand Cayman, Cayman Islands. BWI.

Correspondence to : PO Box 18, Ruwi, Postal Code 112, Sultanate of Oman.

Exhibit "B"

# Morgan Stanley

January 16, 2007

As a result of operational errors, Morgan Stanley may have sold you securities in transactions that did not satisfy applicable registration requirements under state securities laws and regulations. The relevant transactions are described on the enclosed colored form. As a result, Morgan Stanley is offering to rescind these transactions in accordance with the terms of the enclosed Offer Document.

Please read the enclosed documents carefully as they set out the requirements for this offer, including the **30 day** deadline. You will need to take prompt action to locate your securities if they are no longer held at Morgan Stanley.

To help you understand this offer, we have established a dedicated team of Client Service Representatives. They can answer any questions you may have about the procedures you must follow to accept the offer, and provide an estimate of any payment you will receive if you accept the offer or the market price of your securities. You can contact our Client Service Representatives at 1-866-451-3952.

You are not obligated to accept this offer, which is made only in accordance with terms set forth in the Offer Document, and you are not required to take any action unless you wish to accept the offer. In deciding whether to accept or reject the offer, you should carefully read the enclosed documents. Due to potential conflicts of interest, your Financial Advisor may not make any recommendations to you about the offer. You should, therefore, make this determination on your own or seek independent advice. Additionally, Morgan Stanley cannot take any action to accept the offer on your behalf, even if it is authorized to exercise discretion with respect to your account in the ordinary course.

We sincerely apologize for any inconvenience this offer may cause you, and thank you for your business with our firm.

Sincerely,

Noland Cheng
Managing Director
Global Wealth Management Operations

Investments and services are offered through Morgan Stanley DW Inc. and Morgan Stanley & Co. Incorporated, members SIPC.

# RESCISSION OFFER

This document presents an offer to rescind (the "Rescission Offer") specified transactions in the securities described herein (the "Securities").

Morgan Stanley DW Inc. ("MSDW") or Morgan Stanley & Co. Incorporated ("MS&Co.") (collectively or individually "Morgan Stanley"), was the broker for the resale of the Securities. We have determined that we may have sold Securities to you in transactions that did not satisfy applicable securities registration requirements under relevant state securities laws. As a result, Morgan Stanley is making the Rescission Offer on behalf of itself, and its affiliates.

The Rescission Offer is made only to those who purchased Securities from Morgan Stanley and only for a period determined by the law of your state of residence (including Puerto Rico and the District of Columbia, hereinafter "state"), ending December 31, 2005, that did not satisfy applicable requirements under relevant state securities laws. We refer to such purchases as "Eligible Transactions" and to those who purchased Securities in Eligible Transactions as "Offerees."

Our records indicate that you purchased Securities from Morgan Stanley in an Eligible Transaction. We have also enclosed a colored acceptance form that lists each of your Eligible Transactions (the "Acceptance Form").

Offerees who continue to hold Securities and accept this Rescission Offer will receive, in exchange for the delivery of their Securities, the amount they originally paid for them, less any distributions paid on those Securities by the relevant issuers. Offerees who have sold their Securities at a loss and accept this Rescission Offer will receive the amount originally paid for them, less any distributions paid on those Securities by the relevant issuers, less the proceeds from the sale of such Securities. Offerees who have sold their securities at a profit, but that profit was less than the amount available under this Rescission Offer because the applicable interest rate determined by the Offeree's State is greater than the market return to the Offeree on the securities sold, and who accept this Rescission Offer, will receive the amount originally paid for the Securities, less any distributions paid on those Securities by the relevant issuers, less the proceeds from the sale of such Securities. Offerees will receive interest as provided herein. We refer to the payments to be made to Offerees who validly accept the Rescission Offer as "Rescission Offer Payments" and their calculation is described in more detail under "The Rescission Offer—Rescission Offer and Rescission Offer Payments."

The Rescission Offer expires the later of 30 days from receipt of the Offer or 5:00 p.m., EST, on February 20, 2007 (such date and time, as they may be extended, the "Expiration Date"). We expect to send Rescission Offer Payments to those who validly accept the Rescission Offer within 30 days after the close of the offering, or earlier if required by state law (the "Payment Date"). No broker's, dealer's or underwriter's commissions, fees or discounts will be paid in connection with the Rescission Offer.

IF YOU ACCEPT THE RESCISSION OFFER FOR ANY SECURITIES, YOU WILL NOT BE ENTITLED TO ANY PAYMENTS RELATING TO THOSE SECURITIES BEYOND THOSE YOU RECEIVE IN THE RESCISSION OFFER.  YOUR ACCEPTANCE OR FAILURE TO AFFIRMATIVELY REJECT THE RESCISSION OFFER WITHIN THE DESIGNATED TIME PERIOD MAY TERMINATE ALL OF YOUR RIGHTS AGAINST MORGAN STANLEY.

You should carefully consider the risk factors beginning on page 12 hereof before deciding to accept or reject the Rescission Offer.

Neither the Securities and Exchange Commission (the "SEC"), nor any state securities commission has approved or disapproved of the Rescission Offer or determined whether this document is truthful or complete. Any representation to the contrary is a criminal offense.

This Rescission Offer, and the securities to which it relates, has not been approved, disapproved, endorsed, or recommended by any Federal or State securities administrator or commission. You should make your own independent decision whether the Rescission Offer meets your investment objectives and risk tolerance level. No independent person has confirmed the accuracy or truthfulness of this disclosure document, or whether it is complete. Any representation to the contrary is illegal.

**MORGAN STANLEY**

*January 16, 2007*

In this document, "Morgan Stanley", "we", "us" and "our" refer to MSDW, MS&Co. or both, as the context requires.

**If you have questions or require additional information about the Rescission Offer, you may contact us at 1-866-451-3952.**

The Rescission Offer constitutes an offer, not an obligation, and is being made solely by Morgan Stanley as described herein. You are not required to take any action unless you wish to accept the Rescission Offer. If your acceptance of the Rescission Offer is not received in good order by the Expiration Date, you will be deemed to have rejected the Rescission Offer.

Due to potential conflicts of interest, none of Morgan Stanley, its respective officers, directors or employees (including any Morgan Stanley employees who may manage, or advise you about, your investments) or the Rescission Agent may make any recommendations to you with respect to the Rescission Offer. Morgan Stanley will not take any action to accept the Rescission Offer on your behalf, even if it is authorized to exercise discretion with respect to your account in the ordinary course.

In deciding whether to accept or reject the Rescission Offer, you should carefully read this document. Morgan Stanley has not authorized anyone to provide you with different information. You should also carefully review, if available, any reports, proxy statements or other information filed with the SEC by the issuers or guarantors of the Securities subsequent to the time you purchased them. Such reports, proxy statements and other information are available to the public over the Internet at the SEC's website at http://www.sec.gov. You may also read and copy any of these documents at the SEC's public reference room at Room 1024, 450 Fifth Street, N.W., Washington, D.C. 20549. Please call the SEC at 1-800-SEC-0330 for further information about the public reference room. In the case of Securities that are debt securities or issued by a trust, Offerees should also consider any notices or other reports by the trustee pursuant to the applicable indenture, trust agreement or other governing instrument. Offerees are advised that none of the issuers or guarantors of the Securities (other than Morgan Stanley) is involved in making the Rescission Offer.

**Morgan Stanley is not making an offer to sell or an offer to buy the Securities in any state where the offer is not permitted. You should read this document carefully before deciding to accept or reject the Rescission Offer and should not assume that the information in this document is accurate as of any date other than the date on the front cover of this document.**

2

# TABLE OF CONTENTS

**Page**

Questions and Answers About the Rescission Offer .................................................................. 4
Risk Factors ........................................................................................................................... 13
The Rescission Offer.............................................................................................................. 16
State-Specific Information...................................................................................................... 23
Supplemental U.S. Federal Income Tax Considerations ......................................................... 26
Additional Information .......................................................................................................... 28
Annex A:  Examples of Calculation of Rescission Offer Payment .......................................... A-1

## QUESTIONS AND ANSWERS ABOUT THE RESCISSION OFFER

**Why is Morgan Stanley making the Rescission Offer?**

Morgan Stanley may have sold Securities to you in transactions that did not satisfy applicable securities registration requirements under relevant state securities laws. As a result, Morgan Stanley is making the Rescission Offer on behalf of itself and its affiliates. Morgan Stanley believes that conducting the Rescission Offer should prevent you in the future from requiring it or its affiliates to repurchase your Securities or maintaining an action against any of them in connection with the Securities that you purchased.

The Rescission Offer is not an admission by Morgan Stanley or its affiliates that any of them knowingly failed to comply with the requirements of any state securities laws, nor is it a waiver by any of them of any applicable statutes of limitation or other defenses to liability that any of them may have.

**Which Securities is Morgan Stanley proposing to repurchase?**

The Rescission Offer is made only to those who:

- purchased Securities from Morgan Stanley on or before December 31, 2005, during a prior period determined on a state-by-state basis, in transactions that did not satisfy applicable requirements under relevant state securities laws.

Each of your Eligible Transactions is listed in the colored Acceptance Form that accompanies this document.

**Am I eligible for the Rescission Offer if I purchased the Securities from a broker other than Morgan Stanley?**

No. You are not eligible for the Rescission Offer if you purchased the Securities from a broker other than Morgan Stanley.

**What will I receive if I accept the Rescission Offer?**

If you accept the Rescission Offer with respect to Securities that you continue to hold, you will receive:

- the amount you originally paid for those Securities, including any related brokerage commissions,

- less any Distributions paid on those Securities by the relevant issuers,

- plus interest at the Applicable Interest Rate on the amount you originally paid for the Securities from and including the settlement date of your purchase of the Securities up to, but not including, the Payment Date. The interest rate applied to your Eligible Transaction(s) is provided in the colored Acceptance Form.

"Distributions" mean dividends, interest payments or other payments paid by the issuer of the Securities pursuant to their terms. You must deliver any non-cash Distributions you have received during the period you have held the Securities in order to accept the Rescission Offer. If you have reinvested dividends that were payable in cash through a dividend reinvestment program, the amount of that cash dividend will be considered as a Distribution, and you will not be required to return the securities acquired through the dividend reinvestment program.

"Applicable Interest Rate" means interest at an annual rate, as determined in accordance with the law of your state of residence at the time you entered into your Eligible Transaction(s).

If a record date or "ex-dividend" date (that is, the date on which transactions in an equity security no longer carry the right to receive such dividend) for a Distribution occurs in respect of Securities after you deliver them in the Rescission Offer, but before the Payment Date, with the result that the related Distribution is made to us:

- if the related Distribution is made in cash, we will deliver the cash we receive to you (without interest) and will deduct the amount of the Distribution from the Rescission Offer Payment to be made to you; or

- if the related Distribution is made other than in cash (including in the form of securities), we will retain the Distribution and will not make any corresponding deduction from the amount of Rescission Offer Payment to be made to you.

References to any "interest" payment included as part of your Rescission Offer Payment are not intended to characterize that amount for U.S. federal income tax purposes. The U.S. federal income tax treatment of amounts paid in the Rescission Offer is discussed in "Supplemental U.S. Federal Income Tax Considerations" below.

If you accept the Rescission Offer with respect to Securities that you have sold at a loss, you will receive:

- the amount you originally paid for such Securities, including any related brokerage commissions,

- less any Distributions paid on those Securities by the relevant issuers,

- less the proceeds you received from the sale of such Securities,

- plus interest at the Applicable Interest Rate on the amount you originally paid for such Securities from and including the settlement date of purchase of such Securities up to, but not including, the settlement date of sale of such Securities and on the loss realized from the sale of such Securities from and including the settlement date of such sale up to, but not including, the Payment Date. The interest rate applied to your Eligible Transaction(s) is provided in the colored Acceptance Form.

If you accept the Rescission Offer with respect to Securities that you have sold at a profit, but that profit was less than the amount available under this Rescission Offer because the applicable interest rate determined by your State is greater than the market return on the securities sold, you will receive:

- the amount you originally paid for such Securities, including any related brokerage commissions,

- less any Distributions paid on those Securities by the relevant issuers,

- less the proceeds from the sale of such Securities,

- plus interest at the Applicable Interest Rate on the amount you originally paid for such Securities from and including the settlement date of purchase of such Securities up to, but not including, the settlement date of sale of such Securities. The interest rate applied to your Eligible Transaction(s) is provided in the colored Acceptance Form.

For purposes of the above calculations, the applicable interest payment will not be considered a "Distribution." Purchases and sales of Securities by each Offeree will be accounted for on a "first in, first out" (FIFO) basis applied to all rescinded purchases and all subsequent sales of those Securities by the relevant Offeree in the cash market. We will disregard any purchases of Securities that are not rescinded in matching purchases and sales for these purposes. This means that, if Securities have been bought and sold on more than one occasion during the Rescission Period by an Offeree, we will assume that the Offeree sold the Securities purchased in any rescinded Eligible Transaction in the first following sale of Securities that is not already matched to an earlier Eligible Transaction that is also being rescinded.

If you accept the Rescission Offer with respect to any Securities, you will not be entitled to any payments relating to those Securities from Morgan Stanley, the issuer or any guarantor of the Securities, other than the Rescission Offer Payment described above.

**Can you give me an example of what I will receive?**

Annex A hereto includes several examples of what you could receive under certain circumstances. To receive an estimate of the Rescission Offer Payment for your Eligible Securities, please call 1-866-451-3952.

**Will I be permitted to accept the Rescission Offer for part of my Eligible Transactions or must I accept or reject the Rescission Offer for all of my Eligible Transactions?**

You may accept some of the individual Eligible Transactions listed on the colored Acceptance Form and reject others. However, you may only accept the Rescission Offer for any individual Eligible Transaction in whole, and not in part. No acceptance of the Rescission Offer for only a part of an Eligible Transaction will be valid.

**How will Rescission Offer Payments be determined?**

If you purchased your Securities from, or through, Morgan Stanley and either (i) continue to hold the Securities through an account at Morgan Stanley or (ii) have sold the Securities through Morgan Stanley, we will calculate the amounts payable to you based upon our records. For information regarding our records relating to your purchases and, if applicable, dispositions of Securities and the amount of any claims these records reflect, please contact us at 1-866-451-3952.

If you currently hold, or have sold, Securities through a broker other than Morgan Stanley, you must submit documentation to Morgan Stanley that establishes the amount of your claim. Only the types of documents specified in the colored Acceptance Form will be accepted.

**When will the Rescission Offer start and expire?**

The Rescission Offer will begin on January 16, 2007 and expire the later of 30 days from receipt of the Offer or 5:00 p.m., EST, on February 20, 2007, which is the Expiration Date of the Rescission Offer. See the discussion above, and in the attached memorandum, re: the revocability of an acceptance during the time that the offer must remain open.

**Am I required to accept the Rescission Offer?**

No. You are not required to accept the Rescission Offer. However, your decision not to accept the Rescission Offer may affect your legal rights against Morgan Stanley (see discussion under "What happens if I fail to accept the Rescission Offer?" on page 8).

**Should I accept the Rescission Offer?**

Due to potential conflicts of interest, none of Morgan Stanley, its respective officers, directors or employees (including any Morgan Stanley employees who may manage, or advise you about, your investments) or the Rescission Agent may make any recommendations to you with respect to the Rescission Offer. Morgan Stanley will not take any action to accept the Rescission Offer on your behalf, even if it is authorized to exercise discretion with respect to your account in the ordinary course. You should, therefore, make this determination on your own or seek independent advice.

We can, however, answer your questions about the procedures you must follow to accept the Rescission Offer, and we can provide you with an estimate of your Rescission Offer Payment or the market price of your Securities. If you would like assistance with these matters, please contact us at 1-866-451-3952.

You should also carefully consider the risk factors beginning on page 12 hereof before deciding to accept or reject the Rescission Offer. You should also carefully review, if available, any reports, proxy statements or other information filed with the SEC by the issuers or guarantors of the Securities subsequent to the time you purchased them. Such reports, proxy statements and other information are available to the public over the Internet at the SEC's website at http://www.sec.gov. You may also read and copy

any of these documents at the SEC's public reference room at Room 1024, 450 Fifth Street, N.W., Washington, D.C. 20549. Please call the SEC at 1-800-SEC-0330 for further information on the public reference room. In the case of Securities that are debt securities or issued by a trust, Offerees should also consider any notices or other reports by the trustee pursuant to the applicable indenture, trust agreement or other governing instrument.

**Are my rights under the Rescission Offer transferable?**

No. Your rights under the Rescission Offer are personal to you and may not be transferred.

**How do I accept the Rescission Offer?**

If you are an Offeree and would like to accept the Rescission Offer:

- If you either (i) hold your Securities through Morgan Stanley as your broker or (ii) have sold your Securities at a loss through Morgan Stanley or (iii) have sold your Securities at a profit through Morgan Stanley, but that profit was less than the amount available under this Rescission Offer because the applicable interest rate determined by your State is greater than the market return you received on the Securities you sold, you must complete the colored Acceptance Form that accompanies this document and ensure it is received by the Rescission Agent before the Expiration Date at the following address:

<div align="center">

**D. F. King & Co., Inc.**
P.O. Box 859208
Braintree, Massachusetts 02185-9208

</div>

- If you hold your Securities through Morgan Stanley as your broker, but have transferred those Securities to a Morgan Stanley account other than the account in which they were purchased, you must complete the colored Acceptance Form that accompanies this document and ensure it is received by the Rescission Agent before the Expiration Date at the following address:

<div align="center">

**D. F. King & Co., Inc.**
P.O. Box 859208
Braintree, Massachusetts 02185-9208

</div>

In addition, you must take the appropriate action to cause those Securities to be returned, prior to the Expiration Date, to the account in which they were purchased.

- If you hold your Securities through an entity other than Morgan Stanley, you must complete the colored Acceptance Form that accompanies this document and ensure that it and all required supporting documents specified in the colored Acceptance Form are received by the Rescission Agent before the Expiration Date at the above address. You must also submit the Broker Instruction Form that accompanies this document to the broker or bank through which your Securities are held, which will cause that broker or bank to arrange the delivery of your Securities on your behalf. Valid acceptance

requires the completion in good order of all required actions on your behalf prior to the Expiration Date, so you should allow sufficient time for the completion in good order of relevant procedures by the broker or bank through which your Securities are held prior to the Expiration Date. **Any effort to accept the Rescission Offer for Securities held other than through Morgan Stanley will not be valid unless the relevant Securities are received before the Expiration Date and the matching Document Number of Offeree and Offer Number(s) are included in the related free delivery instructions.** For more information, see "The Rescission Offer—Procedures for Acceptance" below.

- If you sold your Securities at a loss through an entity other than Morgan Stanley, or if you have sold your Securities at a profit through an entity other than Morgan Stanley, but that profit was less than the amount available under this Rescission Offer because the applicable interest rate determined by your State is greater than the market return you received on the Securities you sold, you must complete the colored Acceptance Form that accompanies this document and ensure that it and all required supporting documents specified in the colored Acceptance Form are received by the Rescission Agent before the Expiration Date at the above address.

**If your acceptance of the Rescission Offer is not received in good order by the Expiration Date (the later of 30 days from receipt of the Offer or 5:00 p.m., EST, on February 20, 2007), you will be deemed to have rejected the Rescission Offer. See discussion above re:  date until which the rescission offer must be maintained.**

Morgan Stanley reserves the absolute right to reject any or all acceptances of the Rescission Offer that are not in proper form, including for lack of satisfactory proof that the holder meets the definition of an Offeree, or the acceptance of which, in its opinion, would be unlawful.  Morgan Stanley also reserves the right to waive any defects, irregularities or conditions applicable to particular acceptances of the Rescission Offer for any or all of your Eligible Transactions.   Morgan Stanley's interpretation of the terms and conditions of the Rescission Offer will be final and binding.

## May I accept the Rescission Offer by telephone?

No.  To accept the Rescission Offer, you must follow the procedures described in the preceding question and answer.

## What happens if I fail to accept the Rescission Offer?

If you fail to accept the Rescission Offer before the Expiration Date, you will be deemed to have rejected the Rescission Offer.

Morgan Stanley believes that, except as otherwise indicated below, your receipt of the Rescission Offer should prevent you in the future from requiring any of Morgan Stanley or *its affiliates to repurchase your Securities or maintaining an action against any of them for* any failure of Morgan Stanley to satisfy applicable requirements under relevant state securities laws in connection with the sale and delivery of your Securities.  However, if you no longer owned the Securities in question at the time you received the Rescission Offer

9

and you were a resident of Alabama, Alaska, Arkansas, Connecticut, Delaware, the District of Columbia, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Nebraska, New Jersey, Oregon, Puerto Rico, Utah or Wyoming at the time you entered into the Eligible Transaction(s), you may affirmatively reject the Rescission Offer, in writing, within 30 days of receipt of the Rescission Offer, and preserve your rights against Morgan Stanley. If you were a resident of California or Texas at the time you entered into the Eligible Transaction(s), you may affirmatively reject the Rescission Offer, in writing, within 30 days, and preserve your rights against Morgan Stanley, whether or not you currently own the securities in question. If you were a resident of Washington, Arizona, Tennessee or West Virginia at the time you entered into the Eligible Transaction(s), your rights against Morgan Stanley may be preserved regardless of whether you affirmatively reject the Rescission Offer or currently own the Securities in question. If you were a resident of any of the states mentioned above at the time you entered into the Eligible Transactions, you may affirmatively reject the Rescission Offer by mailing a letter to Morgan Stanley, Attn: Rescission Offer, 34 Exchange Place, Harborside Financial Center, Plaza II, 2nd Floor, Jersey City, NJ 07311.

**May I reject the Offer? If yes, what are my rights?**

You may affirmatively reject the Rescission Offer in the manner described in the paragraph above. Your rights are determined by the laws of your State of residence at the time you entered into the Eligible Transaction(s). In addition, if you fail to accept the Rescission Offer, you may still sell your Securities in the secondary market, at the prevailing market price at the time of such sale, if any secondary market is available. To the extent permitted by applicable law, Morgan Stanley, or other brokers, may currently be acting as a market maker for certain of the Securities, but they are not required to do so and may stop those activities for any of the Securities at any time.

**What will I receive if I fail to accept the Rescission Offer?**

If you fail to accept the Rescission Offer and you continue to hold Securities, you would continue to be entitled to payments, if any, on the Securities in accordance with their terms. If you fail to accept the Rescission Offer and you have caused the sale of your Securities, you will not receive any amount in connection with the Rescission Offer.

**What do I need to do to reject the Rescission Offer?**

You do not need to do anything. If you do not deliver your Securities or do not submit a completed colored Acceptance Form or any of the required documentation in good order so that it is received by the Rescission Agent prior to the Expiration Date, you will be deemed to have rejected the Rescission Offer. However, if you no longer owned the Securities in question at the time you received the Rescission Offer and you were a resident of Alabama, Alaska, Arkansas, Connecticut, Delaware, the District of Columbia, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Nebraska, New Jersey, Oregon, Puerto Rico, Utah or Wyoming at the time you entered into the Eligible Transaction(s), you may affirmatively reject the Rescission Offer, in writing, within 30 days of receipt of the Rescission Offer, and preserve your rights against Morgan Stanley. If you were a resident of California or

Texas at the time you entered into the Eligible Transaction(s), you may affirmatively reject the Rescission Offer, in writing, within 30 days, and preserve your rights against Morgan Stanley, whether or not you currently own the Securities in question. All rejection letters must be mailed to Morgan Stanley, Attn: Rescission Offer, 34 Exchange Place, Harborside Financial Center, Plaza II, 2nd Floor, Jersey City, NJ 07311.

## Can I change my mind after I have accepted the Rescission Offer?

The Rescission Offer is open for the period set forth on page 1 of this document, during which time you may accept or reject the Offer. After the stated period has expired, your decision will be final.

## When and how will payment of my Rescission Offer Payment be made?

If you currently maintain an account with Morgan Stanley for the custody of Securities (as would generally be the case for "retail" customers), your Rescission Offer Payment will be deposited into that account.

If you do not currently maintain an account with Morgan Stanley for the custody of Securities (as would generally be the case for "institutional/DVP" customers):

- the Rescission Agent will issue a check in the name of the Offeree unless a different payee is indicated on the colored Acceptance Form, or

- the Rescission Agent will cause payment to be made in accordance with the wire payment instructions, if any, provided on the colored Acceptance Form.

We expect to send payments in respect of the Rescission Offer to those who validly accept within 30 days after the close of the offering, or earlier if required by state law.

## If I accept the Rescission Offer, will I have any U.S. Federal tax consequences?

The potential U.S. federal income tax consequences of accepting the Rescission Offer are discussed in "Supplemental U.S. Federal Income Tax Considerations" below.

## Does the possible past failure of Morgan Stanley to satisfy applicable requirements under relevant state securities laws in connection with the sale and delivery of the Securities affect my ability to resell the Securities?

No.

## What will Morgan Stanley do with any Securities that it purchases in the Rescission Offer?

If Morgan Stanley purchases any Securities pursuant to the Rescission Offer, it intends to resell them (or, to the extent Morgan Stanley has a short position in respect of those Securities, to use them to close out such position). Resales of Securities by Morgan Stanley could have an adverse effect on the market value of any Securities you elect to retain. Morgan Stanley also reserves the right to dispose of the Securities it purchases in any

11

method it deems proper, some or all of which methods could have an adverse effect on the market value of Securities you elect to retain.

**Who can help answer my questions?**

If you have questions or require additional information about the Rescission Offer, you may contact us at 1-866-451-3952.

# RISK FACTORS

*You should carefully consider the following risks relating to each Eligible Transaction, and the other information included in this document, before deciding to accept or reject the Rescission Offer.*

**Your right to rescind any Eligible Transaction may be terminated as a result of the Rescission Offer, whether or not you participate.**

We are making the Rescission Offer because we may have failed to satisfy applicable securities registration requirements under relevant state securities laws in connection with the Eligible Transactions. This failure may create a right of rescission under such state securities laws.

As a result of this Rescission Offer, your right to rescind an Eligible Transaction may be terminated, regardless of whether you accept the Rescission Offer. If you do accept it, you will be required to release Morgan Stanley, the issuers and any guarantors of the Securities and their affiliates from all liability in respect of Eligible Transactions you rescind, as provided in the colored Acceptance Form.

If you accept the Rescission Offer with respect to any Securities, you will not be entitled to any payments relating to those Securities beyond those you receive in the Rescission Offer. Your acceptance or failure to affirmatively reject the Rescission Offer within the designated time period may terminate all of your rights against Morgan Stanley.

Morgan Stanley believes that, except as otherwise indicated below, your receipt of the Rescission Offer should prevent you in the future from requiring any of Morgan Stanley or its affiliates to repurchase your Securities or maintaining an action against any of them for any failure of Morgan Stanley to satisfy applicable requirements under relevant state securities laws in connection with the sale and delivery of your Securities. However, if you no longer owned the Securities in question at the time you received the Rescission Offer and you were a resident of Alabama, Alaska, Arkansas, Connecticut, Delaware, the District of Columbia, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Nebraska, New Jersey, Oregon, Puerto Rico, Utah or Wyoming at the time you entered into the Eligible Transaction(s), you may affirmatively reject the Rescission Offer, in writing, within 30 days of receipt of the Rescission Offer, and preserve your rights against Morgan Stanley. If you were a resident of California or Texas at the time you entered into the Eligible Transaction(s), you may affirmatively reject the Rescission Offer, in writing, within 30 days, and preserve your rights against Morgan Stanley, whether or not you currently own the securities in question. If you were a resident of Washington, Arizona, Tennessee or West Virginia at the time you entered into the Eligible Transaction(s), your rights against Morgan Stanley may be preserved regardless of whether you affirmatively reject the Rescission Offer or currently own the Securities in question. If you were a resident of any of the states mentioned above at the time you entered into the Eligible Transactions, you may affirmatively reject the Rescission Offer by mailing a letter to Morgan Stanley, Attn: Rescission Offer, 34 Exchange Place, Harborside Financial Center, Plaza II, 2nd Floor, Jersey City, NJ 07311.

The above discussion relates to your potential rescission rights and does not address your rights, if any, under other relevant provisions of law or in equity. You should consult with an attorney about your legal rights and remedies before deciding to accept or reject the Rescission.

**You may not withdraw your acceptance of the Rescission Offer after the Offer is closed.**

If you submit your acceptance of the Rescission Offer and, after the offer is closed, decide that you would prefer to reject the Rescission Offer, you will not be allowed to withdraw your acceptance. Your acceptance will be irrevocable regardless of changes in the market prices of the affected Securities that may make your previous decision to accept the Rescission Offer undesirable.

**The resale of any Securities acquired by Morgan Stanley pursuant to the Rescission Offer could adversely affect trading in, and prices for, the Securities.**

If Morgan Stanley acquires any Securities pursuant to the Rescission Offer, it currently intends to resell such Securities (or, to the extent Morgan Stanley has a short position in respect of those Securities, to use them to close out such position). Resales of Securities by Morgan Stanley could have an adverse effect on the market value of any Securities you elect to retain. Morgan Stanley also reserves the right to dispose of the Securities it purchases in any method it deems proper, some or all of which methods could have an adverse effect on the market value of any Securities you elect to retain.

**You should carefully consider all factors that may affect the desirability of accepting the Rescission Offer.**

Whether accepting the Rescission Offer with respect to Securities you continue to hold is desirable may depend on a variety of factors, including:

- whether the Rescission Offer Payment to which you would be entitled would be greater than the current market value and your expectation of the potential future market value of the Securities you own,

- distributions that you have already received and can expect to receive on the Securities,

- the potential tax impact of accepting the Rescission Offer,

- the impact of accepting the Rescission Offer on your overall investment portfolio and strategy or, for those Offerees who participate in discretionary or advisory investment programs, the impact on the investment strategy and actions of your investment manager or advisor,

- transaction costs associated with reinvesting your Rescission Offer Payment, and

- the liquidity of other markets available for the Securities.

14

Should you make an uneconomic election in respect of the Rescission Offer, you will bear the negative economic impact of that decision.

Due to potential conflicts of interest, none of Morgan Stanley, its respective officers and directors (including any Morgan Stanley employees who may manage, or advise you about, your investments) or the Rescission Agent may make any recommendations to you with respect to the Rescission Offer. Morgan Stanley will not take any action to accept the Rescission Offer on your behalf, even if it is authorized to exercise discretion with respect to your account in the ordinary course. Accordingly, you should, therefore, make this determination on your own or seek independent advice.

Determining the amount of your Rescission Offer Payment is complicated, and you should contact us at 1-866-451-3952 to obtain an estimate of the amount of the Rescission Offer Payment that could be made to you. Any estimate will be subject to change to reflect subsequent Distributions, other corporate events that may have affected the Securities or any extension of the Payment Date.

You may also contact us to obtain information regarding recent market prices of your Securities. However, this information may not reflect the price you would be able to obtain from a sale of your Securities. In addition, the market value of your Securities may change during the Rescission Offer period or between the Expiration Date and the Payment Date, and you will not be permitted to withdraw any Securities delivered in the Rescission Offer.

In deciding whether to accept or reject the Rescission Offer, you should carefully read this document. Morgan Stanley has not authorized anyone to provide you with different information. You should consult your own tax advisors with regard to the application of U.S. federal income tax laws to your particular situation, as well as any tax consequences arising under the laws of any state, local or foreign taxing jurisdiction. You may wish to consult with independent counsel before deciding to accept or reject the Rescission Offer so as to be fully informed about the risks and the consequences attributable to either choice.

In addition to the foregoing, you should also carefully review, if available, any reports, proxy statements or other information filed with the SEC by the issuers or guarantors of the Securities subsequent to the time you purchased them. Such reports, proxy statements and other information are available to the public over the Internet at the SEC's website at http://www.sec.gov. You may also read and copy any of these documents at the SEC's public reference room at Room 1024, 450 Fifth Street, N.W., Washington, D.C. 20549. Please call the SEC at 1-800-SEC-0330 for further information on the public reference room. In the case of Securities that are debt securities or issued by a trust, Offerees should also consider any notices or other reports by the trustee pursuant to the applicable indenture, trust agreement or other governing instrument.

Offerees are advised that none of the issuers or guarantors of the Securities (other than Morgan Stanley) is involved in making the Rescission Offer.

## THE RESCISSION OFFER

### Background and Reasons for the Rescission Offer

Morgan Stanley was broker for the resale of the Securities. Morgan Stanley has determined that it may have sold Securities in transactions that did not satisfy applicable securities registration requirements under relevant state securities laws. As a result, Morgan Stanley is making the Rescission Offer on behalf of itself and its affiliates. Morgan Stanley believes that, except as otherwise indicated below, your receipt of the Rescission Offer should prevent you in the future from requiring any of it or its affiliates to repurchase your Securities or maintaining an action against any of them for any failure of Morgan Stanley to satisfy applicable requirements under relevant state securities laws in connection with the sale and delivery of your Securities. However, if you no longer owned the Securities in question at the time you received the Rescission Offer and you were a resident of Alabama, Alaska, Arkansas, Connecticut, Delaware, the District of Columbia, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Nebraska, New Jersey, Oregon, Puerto Rico, Utah or Wyoming at the time you entered into the Eligible Transaction(s), you may affirmatively reject the Rescission Offer, in writing, within 30 days of receipt of the Rescission Offer, and preserve your rights against Morgan Stanley. If you were a resident of California or Texas at the time you entered into the Eligible Transaction(s), you may affirmatively reject the Rescission Offer, in writing, within 30 days, and preserve your rights against Morgan Stanley, whether or not you currently own the securities in question. If you were a resident of Washington, Arizona, Tennessee or West Virginia at the time you entered into the Eligible Transaction(s), your rights against Morgan Stanley may be preserved regardless of whether you affirmatively reject the Rescission Offer or currently own the Securities in question. If you were a resident of any of the states mentioned above at the time you entered into the Eligible Transactions, you may affirmatively reject the Rescission Offer by mailing a letter to Morgan Stanley, Attn: Rescission Offer, 34 Exchange Place, Harborside Financial Center, Plaza II, 2nd Floor, Jersey City, NJ 07311.

The Rescission Offer is not an admission by Morgan Stanley or its affiliates that any of them knowingly failed to comply with the requirements of any state securities laws, nor is it a waiver by any of them of any applicable statutes of limitation or other defenses to liability that any of them may have.

### Rescission Offer and Rescission Offer Payments

The Rescission Offer is made only to those who:

- purchased Securities from Morgan Stanley on or before to December 31, 2005, during a prior period determined on a state-by-state basis, in transactions that did not satisfy applicable requirements under relevant state securities laws.

If you accept the Rescission Offer with respect to Securities that you continue to hold, you will receive:

- the amount you originally paid for those Securities, including any related brokerage commissions,

- less any Distributions paid on those Securities by the relevant issuers,

- plus interest at the Applicable Interest Rate on the amount you originally paid for such Securities from and including the settlement date of purchase of such Securities up to, but not including, the settlement date of sale of such Securities. The interest rate applied to your Eligible Transaction(s) is provided in the colored Acceptance Form.

Dividends, interest payments (other than the applicable interest rate interest payment) or other payments paid by the issuer of the Securities pursuant to their terms are all considered Distributions. You must deliver any non-cash Distributions you have received during the period you have held the Securities in order to accept the Rescission Offer. If you have reinvested dividends that were payable in cash through a dividend reinvestment program, the amount of that cash dividend will be considered as a Distribution, and you will not be required to return the securities acquired through the dividend reinvestment program.

If a record date or "ex-dividend" date for a Distribution occurs in respect of Securities after your delivery of them in the Rescission Offer, but before the Payment Date, and as a result the related Distribution is made to us:

- if the related Distribution is made in cash, we will deliver the cash we receive to you and will deduct the amount of the Distribution from the Rescission Offer Payment to be made to you; or

- if the related Distribution is made other than in cash (including in the form of securities), we will retain the Distribution and will not make any corresponding deduction from the amount of Rescission Offer Payment to be made to you.

If you accept the Rescission Offer with respect to Securities that you have sold at a loss, you will receive:

- the amount you originally paid for such Securities, including any related brokerage commissions,

- less any Distributions paid on those Securities by the relevant issuers,

- less the proceeds you received from the sale of such Securities in the cash market,

- plus interest at the Applicable Interest Rate on the amount you originally paid for such Securities from the settlement date of purchase of such Securities up to, but not including, the settlement date of sale of such Securities and on the loss realized from the sale of such Securities from the date of such sale up to, but not including, the Payment Date.

If you accept the Rescission Offer with respect to securities that you have sold at a profit, but that profit was less than the amount available under this Rescission Offer because the applicable interest rate determined by your State is greater than the market return on the Securities sold, you will receive:

- the amount you originally paid for such Securities, including any related brokerage commissions,

- less any Distributions paid on those Securities by the relevant issuers,

- less the proceeds from the sale of such Securities,

- plus interest at the Applicable Interest Rate on the amount you originally paid for such Securities from and including the settlement date of purchase of such Securities up to, but not including, the settlement date of sale of such Securities. The interest rate applied to your Eligible Transaction(s) is provided in the enclosed colored Acceptance Form.

For purposes of the above calculations, purchases and sales of Securities by each Offeree will be accounted for on a "first in, first out" (FIFO) basis applied to all rescinded purchases and all subsequent sales of those Securities by the relevant Offeree in the cash market. We will disregard any purchases of Securities that are not rescinded in matching purchases and sales for these purposes. This means that, if Securities have been bought and sold on more than one occasion during the Rescission Period by an Offeree, we will assume that the Offeree sold the Securities purchased in any rescinded Eligible Transactions in the first following sale of Securities that is not already matched to an earlier Eligible Transaction that is also being rescinded.

The interest to be paid to each Offeree is calculated at an annual rate, as determined in accordance with the law of your state of residence at the time you entered into your Eligible Transaction(s), on the amount you originally paid for the Securities from and including the settlement date of your purchase of the Securities up to, but not including, the Payment Date. The interest rate applied to your Eligible Transaction(s) is provided in the colored Acceptance Form. References to any "interest" payment included as part of your Rescission Offer Payment are not intended to characterize that amount for U.S. federal income tax purposes. The U.S. federal income tax treatment of amounts paid in the Rescission Offer is discussed in "Supplemental U.S. Federal Income Tax Considerations" below.

To the extent permitted by applicable law, during the Rescission Offer, Morgan Stanley may engage in purchases and sales of the Securities, securities convertible or exchangeable into, or otherwise related to, Securities and other securities issued by the issuers of the Securities, including, in certain cases, in market making transactions. The terms of those transactions will generally differ from those offered in the Rescission Offer. These transactions may affect the price of the Securities during the Rescission Offer.

You may accept the Rescission Offer only in respect of Securities that (a) were acquired in Eligible Transactions, and (b)(i) have been sold through Morgan Stanley or as described in the documentation provided with your colored Acceptance Form, or (ii) are owned as of the date of delivery, free and clear of any liens, charges, claims, encumbrances, interests and restrictions of any kind, and Morgan Stanley will acquire good, indefeasible and unencumbered title to such Securities, free and clear of all liens, charges, claims, encumbrances, interests and restrictions of any kind, when the same are accepted by Morgan Stanley.

In order to accept the Rescission Offer with respect to Securities you still hold, you will be required to agree in the colored Acceptance Form that from the date of your acceptance, you will not sell, pledge, hypothecate or otherwise encumber or transfer any existing Securities in respect of which you are accepting the Rescission Offer, and that any purported sale, pledge, hypothecation or other encumbrance or transfer will be void and of no effect.

Your rights under the Rescission Offer are personal to you and may not be transferred. Morgan Stanley's interpretation of the terms and conditions of the Rescission Offer, including any Securities transfer instructions described below, will be final and binding.

**If you accept the Rescission Offer with respect to any Securities, you will not be entitled to any payments relating to those Securities beyond those you receive in the Rescission Offer.**

**Procedures for Acceptance**

You are not legally required to accept the Rescission Offer. All acceptances of the Rescission Offer are irrevocable. Your right to accept the Rescission Offer will terminate on the Expiration Date. If you elect to reject the Rescission Offer, you do not need to take any action.

Morgan Stanley reserves the absolute right to reject any or all acceptances of the Rescission Offer that are not in proper form, including for lack of satisfactory proof that the holder meets the definition of an Offeree, or the acceptance of which, in its opinion, would be unlawful. Morgan Stanley also reserves the right to waive any defects, irregularities or conditions applicable to particular acceptances of the Rescission Offer for any or all of your Eligible Transactions. Morgan Stanley's interpretation of the terms and conditions of the Rescission Offer will be final and binding.

**If your colored Acceptance Form and supporting documentation indicating your acceptance of the Rescission Offer is not completed in good order and received by the Expiration Date (the later of 30 days from receipt of the Offer or 5:00 p.m., EST, on February 20, 2007), you will be deemed to have rejected the Rescission Offer.**

If you are an Offeree and would like to accept the Rescission Offer:

- If you either (i) hold your Securities through Morgan Stanley as your broker or (ii) have sold your Securities at a loss through Morgan Stanley or (iii) have sold your Securities

at a profit through Morgan Stanley, but that profit was less than the amount available under this Rescission Offer because the applicable interest rate determined by your State is greater than the market return you received on the Securities you sold, you must complete the colored Acceptance Form that accompanies this document and ensure it is received by the Rescission Agent before the Expiration Date at the following address:

<div align="center">

**D. F. King & Co., Inc.**
P.O. Box 859208
Braintree, Massachusetts 02185-9208

</div>

- If you hold your Securities through Morgan Stanley as your broker, but have transferred those Securities to a Morgan Stanley account other than the account in which they were purchased, you must complete the colored Acceptance Form that accompanies this document and ensure it is received by the Rescission Agent before the Expiration Date at the following address:

<div align="center">

**D. F. King & Co., Inc.**
P.O. Box 859208
Braintree, Massachusetts 02185-9208

</div>

In addition, you must take the appropriate action to cause those Securities to be returned, prior to the Expiration Date, to the account in which they were purchased.

- If you hold your Securities through an entity other than Morgan Stanley, you must complete the colored Acceptance Form that accompanies this document and ensure that it and all required supporting documents specified in the colored Acceptance Form are received by the Rescission Agent before the Expiration Date at the above address. You must also submit the Broker Instruction Form that accompanies this document, to the broker or bank through which your Securities are held, which will cause that broker or bank to arrange the deliver of your Securities on your behalf. Valid acceptance requires the completion in good order of all required actions on your behalf prior to the Expiration Date, so you should allow sufficient time for the completion in good order of relevant procedures by the broker or bank through which your Securities are held prior to the Expiration Date.

- If you sold your Securities at a loss through an entity other than Morgan Stanley, or if you have sold your Securities at a profit through an entity other than Morgan Stanley, but that profit was less than the amount available under this Rescission Offer because the applicable interest rate determined by your State is greater than the market return you received on the Securities you sold, you must complete the colored Acceptance Form that accompanies this document and ensure that it and all required supporting documents specified in the colored Acceptance Form are received by the Rescission Agent before the Expiration Date at the above address.

**Payments**

If you currently maintain an account with Morgan Stanley for the custody of Securities (as would generally be the case for "retail" customers), your Rescission Offer Payment will be deposited into that account.

If you do not currently maintain an account with Morgan Stanley for the custody of Securities (as would generally be the case for "institutional/DVP" customers):

- the Rescission Agent will issue a check in the name of the Offeree unless a different payee is indicated on the colored Acceptance Form, or

- the Rescission Agent will cause payment to be made in accordance with the wire payment instructions, if any, provided on the colored Acceptance Form.

We expect to send payments in respect of the Rescission Offer to those who validly accept within 30 days after the close of the offering, or earlier if required by state law.

**Expiration Date; Amendments and Extensions**

The Rescission Offer will expire on the Expiration Date (which is the later of 30 days from receipt of the Offer or 5:00 p.m., EST, February 20, 2007, unless extended by Morgan Stanley). Morgan Stanley expressly reserves the right to extend the Rescission Offer as to any and all Securities. During any extension of the Rescission Offer, (i) all acceptances not yet validated and processed and (ii) all acceptances, along with the corresponding outstanding Securities previously delivered, and not yet validated and processed for rescission, will remain subject to the Rescission Offer and may be validated and processed for rescission by Morgan Stanley. To the extent it is legally permitted to do so, Morgan Stanley also expressly reserves the absolute right, in its sole discretion, to amend any of the terms of the Rescission Offer, although it has no present plans or arrangements to do so.

Morgan Stanley will promptly announce any extension or amendment of the Rescission Offer by such means of announcement as it deems appropriate. It will, in all cases, be sufficient means of announcement to notify the affected Offerees at the address indicated in our records at the time of the announcement. Any failure to receive notice of any extension or amendment of the Rescission Offer will in no way affect the validity of such extension or amendment.

Any amendment to the Rescission Offer will apply to all Securities delivered, regardless of when or in what order the Securities were delivered. If Morgan Stanley makes a material change in the terms of the Rescission Offer, it will disseminate additional Rescission Offer materials. If the amendment is made less than five business days before the Expiration Date, Morgan Stanley will extend the Rescission Offer so that Offerees have at least five business days in which to deliver their acceptances and the related Securities. In addition, if the amendment involves a change in the consideration offered in the Rescission Offer and is made less than ten business days before the Expiration Date, Morgan Stanley will extend the Rescission Offer so that Offerees have at least ten business days in which to deliver their acceptances and the related Securities.

21

If any outstanding Securities delivered are not accepted for rescission for any reason, such Securities will be returned, at Morgan Stanley's expense, to the applicable Offeree via book-entry transfer to the account maintained by the Offeree's broker or bank at DTC, promptly following the Expiration Date of the Rescission Offer. The Offeree's broker or bank will be responsible for crediting the transfer into the Offeree's individual account.

**Procedures for Brokers and Custodian Banks other than Morgan Stanley; DTC Free Delivery Procedures**

**This section applies to you only if you to hold Securities through an entity other than Morgan Stanley and you accept the Rescission Offer with respect to Securities that are cleared and settled in DTC.**

In order to accept the Rescission Offer, an Offeree must cause its broker or custodian bank to effect free delivery of the relevant Securities as described below.

The Rescission Agent, on behalf of Morgan Stanley, has established a special account with respect to the outstanding Securities at DTC for purposes of the Rescission Offer. Any financial institution that is a DTC participant, including your broker or bank, may make book-entry delivery of outstanding Securities by causing the book-entry free delivery of such Securities into this account in accordance with DTC's procedures for free deliveries.

To assist Morgan Stanley and the Rescission Agent in matching your colored Acceptance Form with the free delivery of your Securities, your DTC participant must include in the "Comments" field:

- the code printed below the Offeree's name and address on the front page of your Acceptance Form (which we refer to as a "Document Number of Offeree") and

- the Offer Number assigned to each Eligible Transaction in the corresponding free delivery instruction.

These unique identifiers will provide Morgan Stanley and the Rescission Agent with information that they will use, together with other information such as the CUSIP number of the Securities and your direct DTC participant account number, to reconcile your Acceptance Form with your free delivery. Each free delivery instruction must include the same unique Document Number of Offeree and Offer Number as the colored Acceptance Form relating to it. Morgan Stanley, in its sole discretion, may consider invalid any colored Acceptance Form submitted with a unique Document Number of Offeree and Offer Number that does not match the unique Document Number of Offeree and Offer Number in the corresponding free delivery instruction.

The delivery of Securities through DTC, and any transmission of a free delivery instruction, is at the election and risk of the person delivering Securities. Morgan Stanley will ask the Rescission Agent to instruct DTC to return those Securities, if any, that were delivered through free delivery through DTC but were not accepted by it, to the DTC participant that delivered such Securities on behalf of holders of the Securities. Neither Morgan Stanley, nor the Rescission Agent, is responsible or liable for the return of such Securities to the delivering DTC participants or to their owners, nor as to the time by which such return is completed.

**Funding of the Rescission Offer**

Morgan Stanley has the present ability to pay all amounts due and will fund Rescission Offer Payments from available cash.

## STATE-SPECIFIC INFORMATION

**Residents of Arkansas:**
If Arkansas residents have questions about Arkansas securities registration or regulatory requirements, they should call the Arkansas Securities Department at 1-501-324-9160.

**For Residents of California:**
THIS OFFER OF REPURCHASE HAS BEEN APPROVED BY THE COMMISSIONER OF CORPORATIONS IN ACCORDANCE WITH SECTION 25507(b) OF THE CORPORATE SECURITIES LAW OF 1968 ONLY AS TO ITS FORM.  SUCH APPROVAL DOES NOT INPLY A FINDING BY THE COMMISSIONER THAT ANY STATEMENT MADE HEREIN OR IN ANY ACCOMPANYING DOCUMENTS ARE TRUE OR COMPLETE; NOR DOES IT IMPLY A FINDING THAT THE AMOUNT OFFERED BY THE SELLER IS EQUAL TO THE AMOUNT RECEOVERABLE BY THE BUYER OF THE SECURITY IN ACCORDANCE WITH SECTION 25503 IN A SUIT AGAINST THE SELLER, AND THE COMMISSIONER DOES NOT ENDORSE THE OFFER AND MAKES NO RECOMMENDATION AS TO ITS ACCEPTANCE OR REJECTION.

Liability may have arisen pursuant to Section 25503 of the Corporate Securities Law of 1968 ("California Securities Act") by failure to comply with Section 25130 of the California Securities Act.

The Offeree's right of action, if any, under Sections 25500, 25501, and 25502 of the California Securities Act and under common law, is not necessarily foreclosed by acceptance or rejection of the offer.

The Commissioner has the authority to impose a legend condition restricting transferability of the security under Section 25534 of the California Securities Act and with respect to any action taken by the Commissioner pursuant to such section with respect to the security.

Section 25503 provides:
Any person who violates Section 25110, 25130 or 25133, or a condition of qualification under Chapter 2 (commencing with Section 25110) of this part, imposed pursuant to Section 25141, or an order suspending trading issued pursuant to Section 25219, shall be liable to any person acquiring from him the security sold in violation of such section, who may sue to recover the consideration he paid for such security with interest thereon at the legal rate, less the amount of any income received therefrom, upon the tender of such security, or for damages, if he no longer owns the security, or if the consideration given for the security is not capable of being returned. Damages, if the plaintiff no longer owns the security, shall be equal to the difference between (a) his purchase price plus interest at the legal rate from the date of purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received therefrom by the plaintiff.

Damages, if the consideration given for the security is not capable of being returned, shall be equal to the value of that consideration plus interest at the legal rate from the date of purchase, provided the security is tendered; and if the plaintiff no longer owns the security, damages in such case shall be equal to the difference between (a) the value of the consideration given for the security plus interest at the legal rate from the date of purchase and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received therefrom by the plaintiff. Any person who violates Section 25120 or a condition of qualification under Chapter 3 (commencing with Section 25120) of this part imposed pursuant to Section 25141, shall be liable to any person acquiring from him the security sold in violation of such section who may sue to recover the difference between (a) the value of the consideration received by the seller and (b) the value of the security at the time it was received by the buyer, with interest thereon at the legal rate from the date of purchase. Any person on whose behalf an offering is made and any underwriter of the offering, whether on a best efforts or a firm commitment basis, shall be jointly and severally liable under this section, but in no event shall any underwriter (unless such underwriter shall have knowingly received from the issuer for acting as an underwriter some benefit, directly or indirectly, in which all other underwriters similarly situated did not share in proportion to their respective interest in the underwriting) be liable in any suit or suits authorized under this section for damages in excess of the total price at which the securities underwritten by him and distributed to the public were offered to the public. Any tender specified in this section may be made at any time before entry of judgment. No person shall be liable under this section for violation of Section 25110, 25120 or 25130 if the sale of the security is qualified prior to the payment or receipt of any part of the consideration for the security sold, even though an offer to sell or a contract of sale may have been made or entered into without qualification.

Section 25504 provides:
Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist.

Section 25507(b) provides:
(b) No buyer may commence an action under Section 25503 (or Section 25504 or Section 25504.1 insofar as they relate to that section) if, before suit is commenced, such buyer shall have received a written offer approved as to form by the commissioner (1) stating the respect in which liability under such section may have arisen, (2) offering to repurchase the security for a cash price payable upon delivery of the security or offering to pay the buyer an amount in cash equal in either case to the amount recoverable by the buyer in accordance with Section 25503, or, offering to rescind the transaction by putting the parties back in the same position as before the transaction, (3) providing that such offer may be accepted by the buyer at any time within a specified period of not less than 30 days after the date of receipt thereof unless rejected earlier

24

during such period by the buyer, (4) setting forth the provisions of this subdivision (b), and (5) containing such other information as the commissioner may require by rule or order, and such buyer shall have failed to accept such offer in writing within the specified period after receipt thereof.

**For Residents of North Carolina:**

Under North Carolina law, any person who offers or sells a security in violation of North Carolina's securities registration statutes is liable to the person purchasing the security from him, who may sue to recover the consideration paid for the security, together with interest at 8% per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if the purchaser no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it and interest at 8% per annum from the date of disposition.

However, no purchaser may sue if, before suit is commenced, the purchaser has received a written offer stating how liability may have arisen and fairly advising the purchaser of his rights; offering to repurchase the security for cash payable on delivery of the security equal to the consideration paid, together with interest at 8% per annum from the date of payment, less the amount of any income received on the security or, if the purchaser no longer owns the security, offering to pay the purchaser upon acceptance of the offer an amount in cash equal to the damages computed in accordance with the paragraph above; and stating that the offer may be accepted by the purchaser at any time within 30 days of its receipt; and the purchaser has failed to accept such offer in writing within the specified period.

Offers discussed above shall be in the form and contain the information the North Carolina Securities Administrator by rule prescribes. Every such offer shall be delivered to the offeree or sent by certified mail addressed to the offeree at the offeree's last known address. The person making the offer shall file a copy of the rescission offer with the North Carolina Securities Administrator at least 10-days before delivering the offer to the offeree. If an offer is not performed in accordance with its terms, suit by the offeree under this section shall be permitted.

## SUPPLEMENTAL U.S. FEDERAL INCOME TAX CONSIDERATIONS

The following discussion summarizes certain U.S. federal income tax considerations that may be relevant to you if you are an Offeree who elects to accept the Rescission Offer with respect to any Eligible Transaction.

The laws applicable to the Rescission Offer are unclear and we have not sought any ruling from the Internal Revenue Service (the "IRS") with respect to the statements made and the conclusions reached in this section. Accordingly, there can be no assurance that the IRS will agree with such statements and conclusions.

**The actual tax consequences resulting from your participation in the Rescission Offer will depend on the specific characteristics of your particular Securities. Accordingly, the following discussion is intended as a general guide only. In addition, you should consult your own tax advisors with regard to the application of U.S. federal income tax laws to your particular situation as well as any tax consequences arising under the laws of any state, local or foreign taxing jurisdiction.**

### Offerees Who Deliver their Securities in the Rescission Offer

If you are an Offeree who delivers your Securities in the Rescission Offer and the Securities were originally sold to you by us on or before December 31, 2003, you should be treated, for U.S. federal income tax purposes, as selling your Securities to us for the amount paid by us pursuant to the Rescission Offer. Although the U.S. federal income tax treatment of Securities that were originally sold to you by us on or after January 1, 2004 and delivered in the Rescission Offer is less clear, we intend to report such transactions in the same manner described in the preceding sentence. Under this treatment, the portion of the amount we pay that is denominated as interest should be treated as part of your amount realized on the sale, and not as interest. It is possible that the IRS could successfully assert that the amount denominated as interest should be treated as interest for U.S. federal income tax purposes rather than part of the amount realized on the sale.

### Offerees Who Sold their Securities Prior to the Rescission Offer

If you are an Offeree who sold or otherwise disposed of your Securities at a loss, or at a profit of less than the amount of the Rescission Offer the amount paid by us pursuant to the Rescission Offer should be taxable to you at the time that you receive or accrue such amounts (in accordance with your regular method of tax accounting), regardless of when you disposed of your Securities. The character of such income generally should be the same as the character of the loss you realized on the disposition of your Securities.

The treatment of amounts denominated as interest under current law is not entirely clear. We intend to report such payment as interest income, which would be includable in your income in accordance with your regular method of tax accounting. You should consult your own tax advisors as to the possibility that all or a portion of our payment denominated as interest may be treated as part of the amount described in the preceding paragraph and not as interest.

Assuming that our treatment of the amount denominated as interest is correct, if you are not a U.S. person (as defined below), you generally would not be subject to U.S. federal income or withholding tax on such interest income, provided that:

- You certify on IRS Form W-8BEN (or successor form), under penalties of perjury, that you are not a United States person and provide your name and address or otherwise satisfies applicable documentation requirements; and

- Such payments are not effectively connected with your conduct of a trade or business in the United States (or, where a tax treaty applies, are not attributable to a United States permanent establishment).

If such interest income is effectively connected with your conduct of a trade or business in the United States (or, where a tax treaty applies, is attributable to a United States permanent establishment), although exempt from withholding tax, it will generally be subject to regular U.S. federal income tax in the same manner as if you were a U.S. person.

The term "U.S. person" means a citizen or resident of the United States, a U.S. domestic corporation or partnership or an estate the income of which is subject to United States federal income taxation regardless of its source or a trust if (i) a U.S. court is able to exercise primary supervision over the trust's administration and (ii) one or more U.S. persons have the authority to control all of the trust's substantial decisions.

## ADDITIONAL INFORMATION

If you have questions or require additional information about the Rescission Offer, you may contact us at 1-866-451-3952.

**Annex A**

## Examples of Calculation of Rescission Offer Payment

This Annex includes six example calculations of the Rescission Offer Payment an Offeree would receive upon acceptance of the Rescission Offer, based on the assumptions described in each example. The circumstances assumed for these examples have been chosen solely for their illustrative value and mathematical convenience. They do not correspond to the actual circumstances applicable to your or any other Securities or to any assessment of the likely amount of your potential Rescission Offer Payment.

The examples presented are:

- Example 1: Securities Still Held by Offeree
- Example 2: Securities that Have Been Sold by Offeree at a Loss
- Example 3: Securities that Have Been Sold by Offeree at a Profit
- Example 4: Multiple Purchases and Sales of Securities
- Example 5: Securities that Have Been Called or Redeemed by Issuer
- Example 6: Treatment of Certain Distributions

We have assumed for purposes of these examples that the Payment Date will occur on March 15, 2007. Any delay in the Payment Date would change the final Rescission Offer Payment in each example. See "Questions and Answers about the Rescission Offer – What will I receive if I accept the Rescission Offer?"

Determining the amount of your potential Rescission Offer Payment is complicated, and you should contact us at 1-866-451-3952 to obtain an estimate of the amount of the Rescission Offer Payment that could be made to you. Any estimate will be subject to change to reflect any subsequent Distributions, corporate events that may have affected your Securities or any extension of the Payment Date.

## Example 1:  Securities Still Held by Offeree

The circumstances assumed for this example have been chosen solely for their illustrative value and mathematical convenience.  They do not correspond to the actual circumstances applicable to your or any other Securities or any assessment of the likely amount of your potential Rescission Offer Payment.

### Assumptions

This example assumes the following circumstances:

- The Securities involved are an issue of corporate bonds.
- The Offeree purchased $50,000.00 principal amount of the Securities in an Eligible Transaction that settled on October 15, 2004.
- The Offeree paid 100% of the face amount of the Securities, including brokerage commissions plus $750 in respect of accrued interest for the Securities ($50,750.00 total).
- The Offeree continues to hold the Securities.
- Interest payments paid January 15, 2005, July 15, 2005 and January 15, 2006.
- The Offeree completes all actions necessary for acceptance of the Rescission Offer in good order before the Expiration Date, including delivery of the $50,000.00 principal amount of the Securities that it owns, in accordance with procedures described in the Rescission Offer.

### Calculation

The Rescission Offer Payment would be calculated as follows:

| | | | | |
|---|---|---|---|---|
| Purchase Amount (including $750.00 paid in respect of accrued interest) [(1)] ........................... | | | | $ 50,750.00 |
| Distributions Received | | | | |
| Interest payment made January 15, 2005.... | | | | (1,500.00) |
| Interest payment made July 15, 2005 ......... | | | | (1,500.00) |
| Interest payment made January 15, 2006.... | | | | (1,500.00) |
| Total Distributions ..................................... | | | | (4,500.00) |
| Rescission Offer Payment before Interest (sub-total) ................................................. | | | | 46,250.00 |
| Interest Rate(varies by state) | 6% | 8% | 10% | 12% |
| Interest ............................................................ | 7,353.17 | 9,804.22 | 12,255.28 | 14,706.33 |
| Rescission Offer Payment ............................... | 53,603.17 | 56,054.22 | 58,505.28 | 60,956.33 |

---

(1) The $750.00 payment in respect of accrued interest has been included in the purchase price in respect of which interest is calculated from and including the date of purchase up to, but not including, the first coupon date and excluded from the purchase price in calculating interest thereafter.

A-2

## Example 2:  Securities that Have Been Sold by Offeree at a Loss

The circumstances assumed for this example have been chosen solely for their illustrative value and mathematical convenience.  They do not correspond to the actual circumstances applicable to your offer or any assessment of the amount of your potential Rescission Offer Payment.

### Assumptions

This example assumes the following circumstances:

- The Securities involved are an issue of common stock.

- The Offeree purchased 1,000 shares of the Securities in an Eligible Transaction that settled on May 25, 2004.

- The Offeree paid $45.00 per share ($45,000.00 total) for the Securities, including brokerage commissions.

- The Offeree sold all of those Securities in a transaction that settled on May 25, 2005 for $44.00 per share, net of brokerage commissions ($44,000.00 total).

- No dividend payments or other Distributions have been paid in respect of the Securities.

- The Offeree completes all actions necessary for acceptance of the Rescission Offer in good order before the Expiration Date.  Because the Offeree sold all of the Securities, the Offeree has no obligation to deliver them to obtain a Rescission Offer Payment.

### Calculation

The Rescission Offer Payment would be calculated as follows:

| | | | | |
|---|---|---|---|---|
| Purchase Amount ............................................................................ | | | | $ 45,000.00 |
| Distributions Received ...................................................................... | | | | - |
| Sale Amount ...................................................................................... | | | | (44,000.00) |
| Realized Loss (sub-total) ................................................................. | | | | 1,000.00 |
| Interest Rate(varies by state) | <u>6%</u> | <u>8%</u> | <u>10%</u> | <u>12%</u> |
| Interest on purchase amount from and including the date of purchase up to, but not including, the date of sale. (5/25/04-5/24/05) | 2,737.50 | 3,650.00 | 4,562.50 | 5,475.00 |
| Interest on loss from and including the date of sale up to, but not including, the payment date. (5/25/05-3/15/07) | 410.50 | 680.97 | 1,018.25 | 1,422.34 |
| Total Interest | <u>3,148.00</u> | <u>4,330.97</u> | <u>5,580.75</u> | <u>6,897.34</u> |
| Rescission Offer Payment ......................... | <u>4,148.00</u> | <u>5,330.97</u> | <u>6,580.75</u> | <u>7,897.34</u> |

**Example 3:  Securities that Have Been Sold by Offeree at a Profit**

The circumstances assumed for this example have been chosen solely for their illustrative value and mathematical convenience.  They do not correspond to the actual circumstances applicable to your or any other Securities or any assessment of the likely amount of your potential Rescission Offer Payment.

### Assumptions

This example assumes the following circumstances:

- The Securities involved are an issue of common stock.
- The Offeree purchased 1,000 shares of the Securities in an Eligible Transaction that settled on May 25, 2003.
- The Offeree paid $45.00 per share ($45,000.00 total) for the Securities, including brokerage commissions.
- The Offeree sold all of those Securities in a transaction that settled on May 25, 2004 for $48.00 per share, net of brokerage commissions ($48,000.00 total).
- No dividend payments or other Distributions have been paid in respect of the Securities.
- The Offeree completes all actions necessary for acceptance of the Rescission Offer in good order before the Expiration Date.  Because the Offeree sold all of the Securities, the Offeree has no obligation to deliver them to obtain a Rescission Offer Payment.

| | | | | |
|---|---|---|---|---|
| Purchase Amount................................................................... | | | | $ 45,000.00 |
| Distributions Received............................................................ | | | | - |
| Sale Amount ........................................................................ | | | | (48,000.00) |
| Realized Gain (sub-total) ....................................................... | | | | 3,000.00 |
| Interest: | | | | |
| Interest Rate(varies by state) | 6% | 8% | 10% | 12% |
| Interest on purchase amount from and including the date of purchase up to, but not including, the date of sale. (5/25/03-5/24/04) | 2,745.00 | 3,660.00 | 4,575.00 | 5,490.00 |
| Interest on loss from and including date of sale up to, but not including, settlement date. (5/25/05 – 3/14/07) | 0.00 | 150.19 | 448.00 | 849.92 |
| Rescission Offer Payment ........................ | 0.00 | 810.19 | 2,023.00 | 3,339.92 |

**Example 4:  Multiple Purchases and Sales of Securities**

The circumstances assumed for this example have been chosen solely for their illustrative value and mathematical convenience.  They do not correspond to the actual circumstances applicable to your or any other Securities or any assessment of the likely amount of your potential Rescission Offer Payment.

**Assumptions**

This example assumes the following circumstances:

- The Securities involved are an issue of common stock.

- The Offeree purchased:

    - 1,000 shares of the Securities in an Eligible Transaction that settled on January 2, 2004 for $10.00 per share ($10,000.00 total), including brokerage commissions,

    - 1,000 shares of the Securities in an Eligible Transaction that settled on February 1, 2004 for $8.00 per share ($8,000.00 total), including brokerage commissions, and

    - 1,000 shares of the Securities in an Eligible Transaction that settled on April 1, 2004 for $12.00 per share ($12,000.00 total), including brokerage commissions.

- The Offeree sold:

    - 750 shares of the Securities in a transaction that settled on February 1, 2004 for $8.00 per share ($6,000.00 total), net of brokerage commissions.

    - 750 shares of the Securities in a transaction that settled on March 1, 2004 for $11.00 per share ($8,250.00 total), net of brokerage commissions, and

    - 750 shares of the Securities in a transaction that settled on May 1, 2004 for $10.00 per share ($7,500.00 total), net of brokerage commissions.

- The Offeree still owns the remaining 750 shares that they bought.

- No dividends or other Distributions paid on the Securities.

- The Offeree completes all actions necessary for acceptance of the Rescission Offer in good order before the Expiration Date for the Eligible Transactions that settled on January 2, 2004 and April 1, 2004, but takes no action for the Eligible Transaction that settled February 1, 2004; the Offeree in this example must deliver 250 shares of the Securities that it owns in order to validly accept the Rescission Offer in respect of the Eligible Transaction settled on April 1, 2004 (*because those shares were purchased in a transaction that is not matched to a sale –see note (1) below*).

## Calculation

The amount due to the Offeree described above would be calculated as follows:

### 1. *Rescission of Eligible Transaction Settled on January 2, 2004:*

Purchase Amount:

| | |
|---|---|
| 750 shares matched against sale on February 1, 2004 [1] ........................ | $ 7,500.00 |
| 250 shares matched against sale on March 1, 2004 [1] ........................... | 2,500.00 |
| Total Purchase Amount........................................................................ | 10,000.00 |
| Distributions in Respect of the Securities........................................................ | --- |

Sale Amount:

| | |
|---|---|
| 750 shares sold February 1, 2004 [1] ................................................... | (6,000.00) |
| 250 shares sold March 1, 2004 [1] ...................................................... | (2,750.00) |
| Total Sale Amount ............................................................................. | (8,750.00) |

Realized Loss:

| | |
|---|---|
| 750 shares sold February 1, 2004 [1] ................................................... | 1,500.00 |
| 250 shares sold March 1, 2004 [1][2] .................................................. | (250.00) |
| Total Realized Loss (sub-total)............................................................ | 1,250.00 |

| Interest Rate(varies by state) | 6% | 8% | 10% | 12% |
|---|---|---|---|---|
| Interest on purchase amount (750 shares) from and including the date of purchase up to, but not including, the date of sale. (1/2/04-1/31/04) | 37.50 | 50.00 | 62.50 | 75.00 |
| Interest on purchase amount (250 shares) from and including the date of purchase up to, but not including, the date of sale. (1/2/04-2/29/04) | 24.58 | 32.78 | 40.97 | 49.17 |
| Interest on realized loss from and including the date of sale up to, but not including, the payment date. [3] (2/1/04-3/15/07) | 291.61 | 391.98 | 493.92 | 597.45 |
| Interest on realized loss from and including the date of sale up to, but not including, the payment. [2][4] (3/1/04-3/15/07) | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Interest ................................................... | 353.70 | 474.76 | 597.40 | 721.62 |
| Rescission Offer Payment in Respect of the Eligible Transaction Settled on January 2, 2004 ........................ | 1,603.70 | 1,724.76 | 1,847.40 | 1,971.62 |

---

(1)  In the Rescission Offer, purchases and sales of Securities are accounted for on a "first in, first out" (FIFO) basis applied to all rescinded purchases and all subsequent sales of those Securities by the relevant Offeree in the cash market.  We will disregard any purchases of Securities that are not rescinded in matching purchases and sales for these purposes. This means that, if Securities have been bought and sold on more than one occasion by an Offeree, we will assume that the Offeree sold the Securities purchased in any rescinded Eligible Transactions in the first following sale

of Securities that is not already matched to an earlier Eligible Transaction that is also being rescinded. As a result, in this example, the Offeree's purchases and sales of Securities are matched as follows:

- the 1,000 shares purchased on January 2, 2004 are assumed to be the first 1,000 shares sold and are matched with the 750 shares that were sold on February 1, 2004 and 250 of the shares that were sold on March 1, 2004, and

- the 1,000 shares purchased on April 1, 2004 are matched with the 750 shares that were sold on May 1, 2004, and 250 shares that have no matching sale transaction and are still held by the Offeree.

(2)    The Offeree actually realized a gain in respect of this portion of the rescinded Eligible Transaction. Because the Rescission Offer may only be accepted or rejected in whole with respect to each Eligible Transaction, and may not be accepted in respect of only part of an Eligible Transaction, the Offeree in this example has rescinded the profitable portion of this Eligible Transaction as well as the portion of this Eligible Transaction in respect of which it realized a loss.

(3)   The amount of loss realized was $1,500.00.

(4)   No loss was realized – the Offeree realized a gain of $250.00.

## 2. Eligible Transaction Settled on February 1, 2004:

Because the Offeree did not accept the Rescission Offer in respect of the Eligible Transaction that settled on February 1, 2004, no payment would be made in respect of the 1,000 shares of the Securities that the Offeree acquired in that Eligible Transaction. In addition, that Eligible Transaction would be disregarded in matching purchases of the Securities that were purchased in rescinded Eligible Transactions against subsequent sales of the Securities for purposes of calculating related Rescission Offer Payments.

**3.    *Rescission of Eligible Transaction Settled on April 1, 2004:***

Purchase Amount:

| | |
|---|---:|
| 750 shares matched against sale on May 1, 2004 [1] ............................ | $ 9,000.00 |
| 250 shares not matched against any sale [1] ......................................... | 3,000.00 |
| Total Purchase Amount......................................................................... | 12,000.00 |

| | |
|---|---:|
| Distributions Received................................................................................... | --- |

Sale Amount:

| | |
|---|---:|
| 750 shares sold May 1, 2004 [1] ................................................................. | (7,500.00) |
| 250 shares not sold [1].................................................................................. | --- |
| Total Sale Amount ....................................................................................... | (7,500.00) |

Realized Loss:

| | |
|---|---:|
| 750 shares sold May 1, 2004 [1] ................................................................. | 1,500.00 |
| 250 shares not sold [1].................................................................................. | --- |
| Total Realized Loss (sub-total)................................................................... | 1,500.00 |

| Interest Rate(varies by state) | 6% | 8% | 10% | 12% |
|---|---:|---:|---:|---:|
| Interest on purchase amount (750 shares) from and including the date of purchase up to, but not including, the date of sale. (4/1/04-4/30/04) | 45.00 | 60.00 | 75.00 | 90.00 |
| Interest on remaining securities (250 shares) from and including the date of purchase up to, but not including, the payment date. (4/1/04-2/14/07) | 539.00 | 718.67 | 898.33 | 1078.00 |
| Interest on realized loss from and including the date of sale up to, but not including, the payment date. [3] (5/1/04-3/14/07) | 269.86 | 363.31 | 458.50 | 555.44 |
| Total Interest ........................................................... | 853.86 | 1,141.97 | 1,431.83 | 1,723.44 |
| Rescission Offer Payment in Respect of the Eligible Transaction Settled on April 1, 2004 [2] ...... | 5,353.86 | 5,641.97 | 5,931.83 | 6,223.44 |

---

(1) See note (1) to the preceding calculation "Rescission of Eligible Transaction Settled on January 2, 2004."

(2) Corresponding to the sum of the realized loss for the 750 shares that were matched to a sale, the purchase amount for the 250 shares that were not matched to a sale, and the total interest.

**Example 5:  Securities that Have Been Called or Redeemed by Issuer**

The circumstances assumed for this example have been chosen solely for their illustrative value and mathematical convenience.  They do not correspond to the actual circumstances applicable to your offer.

### Assumptions

This example assumes the following circumstances:

- The Securities involved are an issue of trust preferred securities.

- The Offeree purchased 1,000 shares of the Securities in an Eligible Transaction that settled on October 1, 2004.

- The Offeree paid $25 per share ($25,000.00 total) for the Securities, including brokerage commissions.

- Distributions consisted of interest payments paid on December 31, 2004, March 31, 2005 and June 30, 2005.

- The Securities were called for redemption by the issuer at $23.00 per share for settlement on June 30, 2005.

- The Offeree completes all actions necessary for acceptance of the Rescission Offer in good order before the Expiration Date.

### Calculation

The Rescission Offer Payment would be calculated as follows:

| | | | | |
|---|---|---|---|---|
| Purchase Amount ............................................................ | | | | $ 25,000.00 |
| Distributions in Respect of the Securities | | | | |
|     Interest payment made December 31, 2004 ................................ | | | | (375.00) |
|     Interest payment made March 31, 2005 ................................... | | | | (375.00) |
|     Interest payment made June 30, 2005 ..................................... | | | | (375.00) |
|     Total Distributions ...................................................... | | | | (1,125.00) |
| Redemption Proceeds.......................................................... | | | | (23,000.00) |
| Realized Loss (sub-total) .................................................. | | | | 875.00 |

| | 6% | 8% | 10% | 12% |
|---|---|---|---|---|
| Interest Rate(varies by state) | | | | |
| Interest on purchase amount from and including the date of purchase up to, but not including, the redemption date. (10/1/04-6/29/05) | 1,133.33 | 1,511.11 | 1,888.89 | 2,255.67 |
| Interest on realized loss from and including the redemption date up to, but not including, the payment date. (6/30/05-3/14/07) | 208.53 | 330.34 | 478.31 | 652.42 |
| Total Interest .......................................... | 1,341.87 | 1,841.45 | 2367.20 | 2,919.09 |
| Rescission Offer Payment........................................ | 2,216.87 | 2,716.45 | 3,242.20 | 3,794.09 |

**Example 6:  Treatment of Certain Distributions**

      The circumstances assumed for this example have been chosen solely for their illustrative value and mathematical convenience.  They do not correspond to the actual circumstances applicable to your or any other Securities or any assessment of the likely amount of your potential Rescission Offer Payment.

<div align="center">

**Assumptions**

</div>

This example assumes the following circumstances:

- The Securities involved are an issue of common stock.

- The Offeree purchased 1,000 shares of the Securities in an Eligible Transaction that settled on November 15, 2003.

- The Offeree paid $100.00 per share ($100,000 total) for the Securities, including brokerage commissions.

- The Offeree continues to hold the Securities.

- Distributions consisted of (i) a two-for-one stock split effected on January 2, 2004, with a record date of December 1, 2003, and (ii) a dividend of $1.00 per share paid on March 16, 2007, with a record date of March 13, 2007.

- The Offeree completes all actions necessary for acceptance of the Rescission Offer in good order before the Expiration Date, including delivery of 2,000 shares of the Securities (the 1,000 shares that the Offeree purchased, as adjusted for the stock split).  The shares issued in the stock split must be returned because they are non-cash distributions.  See "Questions and Answers About the Rescission Offer—What will I receive if I accept the Rescission Offer?"

<div align="center">

**Calculation**

</div>

The Rescission Offer Payment would be calculated as follows:

| | 6% | 8% | 10% | 12% |
|---|---|---|---|---|
| Purchase Amount ................................................................ | | | | $100,000.00 |
| Distributions in Respect of the Securities | | | | |
|     Dividend to be paid March 16, 2007[(1)] ........................................ | | | | (2,000.00) |
| Rescission Offer Payment before Interest (sub-total) ................................ | | | | 98,000.00 |
| Interest Rate(varies by state) | 6% | 8% | 10% | 12% |
| Interest on purchase amount from and including the date of purchase up to, but not including, the Payment Date. (11/15/03-3/14/07) | 20,266.67 | 27,022.22 | 33,777.78 | 40,533.33 |
| Rescission Offer Payment........................... | 118,266.67 | 125,022.22 | 131,777.78 | 138,533.33 |

_____

(1)  The March 16, 2007 dividend would be taken into account notwithstanding that it occurred after the Payment Date because the record date for that dividend preceded the Payment Date (and if that dividend were paid to us as a result of delivery of the Securities in the Rescission Offer, it would be returned to you).  See "Questions and Answers about the Rescission Offer – What will I receive if I accept the Rescission Offer?"

<div align="center">A-10</div>

# Exhibit "C"

# ACCEPTANCE FORM

Relating to the Rescission Offer by Morgan Stanley

**Pursuant to the Rescission Offer Document Dated January 16, 2007**

THE RESCISSION OFFER EXPIRES THE LATER OF 30 DAYS FROM RECEIPT OF THE OFFER OR
5:00 P.M., EST, ON FEBRUARY 20, 2007.

| | |
|---|---|
| Name(s) and Address(es) of Offeree(s): | Document Number of Offeree(s):  1007725FL |
| | State or Jurisdiction:                 Florida |
| | Applicable Interest Rate:              7.00% |
| ROBERT A SHAHEEN AND PATRICA S SHAH | |
| 17040 GRAND BAY DR | |
| BOCA RATON, FL 33496-2911 | |
| | 26898353                               Y |

The Rescission Agent for the Rescission Offer is **D. F. KING & CO., INC.**

**By First Class Mail:**

D. F. King & Co., Inc.
P.O. Box 859208
Braintree, MA 02185-9208

**By Overnight, Certified or Express Mail:**

D. F. King & Co., Inc.
161 Bay State Drive
Braintree, MA 02184

**You should direct all questions regarding the Rescission Offer to Morgan Stanley at 1-866-451-3952**

| Description | CUSIP | Trade Date | Quantity of Securities Acquired in Eligible Transaction | Offer Number of Eligible Transaction | Mark this Box to Accept the Rescission Offer |
|---|---|---|---|---|---|
| ELTRA DIAMONDS   ORD 10P SHS | 993687136 | 6/1/2000 | 10,000 | 1015955 | ☒ |
| ELTRA DIAMONDS   ORD 10P SHS | 993687536 | 6/2/2000 | 115,000 | 1040698 | ☒ |

**FOR USE BY OR ON BEHALF OF OFFEREES ONLY**

IF YOU HOLD SECURITIES THROUGH AN ENTITY OTHER THAN MORGAN STANLEY & CO. INCORPORATED

# Exhibit "D"

RS2009 Account Enquiry (History Register)                           Company : P255

Key: SHAHEEN*** ROBE *** *** *** ***          Membership: 20-MAR-2001 to 05-JUN-2001
IVC: 00000022805      Desig: ***TRUST                 Details changed: 20-MAR-2001
--------------------------------------------------------------------------------
   Class 0  ORD 10P      Last Registration 05-JUN-2001 Balance 0
                         **Ledger Entry**

      Registration Date  20-MAR-2001              Class 0   Name ORD 10P

Trans Code NMT    NON MARKET TRANSFER
Broker     686    MERRILL LYNCH INTERNATIONAL        Contra IVC     00000004059
Reference

Old Balance              0
Movement Qty       125,000
New Balance        125,000
Price             0.000000

    POSTING   Date 20-MAR-2001   Type 8910   Batch 303094   Trans 000001

<Return>, <Prev>
T=Title, C=Certificates, N=Contra Name & Address

FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

2005 MAY 25 ¹P 12: 22

CLERK OF DISTRICT COURT

In re: Filing of Documents that Exceed
Twenty-Five Pages

Case No.  3:05-mc-20-J

_____/

**AMENDED**
**STANDING ORDER**

This Order amends and supercedes the Standing Order entered on April 27, 2005.

In order to facilitate the Court's review of certain documents, the judges of the

Jacksonville Division agree that parties should submit to chambers a courtesy copy of any

document filed electronically in the Jacksonville Division that exceeds twenty-five (25)

pages (including exhibits) in length.  Courtesy copies need not be provided simultaneously

with the electronic filing of the document.  However, they should be submitted as promptly

as possible and may be provided via United States Mail or other reliable service.

Accordingly, it is hereby **ORDERED**:

1.      A party who electronically files a document exceeding twenty-five (25) pages

        (including exhibits) in length must provide a courtesy copy of the document

        (including exhibits) in paper format to the assigned judge's chambers.

2.      In order to implement this requirement, the Clerk of the Court is directed to

        file this Amended Standing Order in every new civil case filed in the

        Jacksonville Division until further Order.  The Clerk of the Court is further

        directed to file this Amended Standing Order in every pending civil case that

has been assigned one of the following Nature of Suit codes: 510, 530, 535, 540, 550 and 555.

3.    This Amended Standing Order is not applicable to criminal cases.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of May, 2005.

For the Court:


Harvey E. Schlesinger
United States District Judge


Henry Lee Adams, Jr.
United States District Judge


Timothy J. Corrigan
United States District Judge


Howell W. Melton
Senior United States District Judge


John H. Moore II
Senior United States District Judge

Howard T. Snyder
United States Magistrate Judge


Thomas E. Morris
United States Magistrate Judge


Monte C. Richardson
United States Magistrate Judge


Marcia Morales Howard
United States Magistrate Judge


Copies to:

Division Manager
DQA

-3-

IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO. 3:08-cv-00212-J-25TEM

ROBERT A. SHAHEEN, an individual, and
PATRICIA S. SHAHEEN, an individual,

        Plaintiffs,

vs.

Morgan Stanley & CO. INCORPORATED,
a Delaware company, and Morgan Stanley
DW INC., a Delaware Company,

        Defendants.

_____/

## AGREED MOTION FOR EXTENSION OF TIME
## TO FILE A RESPONSE TO COMPLAINT

Defendant MORGAN STANLEY & CO. INCORPORATED, and as successor to

Defendant MORGAN STANLEY, DW INC. ("Morgan Stanley"), files this Agreed Motion for

Enlargement of Time to serve its Response to Plaintiffs' Complaint and, states as follows:

1.     Plaintiffs filed their Complaint on January 28, 2008 in Florida State court in

Duval County, Florida.  On February 28, 2008, Morgan Stanley removed the action to this Court.

Pursuant to Fed. R. Civ. P. 81(c), Morgan Stanley's response to the Complaint is due by March

6, 2008.

2.     Due to prior commitments to undersigned counsel's schedule, Morgan Stanley

requests a brief 11-day enlargement of time through and including March 17, 2008, within which

to serve its Response to Plaintiffs' Complaint.

3.     This request for an enlargement of time is not being made for the purpose of delay

and will not prejudice Plaintiffs.

## CERTIFICATION UNDER LOCAL RULE 3.01

Undersigned counsel has contacted Plaintiffs' counsel and is authorized to represent to the Court that the Plaintiffs have no objection to the relief requested by the motion.

## MEMORANDUM OF LAW

Pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, the Court has the authority to enlarge the time for service of the Response to the Complaint for an appropriate period for good cause shown, with or without motion if the request is made before expiration of the time originally prescribed. As set forth above, there is good cause for the enlargement of time requested by Morgan Stanley.

**WHEREFORE,** Defendant Morgan Stanley respectfully requests an enlargement of time through and including Monday, March 17, 2008, within which to serve its Response to Plaintiffs' Complaint.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**

By: *Joseph C. Coates, III*
Joseph C. Coates, III, Esq.
Florida Bar No. 772860
John D. Perry, Esq.
Florida Bar No. 0639680
777 S. Flagler Drive
Suite 300 East
West Palm Beach, FL 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222
E-Mail: *coatesj@gtlaw.com*
E-Mail: *perryjd@gtlaw.com*

*Attorneys for Morgan Stanley*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 3, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Alan S. Wachs, Esq.
Chris T. Harris, Esq.
Jennifer M. Coleman, Esq.
VOLPE BAJALIA, WICKES, ROGERSON & WACHS
501 Riverside Avenue, 7th Floor
Jacksonville, Florida 32202
Telephone: (904) 355-1700
Facsimile: (904) 355-1797
E-Mail Addresses: *awachs@vbwr.com; charris@vbwr.com; jcoleman @vbwr.com; cdore@vbwr.com; sabbey@vbwr.com; caschmeyer@vbwr.com*

*Joseph C. Coates, III*
Joseph C. Coates, III

*WPB381785897.1-039657.121200 3/3/2008*

IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF
FLORIDA

JACKSONVILLE DIVISION

CASE NO. 3:08-cv-00212-J-25TEM

ROBERT A. SHAHEEN, an individual, and
PATRICIA S. SHAHEEN, an individual,

        Plaintiffs,

vs.

Morgan Stanley & CO. INCORPORATED,
a Delaware company, and Morgan Stanley
DW INC., a Delaware Company,

        Defendants.

_____/

## [PROPOSED] ORDER GRANTING AGREED MOTION FOR EXTENSION OF TIME TO FILE A RESPONSE TO COMPLAINT

THIS CAUSE is before the Court upon Defendant MORGAN STANLEY & CO.

INCORPORATED's, and as successor to MORGAN STANLEY, DW INC., ("Morgan Stanley") Motion for

Extension of Time to File a Response to Plaintiffs' Complaint. The Court has considered the

Agreed Motion, and being otherwise fully advised in the premises, it is

      **ORDERED AND ADJUDGED** that Respondent Morgan Stanley's Motion for Extension

of Time to File a Response to Plaintiffs' Complaint is hereby **GRANTED,** and Morgan Stanley's

Response to the Complaint shall be served on or before Monday, March 17, 2008.

      **DONE AND ORDERED** in Chambers this _____ day of March, 2008.

                               _____
                               Henry Lee Adams
                               United States District Judge

Copies furnished to:

Joseph C. Coates, III, Esq., John D. Perry, Esq., GREENBERG TRAURIG, P.A., 777 S. Flagler Drive, Suite 300 East, West Palm Beach, FL 33401; E-Mail Addresses: *coatesj@gtlaw.com*; and *perryjd@gtlaw.com*

Alan S. Wachs, Esq., Chris T. Harris, Esq., Jennifer M. Coleman, Esq., VOLPE BAJALIA, WICKES, ROGERSON & WACHS, 501 Riverside Avenue, 7th Floor, Jacksonville, Florida 32202; E-Mail Addresses: *awachs@vbwr.com; charris@vbwr.com; jcoleman @vbwr.com; cdore@vbwr.com; sabbey@vbwr.com; caschmeyer@vbwr.com*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROBERT A. SHAHEEN, an individual, and
PATRICIA S. SHAHEEN, an individual ,

<div align="center">Plaintiffs,</div>

v.                                                          Case No.  3:08-cv-212-J-25TEM

MORGAN STANLEY & CO., INCOPORATED, a
Delaware company, and MORGAN STANLEY
DW INC., a Delaware Company,

<div align="center">Defendants.</div>

_____/

<div align="center"><u>**NOTICE OF DESIGNATION UNDER LOCAL RULE 3.05**</u></div>

Please take notice that, in accordance with Local Rule 3.05, this action is designated as a

Track TWO  Case.  Plaintiff is responsible for serving a copy of this notice and any attachment to

this notice upon all other parties.  All parties must meet the  requirements established in Local Rule

3.05 for cases designated on this track and utilize the attached Case Management Report form (the

Court **will not** accept a unilateral Report).

The Court anticipates that most Track Two cases will be tried within 18 months of the filing

date.  Therefore, the discovery deadline shall be set 11 months from the filing date.  If the parties

are seeking more time for discovery then this 11 month time-frame would allow, they shall, along

with a showing of good cause, provide the Court with their proposal for the discovery deadline in

an addendum to the case management report.

The parties are invited to consider assumption of responsibility for this case by the assigned

Magistrate Judge.  Attached to filing party's copy of this Notice for such purpose is a self-

explanatory Consent form.  Note that the form is to be filed **ONLY** if signed and agreed to by <u>all</u>

parties on a single form.

<div align="right">SHERYL L. LOESCH, CLERK</div>

By:  _/s/_ *Paula Goins*_____
Deputy Clerk

Date:  March 6, 2008

Attachments  - Case Management Report  form and Form A0-85 "Notice of Availability of a United States Magistrate
                    Judge to Exercise Jurisdiction"

Distribution:
          -Copies to plaintiff(s) (including habeas petitioner(s), bankruptcy appellant(s),
              and removing defendant(s))

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT A. SHAHEEN, an individual, and
PATRICIA S. SHAHEEN, an individual ,

                    Plaintiffs,

v.                                                              Case No.  3:08-cv-212-J-25TEM

MORGAN STANLEY & CO., INCOPORATED, a
Delaware company, and MORGAN STANLEY DW
INC., a Delaware Company,

                    Defendants.
_____/

**CASE MANAGEMENT REPORT**

    1.    <u>Meeting of Parties</u>:  Pursuant to Local Rule 3.05(c)(2)(B) or (c)(3)(A), a meeting was held on _____ (date) at _____ (time) (check one) (__) by telephone (or) (__) at _____ __ (place) and was attended by:

<u>Name</u>                                    <u>Counsel for (if applicable_____</u>

    2.    <u>Initial Disclosures</u>:

        a.    Fed. R. Civ. P. 26(a)(1) as amended December 1, 2000 provides that "[e]xcept in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties: (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information; (B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment; (C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and (D)

for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P.26(a)(1).[1]

The parties (check one)

_____    have exchanged information referenced by Fed. R. Civ. P. 26(a)(1)(A)-(D) or agree to exchange such information on or before _____ (date).[2]

_____    stipulate to not disclose information referenced by Fed. R. Civ. P. 26(a)(1)(A)-(D) for the specific reason(s) that:

_____

_____

_____

_____

_____    have been unable to reach agreement on whether to disclose information referenced by Fed. R. Civ. P. 26(a)(1)(A)-(D).    (Identify party or parties) _____ objects to disclosure of such information for the specific reason(s) that:

_____

_____

_____

_____

3.    <u>Discovery Plan - Plaintiff</u>:  The parties jointly propose the following Plaintiff's discovery plan:

a.    <u>Plaintiff's Planned Discovery</u>: A description of every discovery effort Plaintiff plans to pursue is described below.  The description of each discovery effort will be listed under the appropriate heading below and will include the subject matter of the discovery and the time during which the discovery will be pursued:

(1) <u>Requests for Admission:</u>

---

[1] A party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.  <u>See</u> Fed. R. Civ. P. 26(a)(1).

[2] Information referenced by Fed. R. Civ. P. 26(a)(1)(A)-(D) must be made "at or within 14 days of the Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in the circumstances of the action and states the objection in the Rule 26(f) discovery plan." Fed. R. Civ. P. 26(a)(1).  Any party first served or otherwise joined after the Rule 26(f) conference must make these disclosures within 30 days after being served or joined unless a different time is set by stipulation or court order.  <u>See</u> Fed. R. Civ. P. 26(a)(1).

Number of Requests for Admission:  Parties may seek to limit the number of Plaintiff's requests for admission in accordance with Fed. R. Civ. P. 26(b)(2).  Any such request must be made in paragraph 6 below and approved by the court.

> (2) <u>Written Interrogatories:</u>

Number of Interrogatories:  Local Rule 3.03(a) provides "[u]nless otherwise permitted by the Court for cause shown, no party shall serve upon any other party, at one time or cumulatively, more than twenty-five (25) written interrogatories pursuant to Rule 33, Fed.R.Civ.P., including all parts and subparts."  Any request by Plaintiff to exceed this limit must be made in paragraph 6 below and approved by the court.

> (3) <u>Requests for Production or Inspection:</u>

> (4) <u>Oral Depositions:</u>

Number of Depositions:  Local Rule 3.02(b) provides, "[i]n accordance with Fed. R. Civ. P. 30(a)(2)(A) and 31(a)(2)(A), no more than ten depositions per side may be taken in any case unless otherwise ordered by the Court."  Any request by Plaintiff to exceed this limit must be made in paragraph 6 below and approved by the court.

Time Permitted for Each Deposition:    Each deposition is limited to one day of seven hours in accordance with Fed. R. Civ. P. 30(d)(2) unless extended by agreement of the parties or order of Court.

The parties stipulate/request a court order to extend the time to take the deposition of the following individuals:

| Name | Proposed length of Deposition | Grounds |
|------|-------------------------------|---------|

(cont'd)

| Name | Proposed length of Deposition | Grounds |
|------|-------------------------------|---------|

b. Disclosure of Expert Testimony:  Parties stipulate, in accordance with Fed. R. Civ. P. 26(a)(2)(C), that Plaintiff's Fed. R. Civ. P. 26(a)(2) disclosure will be due as noted here:

c. Supplementation of Disclosures and Responses:  Parties agree that Plaintiff's supplementation under Fed. R. Civ. P. 26(e) will be provided at the following times:

d. Completion of Discovery:  Plaintiff will commence all discovery in time for it to be completed on or before _____ (date).

4. Discovery Plan - Defendant:  The parties jointly propose the following Defendant's discovery plan:

a. Defendant's Planned Discovery: A description of every discovery effort Defendant plans to pursue is described below.  The description of each discovery effort will be listed under the appropriate heading below and will include the subject matter of the discovery and

the time during which the discovery will be pursued:

        (1) <u>Requests for Admission:</u>

        Number of Requests for Admission:  Parties may seek to limit the number of Defendant's requests for admission in accordance with Fed. R. Civ. P. 26(b)(2).  Any such request must be made in paragraph 6 below and approved by the court.

        (2) <u>Written Interrogatories:</u>

        Number of Interrogatories:  Local Rule 3.03(a) provides "[u]nless otherwise permitted by the Court for cause shown, no party shall serve upon any other party, at one time or cumulatively, more than twenty-five (25) written interrogatories pursuant to Rule 33, Fed.R.Civ.P., including all parts and subparts."  Any request by Defendant to exceed this limit must be made in paragraph 6 below and approved by the court.

        (3) <u>Requests for Production or Inspection:</u>

        (4) <u>Oral Depositions:</u>

Number of Depositions:  Local Rule 3.02(b) provides, "[i]n accordance with Fed. R. Civ. P. 30(a)(2)(A) and 31(a)(2)(A), no more than ten depositions per side may be taken in any case unless otherwise ordered by the Court."  Any request by Defendant to exceed this limit must be made in paragraph 6 below and approved by the court.

Time Permitted for Each Deposition:  Each deposition is limited to one day of seven hours in accordance with Fed. R. Civ. P. 30(d)(2) unless extended by agreement of the parties or order of Court.

The parties stipulate/request a court order to extend the time to take the deposition of the following individuals:

| Name | Proposed length of Deposition | Grounds |
|------|-------------------------------|---------|
|      |                               |         |

b. <u>Disclosure of Expert Testimony</u>:  Parties stipulate, in accordance with Fed. R. Civ. P. 26(a)(2)(C), that Defendant's Fed. R. Civ. P. 26(a)(2) disclosure will be due as noted here:

c. <u>Supplementation of Disclosures and Responses</u>:  Parties agree that Defendant's supplementation under Fed. R. Civ. P. 26(e) will be provided at the following times:

d. <u>Completion of Discovery</u>:  Defendant will commence all discovery in time for it to be completed on or before _____ (date).

5.     <u>Joint Discovery Plan - Other Matters</u>: Parties agree on the following other matters relating to discovery (*e.g.*, handling of confidential information, assertion of privileges, whether discovery should be conducted in phases or be limited to or focused upon particular issues):

6.  <u>Disagreement or Unresolved Issues Concerning Discovery Matters</u>:  Any disagreement or unresolved issue will not excuse the establishment of discovery completion dates. The parties are unable to agree as to the following issues concerning discovery:

7.  <u>Third Party Claims, Joinder of Parties, Potentially Dispositive Motions</u>: Parties agree that the final date for filing motions for leave to file third party claims, motions to join parties, motions for summary judgment, and all other potentially dispositive motions should be _____ ____. (Note time limit in Local Rule 4.03.)

8.  <u>Settlement and Alternative Dispute Resolution</u>: Pursuant to Local Rule 3.05(c)(2)(C)(v), the parties submit the following statement concerning their intent regarding Alternative Dispute Resolution:

Parties agree that settlement is
___ likely          (check one)
___ unlikely.

Parties agree to consent to binding arbitration pursuant to Local Rules 8.02(a)(3) and 8.05(b).

        yes             no            likely to agree in future

If binding arbitration is not agreed to, the court may order nonbinding arbitration pursuant to Chapter Eight of the Local Rules of the Middle District of Florida,  mediation pursuant to Chapter Nine of the Local Rules of the Middle District of Florida, or both.

9.  <u>Consent to Magistrate Judge Jurisdiction</u>:   The parties agree to consent to the jurisdiction of the United States Magistrate Judge for final disposition, including trial.  <u>See</u> 28 U.S.C. § 636.

        yes             no            likely to agree in future

10.  <u>Preliminary Pretrial Conference</u>:
Track Three Cases: Local Rule 3.05(c)(3)(B) provides that preliminary pretrial conferences are mandatory in Track Three Cases.

Track Two Cases:  Parties

____request     (check one)
____do not request

a preliminary pretrial conference before entry of a Case Management and Scheduling Order in this Track Two case.  Unresolved issues to be addressed at such a conference include:

      11.    <u>Final Pretrial Conference and Trial</u>:  Parties agree that they will be ready for a final pretrial conference on or after _____(date) and for trial on or after _____(date).  This **Jury** ___ **Non-Jury** ___ trial is expected to take approximately ____ hours.

      12.    <u>Pretrial Disclosures and Final Pretrial Procedures</u>:  Parties acknowledge that they are aware of and will comply with pretrial disclosures requirements in Fed. R. Civ. P. 26(a)(3) and final pretrial procedures requirements in Local Rule 3.06.

      13.    <u>Other Matters</u>:

Date:

Signature of Counsel (with information required by Local Rule 1.05(d)) and Signature of Unrepresented Parties

_____

_____

_____

_____

_____

_____

_____

AO 85 (Rev. 8/98) Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

NOTICE, CONSENT, AND ORDER OF REFERENCE -
EXERCISE OF JURISDICTION BY A UNITED STATES
MAGISTRATE JUDGE

v.                                          Case No.

## NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE
## TO EXERCISE JURISDICTION

In accordance with the provisions of 28 U.S.C. 636(c), and Fed.R.Civ.P. 73, you are notified that a United States Magistrate Judge of this District Court is available to conduct any or all proceedings in this case including a jury or non-jury trial, and to order the entry of a final judgment.  Exercise of this jurisdiction by a Magistrate Judge is, however, permitted only if all parties voluntarily consent.

You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's jurisdiction from being exercised by a Magistrate Judge.  If any party withholds consent, the identity of the parties consenting or withholding consent will not be communicated to any Magistrate Judge or to the District Judge to whom the case has been assigned.

An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this District Court.

## CONSENT TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

Party Represented                    Signatures                        Date

_____    _____    _____

_____    _____    _____

_____    _____    _____

_____    _____    _____

## ORDER OF REFERENCE

**IT IS ORDERED** that this case be referred to the assigned United States Magistrate Judge, to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. 636(c) and Fed.R.Civ.P. 73.

Date:_____                _____
                                        UNITED STATES DISTRICT JUDGE

NOTE: RETURN THIS FORM TO THE CLERK OF COURT <u>ONLY IF</u> ALL PARTIES HAVE CONSENTED ON
THIS FORM TO THE EXERCISE OF JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ROBERT A. SHAHEEN, an individual, and
PATRICIA S. SHAHEEN, an individual,

       Plaintiffs,

v.                           CASE NO.:  3:08-CV-212-J-25TEM

MORGAN STANLEY & CO.
INCORPORATED, a Delaware company, and
MORGAN STANLEY DW INC., a Delaware
Company,

       Defendants.

_____/

## NOTICE OF COMPLIANCE

PLEASE TAKE NOTICE that the undersigned counsel for Plaintiffs, Robert A. Shaheen
and Patricia S. Shaheen, has served copies of this Court's Related Case Order and Track Two
Notice with attachments (Docket No. 6) on Defendant, Morgan Stanley & Co., Incorporated and
Morgan Stanley DW Inc., by facsimile and First Class, postage paid, U. S. Mail on this 11th day
of March, 2008.

          */s/ Chris T. Harris*_____
          Alan S. Wachs
          Florida Bar No. 980160
          Chris T. Harris
          Florida Bar No. 107115
          Attorneys for Plaintiffs, Robert A. Shaheen
          and Patricia S. Shaheen
          **Volpe, Bajalia, Wickes,**
          **Rogerson & Wachs**
          Everbank Plaza
          501 Riverside Avenue, 7th Floor
          Jacksonville, Florida 32202
          Tel:    (904) 355-1700
          Fax:   (904) 355-1797
          awachs@vbwr.com
          charris@vbwr.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 11, 2008, I electronically filed the foregoing Notice of Compliance with the Clerk of the Court by using the CM/ECF system which will provide electronic notification of the same to Defendants, Morgan Stanley & Co., Incorporated and Morgan Stanley DW Inc., c/o its counsel of record, Joseph C. Coates, III, Esq. coatesj@gtlaw.com.   I further certify that I will provide notice of this electronic filing by *facsimile and first-class mail* to non-CM/ECF participate, John Duncan Perry, Esq., Greenberg Taurig, P.A., 777 S. Flagler Drive, Suite 300 East, West Palm Beach, Florida 33401.

*/s/ Chris T. Harris*_____
Alan S. Wachs
Florida Bar No. 980160
Chris T. Harris
Florida Bar No. 107115
Attorneys for Plaintiffs, Robert A. Shaheen
and Patricia S. Shaheen
**Volpe, Bajalia, Wickes,**
 **Rogerson & Wachs**
Everbank Plaza
501 Riverside Avenue, 7th Floor
Jacksonville, Florida 32202
Tel:    (904) 355-1700
Fax:    (904) 355-1797
awachs@vbwr.com
charris@vbwr.com

IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

ROBERT A. SHAHEEN, an individual, and     CASE NO. 3:08-cv-00212-J-25TEM
PATRICIA S. SHAHEEN, an individual,

      Plaintiffs,

vs.

MORGAN STANLEY & CO. INCORPORATED,
a Delaware company, and MORGAN STANLEY
DW INC., a Delaware Company,

      Defendants.

_____/

## DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE, WITH INCORPORATED MEMORANDUM OF LAW OR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF (DISPOSITIVE MOTION)

Defendant, MORGAN STANLEY & CO. INCORPORATED and as successor to

MORGAN STANLEY, DW INC. ("Morgan Stanley"), pursuant to 12(b)(3) of the

Federal Rule of Civil Procedure and 28 U.S.C. § 1406(a), moves to dismiss the

Complaint brought by Plaintiffs, ROBERT A. SHAHEEN and PATRICIA S. SHAHEEN

("Plaintiffs"), for improper venue, or in the alternative, pursuant to 28 U.S.C. § 1404(a),

for the entry of an order transferring this action to the United States District Court for the

Southern District of New York.  Alternatively, Morgan Stanley moves to dismiss the

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to

state a claim for relief.  In support of its motion, Morgan Stanley states as follows:

## I.    Introduction

The action arises from a January 16, 2007 Rescission Offer made by Morgan Stanley to its customers who purchased shares of Petra Diamonds Limited stock. Plaintiffs were eligible to participate in the Rescission Offer because they purchased $125,000 of Petra Diamonds shares in one of their Morgan Stanley accounts in or about June 2000.

Plaintiffs rejected the Rescission Offer when they failed to provide Morgan Stanley with either a trade confirmation or month-end statement reflecting the sale of their Petra Diamonds shares. Plaintiffs' production of these documents was a material term of the Rescission Offer (among other things, Morgan Stanley needed these documents to verify the disposition of the shares and calculate the correct rescission amount).

## II.    Factual Background

Plaintiffs are Morgan Stanley customers. In the course of opening their Morgan Stanley accounts, Plaintiffs executed a Customer's Agreement. *See* Exhibit A, attached hereto. Paragraph 12 of the Customer's Agreement stated in bold-faced type:

> ANY DISPUTE THE UNDERSIGNED MAY HAVE WITH
> [MORGAN STANLEY] ARISING OUT OF, RELATING
> TO OR IN CONNECTION WITH [MORGAN
> STANLEY'S] BUSINESS, ANY TRANSACTION
> BETWEEN [PLAINTIFFS AND MORGAN STANLEY] OR
> THIS AGREEMENT SHALL BE DETERMINED BY
> ARBITRATION OR LITIGATION IN COURT AT THE
> ELECTION OF THE UNDERSIGNED. REGARDLESS
> WHETHER THE UNDERSIGNED CHOOSES TO
> PROCEED BY ARBITRATION OR LITIGATION, THE
> UNDERSIGNED AND [MORGAN STANLEY] AGREE TO
> FOLLOW THE PROCEDURE, AND ABIDE THE

2

REQUIREMENTS, LISTED IN PARAGRAPHS 13, 14,
AND 17, BELOW.

*Id.* at ¶ 12.  Paragraph 14 of the Customer's Agreement further stated in pertinent part

(also in bold-faced type):

> UNLESS THE PARTIES OTHERWISE AGREE IN
> WRITING WHEN ANY DISPUTE ARISES, ANY
> LITIGATION MUST BE INSTITUTED IN THE UNITED
> STATES DISTRICT COURT FOR THE SOUTHERN
> DISTRICT OF NEW YORK OR THE SUPREME COURT
> OF THE STATE OF NEW YORK FOR THE COUNTY OF
> NEW YORK, AND THE UNDERSIGNED
> IRREVOCABLY CONSENTS TO THE JURISDICTION OF
> EITHER OF THOSE COURTS.

*Id.* at ¶ 14.[1]

In or about June 2000, Plaintiffs purchased $125,000 of shares of Petra Diamonds

Limited stock in one of their Morgan Stanley accounts.  In or about December 2000,

Plaintiffs transferred their Petra Diamonds shares to an unrelated account they maintained

at Merrill Lynch, where they were subsequently sold or exchanged for an equal value of

securities in another entity.

---

[1] The Customer's Agreement also contained a choice-of-law provision in Paragrah 17, which stated in
pertinent part:

> THIS AGREEMENT, ITS ENFORCEMENT, ANY CONTRACT, AND
> ANY DISPUTE BETWEEN US, WHETHER ARISING OUT OF OR
> RELATING TO THE UNDERSIGNED'S ACCOUNTS OR
> OTHERWISE, SHALL BE GOVERNED BY THE LAW OF THE
> STATE OF NEW YORK, EXCLUDING ITS CONFLICT OF LAW
> RULES; and its provisions shall be continuous, shall cover individually
> and collectively all accounts which the undersigned may open or reopen
> with [Morgan Stanley], and shall inure to the benefit of [Morgan
> Stanley's] present organization and any successor organization . . . for an
> cause whatsoever . . . .

*Id.* at ¶ 17 (bold-faced type in original).

3

In or about January 2007, it came to Morgan Stanley's attention that Plaintiffs' Petra Diamonds share purchases might not have satisfied applicable registration requirements under state securities laws and regulations. Accordingly, on January 16, 2007, Morgan Stanley sent Plaintiffs (and other Morgan Stanley customers) a written offer to rescind their purchase of Petra Diamond shares ("the Rescission Offer"). A copy of the Rescission Offer is attached to the Complaint as Exhibit B.

Subject to the terms and conditions of the Rescission Offer, Morgan Stanley agreed to rescind the purchase of Petra Diamonds shares for those investors who still held the shares and to pay investors who had sold their shares the difference between the purchase price and the sale price provided the investors supplied certain specified documentation. In addition, Morgan Stanley agreed to pay interest from the date of purchase to the sale date. Under the terms of the Rescission Offer, investors who had transferred their Petra Diamonds shares to another brokerage firm and then sold them were required to submit a copy of the trade confirmation or month-end statement evidencing the sale so that Morgan Stanley could verify the disposition of the shares and calculate the correct rescission amount to be paid.

Despite being granted an extension of time by Morgan Stanley, Plaintiffs never provided Morgan Stanley with a Merrill Lynch trade confirmation or month-end statement reflecting the sale of their Petra Diamonds shares. Instead, Plaintiffs offered Morgan Stanley a complicated story of a securities transaction involving a sheik from the Sultanate of Oman. Plaintiffs' failure to satisfy this material term of the Rescission Offer constituted a rejection of the Offer.

4

Notwithstanding their rejection of the Rescission Offer, on or about January 28, 2008, Plaintiffs initiated this action in the Circuit Court in and for Duval County, Florida, and attempted to state a single cause of action for breach of contract. On our about February 27, 2008, this case was removed to the United States District Court for the Middle District of Florida.

### III.    **Memorandum of Law**

"The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference . . . . *When, however, the parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered.*" *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (citations omitted) (emphasis added). As the Eleventh Circuit has explained:

> In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system.

*Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)).

Here, the parties have entered into a contract containing a valid and reasonable choice-of-forum provision. Specifically, Plaintiffs executed a Customer's Agreement when they opened their Morgan Stanley accounts. *See* Exhibit A at ¶ 14.[2] Pursuant to

---

[2] Despite the fact that Plaintiffs did not attach a copy of this contract to their Complaint, the Court may nevertheless consider this contract for purposes of resolving a Rule 12(b)(3) motion to dismiss for improper venue. *See Lobo v. Celebrity Cruises, Inc*, 426 F. Supp.2d 1296, 1304 (S.D. Fla. 2006) ("The court . . . and may look to facts outside the complaint to determine whether venue is proper.").

Paragraphs 12 and 14 of the Customer's Agreement, Plaintiffs expressly agreed that the United States District Court for the Southern District of New York or the Supreme Court of the State of New York for the County of New York would be the exclusive fora for any litigation "arising out of, relating to or in connection with [Morgan Stanley's] business[ or] any transaction between [Plaintiffs and Morgan Stanley]." *Id.* at ¶¶ 12, 14.

Plaintiffs must not be permitted to violate their contractual obligations by pursuing litigation against Morgan Stanley in a forum different from the one to which they had previously agreed. (It is also telling that Plaintiffs filed this action in state court in Jacksonville, Florida, despite the fact that upon information and belief they reside in Boca Raton, Florida.) Accordingly, for the reasons set forth more fully below, the Complaint must be dismissed under Rule 12(b)(3) and 28 U.S.C. § 1406(d) because it was filed in an improper venue. Alternatively, pursuant to 28 U.S.C. § 1404(a), this action must be transferred to the Southern District of New York.

In the event that venue is determined to be proper (it is not), then for the reasons set forth below, the Complaint must be dismissed under Rule 12(b)(6) because Plaintiffs have failed to state a claim for relief.

### A.    Plaintiffs' Complaint is Governed by Plaintiffs' Customer's Agreement

This action arises from an offer made by Morgan Stanley to Plaintiffs to rescind $125,000 of shares of Petra Diamonds Limited stock that they purchased in one of their Morgan Stanley accounts.

In connection with opening their Morgan Stanley accounts, Plaintiffs executed a Customer's Agreement that expressly governed "[a]ny dispute the undersigned may have

6

with [Morgan Stanley] arising out of, relating to or in connection with [Morgan Stanley's] business, any transaction between [Plaintiffs and Morgan Stanley] or this agreement shall be determined by arbitration or litigation in court at the election of the undersigned." Exhibit A, at ¶ 12.

Morgan Stanley's offer to rescind Plaintiffs' Petra Diamonds shares plainly arises out of, relates to, and is in connection with Morgan Stanley's business. Accordingly, based on the plain language of the Customer's Agreement, Plaintiffs' dispute regarding the Rescission Offer is governed by the Customer's Agreement -- including the choice-of-forum provision contained therein.

### B.    The Complaint Must Be Dismissed Under Rule 12(b)(3) Because It Was Filed In an Improper Venue

"Motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed. R. Civ. P. 12(b)(3) as motions to dismiss for improper venue." *Lipcon v. Underwriters at Lloyds, London*, 148 F.3d 1285, 1290 (11th Cir. 1998).[3]

For purposes of Rule 12(b)(3),

> [c]hoice clauses will be found "unreasonable under the circumstances," and thus unenforceable only when: (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy.

---

[3] Consistent with the ruling in *Lipcon*, Section 1406(a) similarly states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

*Id.* at 1296 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), and

*MS/Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). *None* of the four exclusive

grounds identified by the Eleventh Circuit for denying enforcement of a choice-of-forum

provision exist in this case. As such, the choice-of-forum provision contained in the

Customer's Agreement executed by Plaintiffs must be enforced.

Foremost, the choice-of-forum clause contained in Paragraph 14 of Customer's

Agreement was not procured by fraud, nor will Plaintiffs be able to prove otherwise. To

the contrary, this clause was standard language contained in all Customer's Agreements

signed by Morgan Stanley's customers at that time.

Further, Plaintiffs will not be deprived of their day in court if they are required to

comply with the terms of the Agreement and pursue their dispute against Morgan Stanley

in New York. Likewise, New York law is not "fundamentally unfair," nor will requiring

Plaintiffs to litigate their claims in New York deprive them of any remedies. The

Southern District of New York is no less fair, nor does it offer any less remedies, than the

Middle District of Florida.

As a practical matter, Morgan Stanley's witnesses are located in New York, not in

Florida, thus making New York the logical and more convenient forum. Moreover,

Plaintiffs do not have any special nexus with the Middle District of Florida. Indeed, on

information and belief, they do not even live in the Middle District of Florida. More

importantly, the substantive issues in this dispute are governed by New York law because

the Customer's Agreement executed by Plaintiffs contained a New York choice-of-law

clause. *See* Exhibit A at ¶ 17. The District Court for the Southern District of New York

is certainly as capable as the District Court for the Middle District of Florida to interpret and apply New York law.

Finally, enforcing Plaintiff's choice-of-forum will not contravene any strong public policy (nor any weak ones). To the contrary, there is a strong public policy in favor of *enforcing* the choice-of-law provision -- specifically, the strong public policy of encouraging parties to comply with their legal and contractual obligations.

Accordingly, because the choice-of-forum clause executed by Plaintiffs is enforceable, and because venue is not proper in this Court pursuant to that choice-of-forum clause, the Complaint should be dismissed pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a).

C.    **If the Complaint is Not Dismissed Under Rule 12(b)(3), Then This Action Must Be Transferred to the United States District Court for the Southern District of New York Pursuant to Section 1404(a)**

"[W]hen a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *In re Ricoh Corp.*, 870 F.2d at 573. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The Eleventh Circuit has held that, absent extreme circumstances not present in this case, the existence of a choice-of-forum clause effectively trumps all other considerations regarding whether venue is proper for purposes of Section 1404(a):

> [W]hen weighing whether transfer is justified under section 1404(a), a choice of forum clause is "a *significant* factor that figures *centrally* in the District Court's calculus." Thus, while other factors might "conceivably" militate against a transfer, the clear import of the Court's opinion is that the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors.

*Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)) (citations omitted) (emphasis in original).

Here, Plaintiffs have executed a contract -- their Customer's Agreement -- which contains a choice-of-forum clause. As a matter of law, Plaintiffs now bear the burden of proving that their choice-of-forum clause should not be enforced. *See id.* Plaintiffs cannot satisfy this burden.

As discussed above, *none* of four exclusive grounds for denying enforcement of the Plaintiffs' choice-of-forum clause under Rule 12(b)(3) exist in this case. Moreover, under Section 1404(a), there is a presumption *in favor of enforcing* Plaintiff's choice-of-forum clause which trumps any considerations that might otherwise weigh against enforcement. *See id.*

Accordingly, because the Customer's Agreement executed by Plaintiffs contains a choice-of-forum clause, and because venue is not proper under that choice-of-forum clause, then pursuant to 28 U.S.C. § 1404(a), this action should be transferred to the United States District Court for the Southern District of New York, which is the proper venue.

10

**D.    If Florida is Found to Be the Proper Venue, Then The Complaint Must Be Dismissed Under Rule 12(b)(6) Because It Fails to State a Claim for Relief**

The Complaint in this matter purports to state a single count for breach of contract. As set forth below, the Complaint fails to state a claim because its central allegations regarding the purported agreement between the parties conflicts with the documents that Plaintiffs have attached to the Complaint to establish the alleged contract. In light of this direct conflict, the express terms of the written documents control, and the Complaint must be dismissed as a matter of law.

In order to survive a motion to dismiss, a plaintiff must "allege more than labels and conclusions; his complaint must include factual allegations adequate to raise a right to relief above the speculative level." *Financial Security Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (U.S. 2007)) (internal quotations omitted). "[T]he factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief" and "contain either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory." *Id.* at 1282-1283 (internal quotations omitted).

In a breach of contract case, the court "can look to the contract itself and determine if it speaks to the issues of the dispute." *Sarria Holding, Inc. v. Walgreen Co.*, 2003 WL 1528711, *2 (S.D. Fla. 2003). If it does, "then plaintiff's ability to state a claim upon which relief can be granted, thus surviving a motion to dismiss, depends on the specific terms of the contract, which the court analyzes as a matter of law." *Id.*

11

"[W]here there is a conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails" and the case must be dismissed. *Int'l Star Registry of Ill. v. Omnipoint Marketing, LLC*, 510 F. Supp. 2d 1015, 1022 (S.D. Fla. 2007); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deduction of fact are *not admitted as true*, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. *If the appended document*, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., *reveals facts which foreclose recovery as a matter of law, dismissal is appropriate*.") (emphasis added).

### 1.    Plaintiffs' Allegations Conflict with the Documents Appended to the Complaint

Plaintiffs' Complaint is based on the alleged breach of a contract formed through an written offer by Morgan Stanley (attached to the Complaint as Exhibit B) and a written acceptance by Plaintiffs (attached to the Complaint as Exhibit C). *See* Complaint at ¶¶ 21, 24. Plaintiffs allege that by sending Morgan Stanley the document they have attached to the Complaint as Exhibit C, as well as other additional documentation, they "timely accepted Morgan Stanley's Rescission Offer, and Morgan Stanley was therefore obligated to pay [them] $125,000 plus interest at 7%, pursuant to the terms thereunder." *Id.* at ¶ 38.

A review of the relevant documents, however, reveals that Plaintiffs have failed to allege that they properly accepted Morgan Stanley's offer (nor can they make such an allegation) -- and consequently their breach of contract claim fails as a matter of law.

Specifically, the Rescission Offer attached to the Complaint as Exhibit B expressly

provides under the section entitled "How do I accept the Rescission Offer" that a person

who has sold his securities at a firm other than Morgan Stanley "must complete the

colored Acceptance Form that accompanies this document and ensure that it and *all*

*required supporting documents specified in the colored Acceptance Form are received by*

*the Rescission Agent* before the Expiration Date at the above address." Complaint, Ex. B

at 9 and 20 (emphasis added).[4]

Because the offering and the Rescission Offer were made in New York -- and

because the Customer's Agreement executed by Plaintiffs contained a New York choice-

of-law clause -- New York substantive law on contracts controls.

The well-settled law reflects that an offeror sets the terms and manner for the

acceptance of his offer.  Where an "offer specifies the mode of acceptance, an acceptance

in any other manner is wholly nugatory and ineffectual." *Rochester Home Equity, Inc. v.*

*Guenette*, 6 A.D.3d 1119, 1120, 775 N.Y.S.2d 680, 681 (N.Y. 4th Dept. 2004) (holding

that no contract was formed where offer required that an "Acceptance of Commitment"

form be signed and returned with a commitment fee and offeree returned only the signed

form but no fee payment); *see also Gram v. Mutual Life Ins. Co. of New York*, 300 N.Y.

375, 382, 91 N.E.2d 307, 311 (N.Y. 1950) ("It is a fundamental rule of contract law that

an acceptance must comply with the terms of the offer."); *Farago Advertising, Inc. v.*

---

[4] Morgan Stanley requsted this documentation to ensure that it had an accurate record of the consideration the offeree received for the sale of the Petra Diamonds shares in order to determine the correct amount of the rescission offer for that specific offeree.

*Hollinger Intern., Inc.,* 157 F. Supp. 2d 252, 258 (S.D.N.Y. 2001) ("[An] offeror can dictate the manner of an offeree's acceptance.").

Florida law on this point is the same and likewise holds that the terms and manner of acceptance of an offer are set by the offeror. "Generally, an acceptance of an offer must be unconditional and identical with the terms of the offer." *Schlosser v. Perez*, 832 So. 2d 179, 182 (Fla. 2d DCA 2002) (holding that settlement offer conditioned upon offeree providing name and coverage for each of its insurers was not accepted where offeree failed to provide such information); *Sullivan v. Economic Research Properties*, 455 So. 2d 630, 631 (Fla. 5th DCA 1984) ("It is a generally recognized principle that the acceptance of an offer, to result in a contract, must be absolute and unconditional, identical with the terms of the offer and in the mode, at the place and within the time expressly or impliedly required by the offer.").

Accordingly, Morgan Stanley dictated the manner in which its offer could be accepted by requiring both a completed form and specific documentation referenced in an expressly referenced and incorporated attached document. Notably, the Rescission Offer attached to the Complaint does not include a copy of the incorporated Acceptance Form.

The Complaint does not allege that Plaintiffs provided the specific documentation required by the Acceptance Form referenced in the Rescission Offer. Instead, Plaintiffs merely allege that they returned the Acceptance Form itself, "thereby forming the 'Rescission Agreement.'" Complaint at ¶ 24. Although Plaintiffs attach a single page which they describe as the Acceptance Form to their Complaint as Exhibit C, it is facially

apparent that this so-called form is incomplete because it does not specify any "supporting documents" as required by the Rescission Offer.

A full and complete copy of the Acceptance Form is attached to this Motion as Exhibit B. Because the Acceptance Form, attached in partial form to the Complaint, is obviously a central document to this dispute (and in fact relied on by Plaintiffs to establish the purported contract), the Court can consider the complete version of this document without converting this motion to dismiss into one for summary judgment. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (permitting the court to consider a form contract attached to a motion to dismiss on the grounds that it was referenced in and central to the complaint); *Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (permitting consideration of insurance policy even though it was not mentioned in or attached to the complaint).

The complete Acceptance Form expressly lists the documents that must be provided to accept the Rescission Offer. *See* Exhibit B at 4. Because Plaintiffs sold their shares outside of Morgan Stanley, they were required to meet all requirements set forth in Paragraph 3 on Page 4 of the Acceptance Form. These express requirements included an obligation to provide "the Rescission Agent with *a copy of the appropriate trade confirmation or month-end statement issued by your bank or brokerage firm as evidence of the sale of the Securities listed on Page 1.*" Exhibit A at 4, ¶ 3(e) (emphasis added).

Despite this requirement, Plaintiffs have not alleged that they provided these documents to Morgan Stanley in the permitted time frame. Nor can they make such an allegation -- because rather than comply with the material terms of the Rescission Offer,

15

Plaintiffs instead offered Morgan Stanley a bizarre and irrelevant tale involving a complicated securities transaction with the Sultanate of Oman. As a result, although Plaintiffs vaguely allege in their Complaint that they obtained and sent "additional documentation regarding their ownership of and disposition of the Petra Shares" to Morgan Stanley, _see_ Complaint at ¶¶ 29 and 30, they do not (and cannot) allege that they ever provided Morgan Stanley with a trade confirmation of a month-end statement evidencing the sale of securities at issue. Plaintiffs never provided such documents to Morgan Stanley.

Moreover, both the Rescission Offer and Acceptance Form gave Morgan Stanley express power to determine whether a purported acceptance was valid. In the Rescission Offer, Morgan Stanley expressly stated that its interpretation of the Offer's terms and conditions were binding and reserved for itself the right to reject all acceptances that were not in proper form:

> **Morgan Stanley reserves the absolute right to reject any or all acceptances of the Rescission Offer that are not in proper form,** including for lack of satisfactory proof that the holder meets the definition of an Offeree, or the acceptance of which, in its opinion, would be unlawful. Morgan Stanley also reserves the right to waive any defects, irregularities or conditions applicable to particular acceptances of the Rescission Offer for any or all of your Eligible Transactions. **Morgan Stanley's interpretation of the terms and conditions of the Rescission Offer will be final and binding.**

Complaint, Ex. B at 9 and 19 (emphasis added). The Acceptance Form contained the exact same language reserving the right to reject acceptances that did not comply with all stated requirements. *See* Exhibit B at 3.

The Complaint fails to allege that Plaintiffs provided the required documentation, or that Morgan Stanley deemed the acceptance valid. Accordingly, the Complaint fails to state a claim for breach of contract under the relevant and controlling documents as a matter of law and should be dismissed pursuant to Rule 12(b)(6).

## IV.    **Conclusion**

For all of the reasons set forth above, the Court should enter an order either dismissing this action or transferring it to the United State District Court for the Southern District of New York.

**WHEREFORE**, Morgan Stanley respectfully requests that, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), the Court dismiss the Complaint for improper venue or, in the alternative, transfer venue to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Alternatively, Morgan Stanley requests that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.

### **L.R. M.D. Fla. 3.01(g) Certification**

The undersigned attorney hereby certifies that he has conferred with opposing counsel regarding Morgan Stanley's motion to dismiss for improper venue and its alternative motion to transfer venue. Opposing counsel has advised the undersigned attorney that Plaintiffs oppose Morgan Stanley's motion to dismiss for improper venue and its alternative motion to transfer venue and that Plaintiffs do not agree with Morgan Stanley on the resolution of either motion.

.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**

By: _Joseph C. Coates, III_____
    Joseph C. Coates, III, Esq.
    Florida Bar No. 772860
    John D. Perry, Esq.
    Florida Bar No. 0639680
    777 S. Flagler Drive
    Suite 300 East
    West Palm Beach, FL  33401
    Telephone: (561) 650-7900
    Facsimile:  (561) 655-6222
    E-Mail: *coatesj@gtlaw.com*
    E-Mail: *perryjd@gtlaw.com*

    *Attorneys for Morgan Stanley*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 17, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Alan S. Wachs, Esq.
Chris T. Harris, Esq.
Jennifer M. Coleman, Esq.
VOLPE BAJALIA, WICKES, ROGERSON & WACHS
501 Riverside Avenue, 7th Floor
Jacksonville, Florida 32202
Telephone: (904) 355-1700
Facsimile: (904) 355-1797
E-Mail Addresses: *awachs@vbwr.com; charris@vbwr.com; jcoleman @vbwr.com; cdore@vbwr.com; sabbey@vbwr.com; caschmeyer@vbwr.com*

*Joseph C. Coates, III*
Joseph C. Coates, III

WPB 381,791,749v1 039657.121200

# *MORGAN STANLEY*

| Branch Office | Account No. | Check Digit |
|---|---|---|
| 0 | | |

Salesman No.

000010812294

**CUSTOMER'S AGREEMENT**
(Margin Account)

12-80067
12-80069

Ladies and Gentlemen:

In consideration of your accepting one or more accounts of the undersigned (whether designated by name, number or otherwise), your agreeing to act as broker for the undersigned's purchase or sale of securities or commodities, or your entering into any contract with the undersigned from time to time, including, without limitation, securities contracts, commodity contracts, forward contracts, repurchase agreements, or swap agreements, howsoever any such agreement may be evidenced, including agreements confirmed in writing by only one party thereto (this agreement, and all such contracts and transactions, collectively "Contracts"), the undersigned agrees to the following with respect to any of the undersigned's accounts with you for extensions of credit, the purchase and sale of securities, options, and other property, or any transaction between you and the undersigned, and for the purpose of granting you rights of netting and set off and of foreclosure on cash, securities, commodities and other property which may from time to time be held or carried in any account for the undersigned, that is due to the undersigned, or that is delivered to or in the possession or control of you or any of your agents, and any proceeds thereof ("Collateral"). For purposes of this agreement, "you" and "your" refer to Morgan Stanley & Co. Incorporated, Morgan Stanley & Co. Limited, Morgan Stanley & Co. International Limited, Morgan Stanley Japan Ltd., Morgan Stanley Asia Ltd., Morgan Stanley Trust Company, Morgan Stanley GMBH, Morgan Stanley Bank Luxembourg, Morgan Stanley Market Products Inc., Morgan Stanley Capital Group Inc., Morgan Stanley Group Inc., and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and/or employees (also collectively referred to as "Morgan Stanley" and the "Morgan Stanley Entities").

1.    APPLICABLE RULES AND REGULATIONS.  All transactions under this agreement shall be subject to the rules and regulations of all applicable federal, state and self-regulatory authorities including but not limited to the Securities and Exchange Commission, all relevant securities and commodity exchanges, the Municipal Securities Rulemaking Board, the National Association of Securities Dealers, the Board of Governors of the Federal Reserve System and the constitution, rules and customs of the exchange or market (and its clearinghouse, if any) where executed.

2.    SECURITY INTEREST AND LIEN.  All Collateral which you may at any time be carrying for the undersigned or which may at any time be in your possession or control for any purpose, including safekeeping, and any proceeds and distributions therefrom, shall be subject to a general lien and a continuing first security interest for the discharge of all Obligations and liabilities of the undersigned to you, irrespective of whether or not you have made advances in connection with such Collateral, and irrespective of the number of accounts the undersigned may have with you, or which Morgan Stanley Entity holds such Collateral. For purposes of this agreement, "Obligations" shall mean any and all obligations of a party arising at any time and from time to time, whether or not mature or contingent, related to the purchase or sale of securities or other property, or under or in connection with any and all Contracts, including without limitation, payment and delivery obligations, obligations relating to the extension of credit or to pay damages (including costs of cover) and payment of legal and other expenses incurred in connection with the enforcement of Contracts.  You and the undersigned each acknowledge and agree that each Morgan Stanley Entity which holds Collateral holds such Collateral for itself and also as agent and bailee for all other Morgan Stanley Entities which are secured parties under any Contract. You may, at any time at your discretion and without prior notice to the undersigned, use, apply, or transfer any and all Collateral interchangeably between Morgan Stanley Entities in any accounts in which the undersigned has an interest other than from Regulated Commodity Accounts. In the event of a breach or default under this, or any other, agreement, you shall have all rights and remedies available to a secured creditor under any applicable law in addition to the rights and remedies provided herein. All Collateral delivered to you shall be free and clear of all prior liens, claims and encumbrances, and the undersigned will not cause or allow any of the Collateral in your possession or control, whether now owned or hereafter acquired, to be or become subject to any liens, security interests, mortgages or encumbrances of any nature other than the security interest created in your favor. The undersigned shall execute such documents and take such other action as you shall reasonably request in order to perfect your rights with respect to any such Collateral.  In addition, the undersigned appoints you as the undersigned's attorney-in-fact to act on the undersigned's behalf to sign, seal, execute and deliver all documents, and do all such acts as may be required, to realize upon all rights in the Collateral.

3.    RIGHTS OF MORGAN STANLEY.  You are hereby authorized, in your discretion, (a) upon the undersigned's death or breach of this agreement, (b) upon a breach, repudiation, misrepresentation or default (howsoever characterized) by the undersigned under any Contract, (c) upon the failure by the undersigned to give adequate assurance of due performance as set forth in Section 4 hereof, which shall constitute a material and additional breach, repudiation, misrepresentation or default (howsoever characterized) under the terms of all Contracts, to terminate, liquidate and accelerate any and all Contracts and to exercise any right under any security relating to any Contract and any right to net or set off payments which may arise under any Contract or other agreement or under applicable law, (d) upon the filing by or against the undersigned of a petition or other proceeding in bankruptcy, insolvency, or for the appointment of a receiver, (e) upon the levy of an attachment against any property or the accounts of the undersigned, (f) upon the failure of the undersigned to fulfill or discharge any Obligations under this agreement or any Contract, including but not limited to the failure to make a payment on demand, or (g) should you for any reason whatsoever deem it necessary or desirable for your protection, to cancel any outstanding orders for the purchase or sale of any securities or other property, or to sell any or all of the securities and commodities or other property which may be in your possession or control (either individually or jointly with others), or to buy in any securities, commodities or other property of which the account or accounts of the

20618 (Rev. 9/94)

**Exhibit A**

undersigned may be short. Such sale, purchase or cancellation may be made on the exchange or other market where such business is then usually transacted, or at public auction or at private sale, without advertising the same and without any notice of the time or place of sale to the undersigned or to the personal representatives of the undersigned, and without prior tender, demand or call of any kind upon the undersigned or upon the personal representatives of the undersigned, all of which are expressly waived, and you may purchase the whole or any part thereof free from any right of redemption, and the undersigned shall remain liable for any deficiency; it being understood that a prior tender, demand or call of any kind from you, or prior notice from you, of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy any securities and/or commodities and/or other property held by you, or which the undersigned may owe to you, at any time as provided herein.

4.  ADEQUATE ASSURANCES.  If at any time you have reasonable grounds for insecurity with respect to the undersigned's performance of any of its Obligations, you may demand, and the undersigned shall give, adequate assurance of due performance by the undersigned within 24 hours, or within any shorter period of time you demand that is reasonable under the circumstances. The adequate assurance of performance that may be demanded by you may include, but shall not be limited to, the delivery by the undersigned to you of additional property as Collateral.

5.  NETTING AND SET OFF RIGHTS OF MORGAN STANLEY.  You shall have the right, at any time from time to time, to set off any and all your Obligations against any and all Obligations of the undersigned and to foreclose on any Collateral for the purpose of satisfying any and all Obligations of the undersigned. The undersigned agrees that the fulfillment of your Obligations is contingent upon there being no breach, repudiation, misrepresentation or default (howsoever characterized) by the undersigned which has occurred and is continuing under any Contract.

6.  CURRENCY CONVERSION.  You shall have the right to convert currencies in connection with the exercise of your rights hereunder in such manner as you may determine, in your sole discretion, to be commercially reasonable.

7.  MAINTENANCE OF THE UNDERSIGNED'S COLLATERAL.  All securities, commodities or other property, now or hereafter in your possession or control (either individually or jointly with others), or deposited to secure the same, including proceeds and distributions thereof, may from time to time and without notice to the undersigned, be carried in your general loans and may be pledged, repledged, hypothecated or re-hypothecated, separately or in common with other securities, commodities or other property for the sum due to you thereon or for a greater sum and without retaining in your possession and control for delivery a like amount of similar securities, commodities, or other property.

8.  SHORT AND LONG SALES.  It is understood and agreed that the undersigned, when placing with you any sell order for a short account, will designate it as such and hereby authorizes you to mark such order as being 'short,' and when placing with you any sell order for a long account, will designate it as such and hereby authorizes you to mark such order as being 'long.' Any sell order which the undersigned shall designate as being for a long account, as above provided, is for securities then owned by the undersigned and, if such securities are not then deliverable by you from any account of the undersigned, the placing of such order shall constitute a representation by the undersigned that it is impracticable for the undersigned then to deliver such securities to you but that the undersigned will deliver them as soon as it is possible to do so, without undue inconvenience or expense to you.

9.  FAILURE OF DELIVERY.  In case of the sale of any security, commodity, or other property by you at the direction of the undersigned and your inability to deliver the same to the purchaser by reason of failure of the undersigned to supply you therewith, the undersigned authorizes you to borrow or purchase any such security, commodity, or other property necessary to make delivery thereof. The undersigned hereby agrees to be responsible for any loss which you may sustain thereby and any premiums which you may be required to pay thereon, and for any loss which you may sustain by reason of your inability to borrow or purchase the security, commodity, or other property sold to fulfill your delivery obligation.

10.  CONFIRMATIONS, STATEMENTS, AND OTHER COMMUNICATIONS.  Reports of the execution of orders and statements of the account or accounts of the undersigned shall be conclusive and binding if not objected to in writing, the former within five days, and the latter within ten days, after transmittal by you to the undersigned by mail or otherwise. Communications may be sent to the undersigned at the address of the undersigned, or at such other address as the undersigned may hereinafter give you in writing, and all communications so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to the undersigned personally as of the date sent, whether actually received or not.

11.  NO OBLIGATION.  The undersigned agrees that you shall be under no obligation whatsoever to enter into any Contract with undersigned.

12.  CHOICE OF DISPUTE RESOLUTION.  ANY DISPUTE THE UNDERSIGNED MAY HAVE WITH YOU ARISING OUT OF, RELATING TO OR IN CONNECTION WITH YOUR BUSINESS, ANY TRANSACTION BETWEEN US OR THIS AGREEMENT SHALL BE DETERMINED BY ARBITRATION OR LITIGATION IN COURT AT THE ELECTION OF THE UNDERSIGNED.  REGARDLESS WHETHER THE UNDERSIGNED CHOOSES TO PROCEED BY ARBITRATION OR LITIGATION, THE UNDERSIGNED AND YOU AGREE TO FOLLOW THE PROCEDURES, AND ABIDE BY THE REQUIREMENTS, LISTED IN PARAGRAPHS 13, 14 AND 17, BELOW.

13.  ARBITRATION:

    - ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

    - THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

    - PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

- THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REA-SONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

- THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

ANY ARBITRATION SHALL BE CONDUCTED ONLY BEFORE THE NEW YORK STOCK EXCHANGE, INC., THE AMERICAN STOCK EXCHANGE, INC., THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., OR ANY OTHER SELF-REGULATORY ORGANIZATION OF WHICH YOU ARE A MEMBER. THE UNDERSIGNED HAS THE RIGHT TO ELECT ONE OF THE FOREGOING ORGANIZATIONS, BUT IF THE UNDERSIGNED FAILS TO MAKE SUCH ELECTION BY CERTIFIED LETTER ADDRESSED TO YOU AT YOUR MAIN OFFICE BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM YOU TO MAKE SUCH ELECTION THEN YOU MAY MAKE SUCH ELECTION. NOTHING IN THIS AGREEMENT SHALL BE CONSTRUED AS CONSENT BY YOU TO AN AWARD OF PUNITIVE DAM-AGES. THE AWARD OF THE ARBITRATORS, OR THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION OR WHO IS A MEMBER OF A PUTATIVE CLASS WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION UNTIL:

(i) THE CLASS CERTIFICATION IS DENIED;

(ii) THE CLASS IS DECERTIFIED; OR

(iii) THE CUSTOMER IS EXCLUDED FROM THE CLASS BY THE COURT.

SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY SUCH RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN.

14. LITIGATION IN COURT. (A) UNLESS THE PARTIES OTHERWISE AGREE IN WRITING WHEN ANY DISPUTE ARISES, ANY LITIGATION MUST BE INSTITUTED IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK FOR THE COUNTY OF NEW YORK, AND THE UNDERSIGNED IRREVOCABLY CONSENTS TO THE JURISDICTION OF EITHER OF THOSE COURTS. (B) ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION IS HEREBY WAIVED BY ALL PARTIES TO THIS AGREEMENT.

15. MODIFICATION AND WAIVER. The undersigned agrees that you may modify the terms of this agreement at any time upon prior written notice. If the modifications are unacceptable, the undersigned agrees to notify you in writing within ten days of the transmittal of such written notice. You may then terminate the undersigned's account, after which the undersigned agrees to remain liable for all existing liabilities or Obligations. The undersigned further agrees that all transactions and Contracts entered into after such notification shall be subject to the modifications. Under no circumstances may a modification be made by the undersigned without your written consent. To the extent this agreement is inconsistent with any other agreement between you and the undersigned, the provisions of this agreement shall govern. Your failure to insist at any time upon compliance with this agreement or with any of its terms, or any continued course of such conduct on your part shall not constitute or be considered a waiver by you of any of your rights.

16. SEVERABILITY. If any provision of this agreement is or becomes inconsistent with any applicable present or future law, rule or regulation, that provision will be deemed modified or, if necessary, rescinded in order to comply with the relevant law, rule or regulation. All other provisions of this agreement will continue and remain in full force and effect. To the extent that this agreement is not enforceable as to any Contract, this agreement shall remain in full force and effect and be enforceable in accordance with its terms as to all other Contracts.

17. APPLICABLE LAW; ENFORCEABILITY. THIS AGREEMENT, ITS ENFORCEMENT, ANY CONTRACT, AND ANY DISPUTE BETWEEN US, WHETHER ARISING OUT OF OR RELATING TO THE UNDERSIGNED'S ACCOUNTS OR OTHERWISE, SHALL BE GOVERNED BY THE LAW OF THE STATE OF NEW YORK, EXCLUDING ITS CONFLICT OF LAW RULES; and its provisions shall be continuous, shall cover individually and collectively all accounts which the undersigned may open or reopen with you, and shall inure to the benefit of your present organization and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever, and of the assigns of your present organization or any successor organization, and shall be binding upon the undersigned, and/or the estate, executors, administrators, trustees, agents, officers, directors and assigns of the undersigned.

18. LENDING OF SECURITIES. Within the limits of applicable law and regulation, until you receive written notice of revocation from the undersigned, you are hereby authorized to lend, to yourselves as brokers or to others, any securities held by you on margin in your possession or control together with all attendant rights of ownership (including the right to vote the securities).

19. EXTRAORDINARY EVENTS. The undersigned agrees that you will not be liable for any loss caused, directly or indirectly, by government restrictions, exchange or market rulings, suspension of trading, war (whether declared or undeclared), terrorist acts, insurrection, riots, fires, flooding, strikes, failure of utility services, accidents, adverse weather or other events of nature, including but not limited to earthquakes, hurricanes and tornadoes, or other conditions beyond your control. In the event that any communications network, data processing system, or computer system you use or used by the undersigned, whether you own it or not, is rendered inoperable, you will not be liable to the undersigned for any loss, liability, claim, damage or expense resulting, either directly or indirectly, therefrom.

20. LIMITATION OF LIABILITY. You shall not be liable in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action, except for gross negligence or willful misconduct on your part.

20618 (Rev. 9/94)

21. COSTS OF COLLECTION. To the extent permitted by the laws of the State of New York, the reasonable costs and expenses of collection of any debit balance and any unpaid deficiency in the accounts of the undersigned with you, including but not limited to attorneys' fees incurred and payable or paid by you, shall be payable to you by the undersigned.

22. REPRESENTATIONS AND WARRANTIES. The undersigned hereby represents and warrants as of the date hereof, which representations and warranties will be deemed repeated on each date on which a transaction or Contract is effected for the undersigned's account, that:

   a. The undersigned will at all times maintain such securities and other property in the accounts of the undersigned for margin purposes, as required by you from time to time in your sole discretion;

   b. The undersigned is of legal age and is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper;

   c. No other party has an interest in the account or accounts of the undersigned with you;

   d. Except as noted below, the undersigned is not an affiliate (as defined in Rule 144(a)(1) under the Securities Act of 1933) of the issuer of any security held in the undersigned's account and undertakes to inform you of any changes thereof;

   e. It has full power and authority to execute and deliver each Contract and to perform and observe the provisions thereof;

   f. The execution, delivery and performance of each Contract either have been or will be, prior to entering into each Contract, duly authorized by all necessary corporate action and do not contravene any requirement of law or any contractual restrictions or agreement binding on or affecting the undersigned or its assets;

   g. Each Contract has been or will be at the time it is entered into duly properly executed and delivered by it and constitutes and will constitute a legal, valid and binding obligation enforceable in accordance with its terms;

   h. Since the date of its most recent audited or unaudited financial statements, there has been no material adverse change in the business, financial condition, results or operations or prospects of the undersigned; and

   i. It owns Collateral assigned and to be assigned to you under each Contract, free and clear of any lien, claims, encumbrances and transfer restrictions, and upon delivery of the Collateral to you or upon the filing of appropriate financing statements, you will have, as security for the Obligations of the undersigned, a perfected first priority security interest. No further filing or recordings with any governmental body, agency or official are necessary to create or perfect interest in the Collateral.

23. ACKNOWLEDGEMENTS. The undersigned hereby acknowledges that:

   a. The undersigned has received, and agrees to be bound by, your Credit Charge and Margin Information disclosure statement, which is incorporated herein by reference. Debit balances of the accounts of the undersigned shall be charged with interest, in accordance with the methods described in such statement, and with such other charges as you may impose to cover your facilities and extra services. Any interest charged on debit balances which is not paid at the close of an interest period will be added to the opening balance for the next interest period;

   b. The securities in the undersigned's margin account may be loaned to you or loaned out to others; and

   c. The undersigned has received a copy of this agreement.

NOTICE: THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE IN PARAGRAPHS 12, 13 AND 17.

Date: _5-16-96_

Very truly yours,

Signature of Customer(s)

_Robert A. Shah_
_Patricia S. Shah_

20618 (Rev. 9/94)

# ACCEPTANCE FORM

Relating to the Rescission Offer by Morgan Stanley

**Pursuant to the Rescission Offer Document Dated January 16, 2007**

THE RESCISSION OFFER EXPIRES THE LATER OF 30 DAYS FROM RECEIPT OF THE OFFER OR
**5:00 P.M., EST, ON FEBRUARY 20, 2007.**

|  |
|---|
| Name(s) and Address(es) of Offeree(s): |

**Document Number of Offeree(s):**
**State or Jurisdiction:**
**Applicable Interest Rate:**

*The Rescission Agent for the Rescission Offer is:* **D. F. KING & CO., INC.**

**By First Class Mail:**

D. F. King & Co., Inc.
P.O. Box 859208
Braintree, MA 02185-9208

**By Overnight, Certified or Express Mail:**

D. F. King & Co., Inc.
161 Bay State Drive
Braintree, MA 02184

**You should direct all questions regarding the Rescission Offer to Morgan Stanley at 1-866-451-3952**

| Eligible Transactions | | | | | |
|---|---|---|---|---|---|
| Description | CUSIP | Trade Date | Quantity of Securities Acquired in Eligible Transaction | Offer Number of Eligible Transaction | Mark this Box to Accept the Rescission Offer |

**FOR USE BY OR ON BEHALF OF OFFEREES ONLY**

IF YOU HOLD SECURITIES THROUGH AN ENTITY OTHER THAN MORGAN STANLEY & CO. INCORPORATED ("MS&CO.") OR MORGAN STANLEY DW INC. ("MSDW") (collectively or individually "Morgan Stanley"), PLEASE CONTACT THE ENTITY THROUGH WHICH YOU HOLD YOUR SECURITIES IF YOU WISH TO ACCEPT THE RESCISSION OFFER.

**Exhibit B**

Ladies and Gentlemen:

Please read and follow the instructions in this Acceptance Form carefully. If you wish to accept the Rescission Offer, you must complete, sign and date the Acceptance Form where requested, and ensure the Acceptance Form is received by D.F. King & Co., Inc. (the "Rescission Agent") at the address indicated on the front cover of this form before the Expiration Date (defined below). If you do not hold your Securities through Morgan Stanley and you wish to accept the Rescission Offer, you must also complete and deliver the Broker Instruction Form to the bank or brokerage firm through which you hold your Securities. The Rescission Offer expires the later of 30 days from receipt of the Offer or 5:00 p.m., EST, on February 20, 2007 (such date and time, as they may be extended, the "Expiration Date"). If you hold your Securities through a bank or brokerage firm other than Morgan Stanley, you should allow sufficient time prior to the Expiration Date for the completion of all relevant procedures by the broker or bank through which your Securities are held, as acceptance requires the completion in good order of all actions on your behalf prior to that time.

The Rescission Offer is described in the offering document dated January 16, 2007 (the "Rescission Offer Document"). Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Rescission Offer Document.

Morgan Stanley reserves the absolute right to reject any or all acceptances of the Rescission Offer that are not in proper form, including for lack of satisfactory proof that the holder meets the definition of an Offeree, or the acceptance of which, in its opinion, would be unlawful. Morgan Stanley also reserves the right to waive any defects, irregularities or conditions applicable to particular acceptances of the Rescission Offer for any or all of your Eligible Transactions. Morgan Stanley's interpretation of the terms and conditions of the Rescission Offer will be final and binding.

YOU MAY ELECT TO ACCEPT OR REJECT THE RESCISSION OFFER. IF YOU WISH TO REJECT THE RESCISSION OFFER, DO NOT SIGN AND RETURN THIS FORM. YOU NEED DO NOTHING TO REJECT THE RESCISSION OFFER. RESIDENTS OF CERTAIN STATES MAY PRESERVE THEIR RIGHTS BY AFFIRMATIVELY REJECTING THE OFFER BY SENDING A LETTER TO MORGAN STANLEY, ATTN: RESCISSION OFFER, 34 EXCHANGE PLACE, HARBORSIDE FINANCIAL CENTER, PLAZA II, 2ND FLOOR, JERSEY CITY, NJ 07311. SEE PAGE 12 OF THE RESCISSION OFFER DOCUMENT FOR MORE INFORMATION. VALID ACCEPTANCE OF THE RESCISSION OFFER REQUIRES COMPLETION OF ALL REQUIRED ACTIONS BY YOU OR ON YOUR BEHALF PRIOR TO THE EXPIRATION DATE.

## STEPS REQUIRED TO ACCEPT THE OFFER

The procedures described below are divided into three categories, each relating to different circumstances that may apply to you depending on whether or not you currently hold your Securities through Morgan Stanley as your broker, or have sold all or a portion of your Securities through Morgan Stanley, or through another bank or brokerage firm. If you wish to accept the Rescission Offer under circumstances that fall into more than one of the categories described below, you must complete the relevant procedures under all applicable categories.

1.  **If you either hold your Securities through Morgan Stanley as your broker or have sold your Securities through Morgan Stanley as your broker, you should:**

    a.  Read the Instructions on page 8.

    b.  Check the appropriate box(es) on page 1 under the column titled "Mark this Box to Accept the Rescission Offer."

    c.  Sign and provide the required information on page 7 and enclose the completed Acceptance Form (including page 1) in the provided envelope.

    d.  Cause the Acceptance Form to be received by the Rescission Agent on or before the Expiration Date.

    The Rescission Offer Payment will be credited to your account at Morgan Stanley in which the Securities are held or were previously held. If you have closed your account at Morgan Stanley, Morgan Stanley will issue a check in the name of the Offeree unless a different payee is indicated, or wire payment instructions are provided, on page 6.

2.  **If you hold your Securities through a bank or brokerage firm other than Morgan Stanley and wish to accept the Rescission Offer in respect of those Securities, you should:**

    a.  Read the Instructions on page 8.

    b.  Check the appropriate box(es) on page 1 under the column titled "Mark this Box to Accept the Rescission Offer."

    c.  If you do not want the Rescission Offer Payment made payable or mailed to the Offeree as it appears on page 1 of this Acceptance Form, fill in box 1, 2 or 3, as applicable, on page 6 of this Acceptance Form. Please see the Instructions on page 8.

    d.  Provide information regarding the bank or brokerage firm delivering the Securities in Box 4 on page 6.

    e.  Provide the Rescission Agent with a copy of the most recent month-end statement issued by your bank or brokerage firm as evidence of ownership of the Securities listed on page 1 for which you are accepting the Rescission Offer.

    f.  Complete an IRS withholding Form. Please see the Instructions on page 8.

    g.  Sign and provide the required information on page 7 and enclose the completed Acceptance Form (including page 1), evidence of ownership and your IRS withholding Form in the provided envelope.

    h.  Cause the Acceptance Form and all additional documents specified above and in the Instructions to be received by the Rescission Agent on or before the Expiration Date.

    i.  Cause your bank or brokerage firm through which you hold your Securities to arrange the delivery of your Securities by completing and sending it the enclosed Broker Instruction Form, which instructs it to deliver the Securities to the Rescission Agent, on or before the Expiration Date.

3.  **If you sold some or all of your Securities through a bank or brokerage firm other than MORGAN STANLEY and wish to accept the Rescission Offer in respect of Securities you have sold, you should:**

    a.  Read the Instructions on page 8.

    b.  Check the appropriate box(es) on page 1 under the column titled "Mark this Box to Accept the Rescission Offer."

    c.  If you do not want the Rescission Offer Payment made payable or mailed to the Offeree as it appears on page 1 of this Acceptance Form, fill in box 1, 2 or 3, as applicable, on page 6 of this Acceptance Form. Please see the Instructions on page 8.

    d.  Provide information regarding the bank or brokerage firm delivering the Securities in box 4 on page 6.

    e.  Provide the Rescission Agent with a copy of the appropriate trade confirmation or month-end statement issued by your bank or brokerage firm as evidence of sale of the Securities listed on page 1. If the Securities were sold in part, you should also provide the Rescission Agent with a copy of the most recent month-end statement issued by your bank or brokerage firm.

    f.  Complete an IRS withholding Form. Please see the Instructions on page 8.

    g.  Sign and provide the required information of page 6 and enclose the completed Acceptance Form (including page 1), evidence of ownership and your IRS withholding Form in the provided envelope.

    h.  Cause the Acceptance Form and all additional documents specified above and in the Instructions to be received by the Rescission Agent on or before the Expiration Date.

The undersigned hereby acknowledges, represents and warrants that:

1. it has received and reviewed the Rescission Offer Document dated January 16, 2007, of Morgan Stanley pursuant to which Morgan Stanley offers on behalf of itself and its affiliates to rescind certain purchases of the Securities described in the Rescission Offer Document;

2. it elects to accept the Rescission Offer and understands that it will no longer be entitled to any payments on the Securities beyond those received in the Rescission Offer;

3. it is the beneficial owner or the authorized representative of the beneficial owner of the quantity of the Securities indicated on page 1, or, in the case that the undersigned has sold the Securities described on page 1, was the beneficial owner or is the authorized representative of the former beneficial owner of those Securities, and has full power and authority to deliver this Acceptance Form;

4. it will not sell, pledge, hypothecate or otherwise encumber or transfer any existing Securities in respect of which it is accepting the Rescission Offer, from the date of this Acceptance Form and agrees that any purported sale, pledge, hypothecation or other encumbrance or transfer will be void and of no effect;

5. in evaluating the Rescission Offer and in making the decision whether to participate therein by submitting this Acceptance Form, it has made its own independent appraisal of the matters referred to herein and in any related communications and is not relying on any statement, representation or warranty, express or implied, made to it by Morgan Stanley other than those contained in the Rescission Offer Document;

6. the Securities in respect of which it is accepting the Rescission Offer were acquired in Eligible Transactions and (a) have been sold through Morgan Stanley or as described in the evidence of sale the undersigned has provided or (b) are owned as of the date of delivery, free and clear of any liens, charges, claims, encumbrances, interests and restrictions of any kind, and Morgan Stanley will acquire good, indefeasible and unencumbered title to such Securities, free and clear of all liens, charges, claims, encumbrances, interests and restrictions of any kind, when the same are accepted by Morgan Stanley;

7. the execution and delivery of this Acceptance Form shall constitute an undertaking to execute any further documents and give any further assurances that may be required in connection with any of the foregoing, in each case on and subject to the terms and conditions applicable to the Rescission Offer;

8. the submission of this Acceptance Form to the Rescission Agent shall, subject to terms and conditions of the Rescission Offer generally, constitute the irrevocable appointment of the Rescission Agent as its attorney and agent, and an irrevocable instruction to such attorney and agent to complete and execute all or any form(s) of transfer and other document(s) at the discretion of such attorney and agent in relation to the Securities delivered hereby in favor of Morgan Stanley or such other person or persons as they may direct and to deliver such form(s) of transfer and other document(s) in the attorney's and/or agent's discretion and the certificate(s) and other document(s) of title relating to such Securities' registration and to execute all such other documents and to do all such other acts and things as may be in the option of such attorney or agent necessary or expedient for the purpose of, or in connection with, the acceptance of the Rescission Offer, and to vest in Morgan Stanley, or its nominees title to such Securities;

9. it understands that Morgan Stanley and others will rely upon the truth and accuracy of the foregoing acknowledgements, representations and agreements and agrees that if any of the acknowledgements, representations and warrants made by its submission of this Acceptance Form are at any time prior to the consummation of the Rescission Offer, no longer accurate, it shall promptly notify Morgan Stanley if it is delivering the Securities as a fiduciary or agent for one or more investor accounts, it represents that it has sole investment discretion with respect to each such account and it has full power to make the foregoing acknowledgements, representations and agreements on behalf of such account;

10. any documentation provided to the Rescission Agent evidencing of ownership or sale of the Securities is true, correct and complete;

11. its participation in the Rescission Offer will not constitute or result in a nonexempt prohibited transaction under Section 406 of the U.S. Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the U.S. Internal Revenue Code of 1986, as amended, or in a violation of any substantially similar provisions of foreign, federal, state or local law; and

12. the Rescission Offer is subject to the terms and conditions set forth in the Rescission Offer Document.

The undersigned, in consideration of the repurchase of the Securities specified in this Acceptance Form or of the Rescission Offer Payment, as the case may be, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby, acting on its own behalf and, if it is not the beneficial owner of the Securities specified in this Acceptance Form, on behalf of such beneficial owner, irrevocably releases, discharges and acquits forever Morgan Stanley and the issuer of, and any guarantor of, the undersigned's Securities, and each of their parent companies, subsidiaries and other corporate affiliates, and each of their past and present officers, directors, stockholders, employees, agents, attorneys, successors and assigns from any and all claims, demands, rights, causes of action, liabilities and damages whatsoever, whether in law or equity, that the undersigned and the undersigned's successors and assigns ever had, or now has, or may hereafter have based in any way upon, related in any way to, or arising in any way from, out of or in connection with, the Securities, including but not limited to, any violation of federal, state or territorial securities laws or regulations.

**To be completed only by holders who hold Securities through a bank or brokerage firm other than Morgan Stanley.**

---

| 1. **SPECIAL PAYMENT INSTRUCTIONS** | 2. **SPECIAL DELIVERY INSTRUCTIONS** |
|---|---|
| (SEE INSTRUCTIONS 1,4,5 ON PAGE 8) | (SEE INSTRUCTIONS 4,5 ON PAGE 8) |

1. **SPECIAL PAYMENT INSTRUCTIONS**
(SEE INSTRUCTIONS 1,4,5 ON PAGE 8)

To be completed ONLY if the check for the Rescission Offer Payment is to be issued in the name of someone other than the undersigned.

Issue: ☐ Check

to:

Name:_____
(Please print)

Address:_____

_____
(Include Zip Code)

_____
Taxpayer Identification or Social Security Number
(See instruction 4 on page 8)

_____
*Medallion Signature Guarantee Required

2. **SPECIAL DELIVERY INSTRUCTIONS**
(SEE INSTRUCTIONS 4,5 ON PAGE 8)

To be completed ONLY if the check for the Rescission Offer Payment is to be sent to someone other than the undersigned, or to the undersigned at an address other than that shown in the box entitled "Description of Securities" on page 1.

Mail: ☐ Check

to:

Name:_____
(Please print)

Address:_____

_____
(Include Zip Code)

_____
Taxpayer Identification or Social Security Number
(See instruction 4 on page 8)

_____
*Medallion Signature Guarantee Required

---

3. **WIRE PAYMENT INSTRUCTIONS**
(SEE INSTRUCTION 1 ON PAGE 8)
To be completed by Institutions ONLY

Name of Bank:_____
(Please print)

Address:_____

_____
(Include Zip Code)

_____
ABA #

_____
Account #

_____
*Medallion Signature Guarantee Required

---

4. **DELIVERING BANK OR BROKER**
(SEE 2(d) AND 3(d) ON PAGE 4)

Bank or Brokerage Firm Delivering Securities_____

Contact & Telephone Number at Bank or Brokerage Firm_____

**IMPORTANT**
**OFFEREE(S): SIGN HERE**
(See Instruction 3 on page 8)
(Please Complete and Return Applicable IRS Withholding Form as Described in Instruction 4 on page 8)

_____
Signature(s) of Holder(s)

Dated:_____, 2007

Name(s):_____

_____
(Please Print)

Capacity: _____

_____
(Please Provide Full Title)

Address:_____
(Include Zip Code)

Daytime Telephone No.:_____
(Include Area Code)

Taxpayer Identification or Social Security Number:_____

**MEDALLION GUARANTEE OF SIGNATURE(S)**
**(If Required — See Instruction 1 on page 8)**

Authorized Signature: _____

Name:_____
(Please Print)

Name of Firm:_____

Address:_____
(Include Zip Code)

Title:_____

Telephone No.:_____
(Include Area Code)

Dated:_____, 2007

## INSTRUCTIONS

1. *Medallion Guarantee of Signatures.* Required if holder(s) has completed either the box entitled "Special Payment Instructions" or the box entitled "Wire Payment Instructions" in this Acceptance Form. All signatures on this Acceptance Form must be guaranteed by a financial institution (including most commercial banks, savings and loan associations and brokerage houses) that is a participant in the Security Transfer Agents Medallion Program, The New York Stock Exchange Medallion Signature Guarantee Program or the Stock Exchange Medallion Program (each an "Eligible Institution," and collectively, "Eligible Institutions"). See page 7.

2. *Signatures on Acceptance Form.*

   *Exact Signatures.* If this Acceptance Form is signed by the Offeree(s), the signature(s) must correspond with the name(s) as written on the label.

   *Joint Holders.* If any of the Securities delivered hereby are owned of record by two or more joint owners, all such owners must sign this Acceptance Form.

   *Signatures of Fiduciaries.* If this Acceptance Form is signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, such persons should so indicate when signing, and provide proper evidence satisfactory to Morgan Stanley of such person's authority so to act.

3. *Special Payment and Delivery Instructions.* If a check is to be issued in the name of a person other than the party executing this Acceptance Form or if a check is to be returned to a person other than the party executing this Acceptance Form or to an address other than that shown in the box entitled Eligible Transactions on page 1, the appropriate boxes on page 6 of this Acceptance Form should be completed.

4. *Backup Withholding and Information Reporting.* The disposal of the Securities by an Offeree pursuant to the Rescission Offer generally will be subject to information reporting requirements of the Internal Revenue Service ("IRS"). To avoid the imposition of backup withholding, an Offeree should complete the applicable IRS withholding Form (W-9 or W-8) which can be obtained at the website of the Internal Revenue Service at www.irs.gov. Certain Offerees (including, among others, corporations and certain foreign persons) are exempt from these backup withholding and information reporting requirements, but may be required to establish their entitlement to an exception. If Morgan Stanley, in the case of an Offeree that holds or previously held its Securities through Morgan Stanley, or the Rescission Agent, in the case of an Offeree that holds or previously held its Securities through a bank or broker other than Morgan Stanley, is not provided with the correct TIN or an adequate basis for exemption, a holder may be subject to a backup withholding tax on the gross proceeds received in the Rescission Offer. If backup withholding results in an overpayment of taxes, a refund or credit may be obtained, provided that the required information is provided to the IRS.

*The Rescission Agent for the Offer is:*

**D.F. King & Co. Inc.**
P.O. Box 859208 Braintree
Massachusetts 02185-9208

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:08-CV-00212-J-25TEM

| | |
|---|---|
| ROBERT A. SHAHEEN, an individual, and PATRICIA S. SHAHEEN, an individual, | ) ) ) |
| Plaintiffs, | ) |
| vs. | ) |
| MORGAN STANLEY & COMPANY INCORPORATED, a Delaware corporation, and MORGAN STANLEY DW, INC., a Delaware company, | ) ) ) ) |
| Defendants. | ) ) |

**AGREED MOTION FOR EXTENSION OF TIME
TO RESPOND TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs, ROBERT A. SHAHEEN and PATRICIA S. SHAHEEN (the "Shaheens"), by and through their undersigned counsel, pursuant to Rule 6(b), Federal Rules of Civil Procedure and Rule 3.01, Local Rules of the Middle District of Florida, move this Court for an order extending the time for Plaintiffs to respond to MORGAN STANLEY, DW, INC.'s ("Defendant") Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue, with Incorporated Memorandum of Law or Motion to Dismiss for Failure to State a Claim for Relief ("Motion to Dismiss") and, and in support would show the Court:

1.    Defendant electronically filed its Motion to Dismiss on March 17, 2008 thereby making the Shaheen's response due on or before Monday, March 31, 2008.

2.    Due to prior calendar commitments, counsel for the Shaheens need additional time to properly prepare their response.  The Shaheens therefore request an extension of time of one additional day to respond to the Motion to Dismiss.  The extension will allow the Shaheens more time to properly brief the Court on the issues raised by the Defendant in support of its Motion to Dismiss.

3.    This is the first request for additional time made by the Shaheens with regard to responding to the Defendant's Motion to Dismiss.  This request is not for the purpose of causing undue delay in the resolution of this matter.

4.    For these reasons, the Shaheens request the Court extend the date for them to respond to Defendant's Motion to Dismiss and permit the Shaheens through and including Tuesday, April 1, 2008 to serve their response to Defendant's Motion to Dismiss.

WHEREFORE, the Plaintiffs Robert and Patricia Shaheen request this Court enter an order extending the time for the Shaheens to serve their response to Defendant's Motion to Dismiss through and including April, 1, 2008.

## **Memorandum of Law**

In accord with Rule 6(b), Federal Rules of Civil Procedure, the Court for cause shown may at anytime in its discretion with or without motion or notice order the period of enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order.

## **CERTIFICATE OF COMPLIANCE WITH L.R. M.D. Fla. Rule 3.01(g)**

I HEREBY CERTIFY that the moving party has conferred with opposing counsel and opposing counsel agrees with the resolution of this motion, this 31st day of March, 2008.

Respectfully submitted,

_/s/ Chris T. Harris_____

Alan S. Wachs
Florida Bar No.: 980160
Chris T. Harris
Florida Bar No.: 107115
Jennifer M. Coleman
Florida Bar No.: 13368
Attorneys for Plaintiffs
Robert A. Shaheen and
Patricia S. Shaheen
Volpe, Bajalia, Wickes,
Rogerson & Wachs
501 Riverside Avenue, 7th Floor
Jacksonville, Florida 32202
(904) 355-1700
(904) 355-1797 (fax)
charris@vbwr.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2008, I electronically filed the with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Joseph C. Coates, Esq. and John D. Perry, Esquire, Greenberg Traurig, P.A., 777 S. Flagler Drive, Suite 300 East, West Palm Beach, FL 33401.

<div style="margin-left:45%">

_/s/ Chris T. Harris_

Alan S. Wachs
Florida Bar No.: 980160
Chris T. Harris
Florida Bar No.: 107115
Jennifer M. Coleman
Florida Bar No.: 13368
Attorneys for Plaintiffs
Robert A. Shaheen and
Patricia S. Shaheen
Volpe, Bajalia, Wickes,
Rogerson & Wachs, P.A.
501 Riverside Avenue, 7th Floor
Jacksonville, Florida 32202
(904) 355-1700
(904) 355-1797 (fax)
charris@vbwr.com

</div>

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


CASE NO. 3:08-CV-00212-J-25TEM


ROBERT A. SHAHEEN, an individual,    )
and PATRICIA S. SHAHEEN, an
individual,                          )

          Plaintiffs,              )

vs.                                  )

MORGAN STANLEY & COMPANY             )
INCORPORATED, a Delaware corporation,
and MORGAN STANLEY DW, INC.,         )
a Delaware company,

                       )

         Defendants.               )
_____)


**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE, OR MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF**

      Plaintiffs file this Memorandum of Law in opposition to Defendant's Motion to

Dismiss for Improper Venue or, in the Alternative, to Transfer Venue, or Motion to

Dismiss for Failure to State a Claim for Relief, and state:

### I.      <u>Introduction</u>

      Plaintiffs' Complaint states a claim for breach of a securities rescission contract

between the Plaintiffs and Defendant related to a securities Rescission Offer made by

Defendant to the Plaintiffs in Florida and where performance of the contract was to take

place in Florida.  The Plaintiffs seek $125,000 and other recoverable damages.

## II.    <u>Background</u>

On or about June 1 and 2, 2000, pursuant to a securities offering made by Defendant, the Plaintiffs purchased a total of 125,000 shares in Petra Diamonds Limited from the Defendant upon information and belief.    Shortly following the Plaintiffs' purchase of the shares, Petra Diamonds Limited attempted to acquire an entity named Oryx Natural Resources.    The acquisition apparently failed.    As a result of the failed acquisition, trading of Petra Diamond Limited shares on the London AIM market was suspended.    Plaintiffs considered their investment lost and had no further dealings with Defendant.

On or about January 16, 2007, the Defendant made a recession offer to the Plaintiffs regarding the Petra Diamond Shares.    The Defendant, as evidenced by the Rescission Offer, apparently believed it had violated Florida's blue sky laws, or Federal securities laws when it offered the Petra Shares for sale in Florida and sought to minimize repercussions to itself therefrom.    Following receipt of the Rescission Offer, the Plaintiffs prepared the Acceptance Form that was included within the Rescission Offer, and timely returned that document to the Defendant accepting the Rescission Offer.

The Defendant thereafter requested that the Plaintiffs provide additional documentation regarding the Plaintiffs' ownership interest, or the disposition, of the Petra Diamond Shares.    The Plaintiffs, in an effort to document their former ownership in Petra Diamonds Limited, timely provided the Defendant with a brokerage statement showing their ownership at one time of the Petra Shares.    The Defendant then requested additional information from the Plaintiffs.    At no time during the exchanges between the Plaintiffs and the Defendant did the Defendant advise the Plaintiffs it was rescinding the Rescission

Offer.  Instead, by virtue of its conduct in requesting additional information, the Defendant was clearly holding the Rescission Offer open to the Plaintiffs.  The Plaintiffs timely provided the additional documentation to the Defendant, including duplicates of the Capita Registrars account detail, showing ownership history of the Petra Shares.

### III.  <u>Argument</u>

In opposition to Defendant's motion Plaintiffs specifically assert:

1.     The Complaint does not fail to state a claim upon which relief may be granted;

2.     The forum selection clause in the 1996 customer agreement is not the contract sued upon; is not enforceable; and does not compel dismissal or transfer of the action;

3.     Venue is proper in the United States District Court for the Middle District of Florida;

4.     If the action is to be transferred, it should be transferred to the United States District Court of the Southern District of Florida not the Southern District of New York.

In support thereof, Plaintiffs would show the following:

### A.     <u>The Complaint does not fail to state a claim upon which relief may be granted</u>

Under 12(b)(6), Federal Rules of Civil Procedure, the party moving for dismissal has the burden of proving that no claim has been stated.  <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 501 U.S. 1222 (1991).  In order for the movant to prevail he must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would

entitle him to relief. <u>Fuller v. Johannessen</u>, 76 F.3d 347, 349-50 (11th Cir. 1996) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-6 (1957)).

In consideration of 12(b)(6), Federal Rules of Civil Procedure, the court must accept the plaintiff's factual allegations as true, drawing all reasonable inference in plaintiff's favor. The only requirement of the plaintiff is a fair notice pleading. <u>Fuller</u>, 76 F.3d 347, 349-50 (11th Cir. 1996) (The Eleventh Circuit reversed the Middle District of Florida's affirmance of the bankruptcy court's dismissal of appellant creditors' complaint because the allegations in the complaint were sufficient to state a claim upon which relief could be granted).

The Plaintiffs have set forth sufficient allegations in their Complaint to state a claim that a breach of contract has occurred and an award is due to the Plaintiffs. Additionally, in deciding whether to dismiss, the Court may consider the documents attached to the Complaint. <u>Allen v. Newsome</u>, 795 F.2d 934, 938 (11th Cir. 1986) (INS report attached to complaint considered part of pleadings for purposes, including 12(b)(6), Federal Rules of Civil Procedure, motion). The Plaintiffs have attached to their Complaint the written offer by Defendant (Exhibit B) and the Plaintiffs written acceptance of the Recession Agreement (Exhibit C). These exhibits along with the Plaintiffs' Complaint provide the Court sufficient information to determine the recognized legal theory of breach of contract and thus the court should not dismiss the Complaint.

Accepting the well pled allegations of the Complaint as true, Plaintiffs have plead:

        a)     Plaintiffs are residence of Florida;

b) Defendant is registered to and does extensive business in Florida;

c) On or about January 16, 2007 Defendant made a rescission offer to Plaintiffs;

d) Plaintiffs accepted the offer by timely preparing and returning the Acceptance Form provided with the offer;

e) The securities rescission offer was made by Defendant to Plaintiffs in Florida and was to be performed in Florida;

f) Defendant thereafter requested and Plaintiffs thereafter provided documentation. The rescission offer remained open while this additional documentation (which complied with Defendant's request) was obtained; and

g) As a consequence of the above, Plaintiffs accepted the offer and substantially and materially complied with all terms of the offer and acceptance.

Based on those allegations a valid claim for breach of contract has been stated.

Defendant seeks to contradict these allegations of the Complaint by alleging Plaintiffs rejected the Rescission Offer by failing to provide Defendant documents that verified disposition of the shares and from which Defendant could calculate the correct rescission amount. Plaintiffs did not fail in either regard, however, and the Complaint clearly so alleges. The Complaint states Plaintiffs provided Defendant the documents that were available to it that showed both the disposition that was made and the consideration received. Accordingly, Plaintiffs materially complied with the terms of and validly accepted the offer.

In any case, whether the documents requested were a material term of the offer; or whether the documents produced by Plaintiffs materially provided Defendant the information it needed; or whether Plaintiff otherwise materially complied with the terms

of the offer, are all questions of fact which cannot be determined or resolved on a motion to dismiss they can only be determined after discovery.

**B.**     **Plaintiffs' Complaint is not governed by the Customer Agreement**

The Customer Agreement referred to in Defendant's motions was executed by the parties in 1996.  The last transaction pursuant to that agreement took place in December of 2000.  Thereafter any relationship between the parties was terminated.  Plaintiffs established a relationship with Merrill Lynch in Jacksonville, Florida.  Plaintiffs' Merrill Lynch broker in Jacksonville has been foremost in assisting Plaintiffs in providing documentation in response to Defendant's requests following Plaintiffs' acceptance of Defendant's Rescission Offer.  He is the most knowledgeable witness from the Plaintiffs' side as to what has transpired.

Defendant has made clear in correspondence regarding this matter:

> In addition, you should be aware that the rescission offer was voluntary on Morgan Stanley's part and all of the trades in question fall outside of the five year statute of limitations period found in Section 95.11(4)(e) of the Florida Statutes.

It is clear from the above, Morgan Stanley considers the Customer Agreement unenforceable as against it.  Whether the relationship terminated in 2000 with the last transaction or upon the expiration of the applicable statute of limitations, the Customer Agreement ceased to control the relationship between the parties or survive as a viable contract.  Accordingly, neither its choice of law nor its forum selection provision remain extant and the numerous cases cited by Defendant have no bearing in this action. Plaintiffs are suing Defendant for the breach of a contract entered into between the parties in 2007: not on the defunct "customer agreement."

The approach by Morgan Stanley to Plaintiffs in Florida was unsolicited.  It was made by Morgan Stanley for its own purposes; to rectify its own misdeeds relating to a trade.  Whether the Rescission Offer is considered a new contract or a novation of the old is a question of fact which cannot be decided by a motion to dismiss.  In either case, it is clear no life remains in the Customer Agreement of 1996 and its terms cannot now be selectively revived.  The Customer Agreement simply has no application to this action.

The Rescission Offer was a lengthy and detailed document.  It set forth a variety of terms and conditions.  It did not, however, reference or seek to revive the original Customer Agreement.  It contained no forum selection clause or choice of law provision of its own.  To the contrary, it referenced the law of a number of different states as potentially applying.  It was Florida law that apparently had been violated by the trade and it should be Florida law that controls resolution of the dispute between the parties to a contract in Florida.

Plaintiffs' accepted Defendant's Rescission Offer.  They did so by executing and returning the Acceptance Form provided.  Additional time was needed to obtain documentation requested by Defendant.  That documentation, however, was not material to the offer and acceptance.  Rather, it was necessary only to verify disposition (which was ultimately verified) and calculate the rescission amount (which was ultimately determined).  While these matters were necessary for the ultimate performance of the new contract: they were not necessary for its acceptance.

The Defendant knew the Plaintiffs had purchased the security in question. Defendant knew within months after offering the securities for sale the securities were worthless and the sale questionable.  For its own reasons, however, it waited until the

statute of limitations expired on any action based on the Customer Agreement.  For this reason, Defendant anticipated that in most instances the securities would have been sold or disposed of.  It is the difficulty of obtaining proof after the passage of time that forms the basis for any statutes of limitation.

**C.**    **Venue is proper in the Middle District of Florida**

This action is not controlled by New York law.  That aspect of the Customer Agreement is not applicable to this action.  The Rescission Offer itself, the contract sued upon, does not contain a choice of law provision.  This contract was entered into in Florida and was to be performed in Florida.  The operative facts as to the disposition of the securities in question were carried out by persons in Florida and the witnesses knowledgeable of those facts and of Plaintiffs efforts to document disposition of the shares since January of 2007 are in Florida.  Correspondence to Defendant relating to the matter were sent to Massachusetts, not New York.  Defendant has not pointed the Court to a single witness or event that has bearing on this case or that has occurred since 2000, with any tie to New York.

There is no basis asserted then for transferring this action to the United States District Court for the Southern District of New York.  If the case is to be transferred at all it should be to the United States District Court for the Southern District of Florida where Defendant asserts Plaintiffs live.  Defendant, however, has not asked for that transfer to be made, but has stated not legally cognizable reason for sending it to New York.  The reason asserted is not a valid one.

D.    **Conclusion**

Defendant's motion to dismiss does not respond to the allegations of the Complaint.  Defendant did not reject the Acceptance Form when it was received.  Rather, as is alleged in this Complaint, which allegation is not contradicted by Defendant, Defendant requested additional documentation and in time got the additional documents requested.  Defendant now says the documents do not meet the substance of the offer.  Plaintiffs say they do.  Whether they do or don't is a disputed issue of fact which requires development through discovery.  Defendant cannot ignore its own conduct as alleged in the Complaint and argue now it did not extend the time for Plaintiffs' acceptance by requesting further documentation.

Ultimately Plaintiffs did meet all the requirements set forth in the Acceptance Form in the "permitted time frame" as extended by Defendants.  Defendants argue it reserved the absolute right to reject an acceptance of the offer that was not in proper form.  It also, however, reserved the right to waive any defect, irregularity or condition applicable to any particular acceptance.  It in fact did waive any defect, irregularity or condition associated with Plaintiffs' acceptance.  It cannot now claim it did not.

For the reasons set forth above, Defendant's motions should be denied.

> s/ Chris T. Harris
> Alan S. Wachs
> Florida Bar No.: 980160
> Chris T. Harris
> Florida Bar No.: 107115
> Jennifer M. Coleman
> Florida Bar No.: 13368
> Attorneys for Plaintiffs
> Robert A. Shaheen and
> Patricia S. Shaheen
> Volpe, Bajalia, Wickes,

Rogerson & Wachs, P.A.
501 Riverside Avenue, 7th Floor
Jacksonville, Florida 32202
(904) 355-1700
(904) 355-1797 (fax)
charris@vbwr.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 1, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Joseph C. Coates, Esq. and John D. Perry, Esquire, Greenberg Traurig, P.A., 777 S. Flagler Drive, Suite 300 East, West Palm Beach, FL 33401.

s/ Chris T. Harris
        Alan S. Wachs
        Florida Bar No.: 980160
        Chris T. Harris
        Florida Bar No.: 107115
        Jennifer M. Coleman
        Florida Bar No.: 13368
        Attorneys for Plaintiffs
        Robert A. Shaheen and
        Patricia S. Shaheen
        Volpe, Bajalia, Wickes,
        Rogerson & Wachs, P.A.
        501 Riverside Avenue, 7th Floor
        Jacksonville, Florida 32202
        (904) 355-1700
        (904) 355-1797 (fax)
        charris@vbwr.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


**ROBERT A. SHAHEEN**, an individual and
**PATRICIA S. SHAHEEN**, an individual,

        Plaintiffs,

v.                                                                  **Case No. 3:08-CV-212-J-25TEM**

**MORGAN STANLEY & CO. INC.**, etc.,
et al,

        Defendants.

_____/


## O R D E R

      This Cause is before the Court on Defendants' Motion to Dismiss for Failure to State a

Claim or in the Alternative to Transfer Case (Dkt. 8) and Plaintiffs' Response in Opposition to

Defendants, Motion. Upon consideration, the Court finds as follows:

**Background**

      Plaintiffs allege in their single count Complaint that Defendants breached the Parties'

securities rescission "contract." Evidently, Plaintiffs purchased shares of Petra Diamonds Limited

(Petra) from Defendants in June of 2000.  Trading of the stock was suspended shortly thereafter.

Plaintiffs contacted Petra and it offered to exchange the Petra shares for shares in another entity,

Oryx Natural Resources (Oryx).  Plaintiffs transferred the Petra shares to an account at Merrill

Lynch and then, evidently, to an entity named Arctic Investments per Petra's instructions.

Despite transferring the shares, Plaintiffs did not receive the promised Oryx shares in exchange.

      In 2007, Defendants sent a rescission offer (Offer) to certain investors, including

Plaintiffs. regarding Petra share transactions. Plaintiffs attempted to accept the Offer by filling out an acceptance form and providing certain documents. According to Defendants. the documents provided were insufficient to accept the Offer; acceptance required investors provide either a trade confirmation or month end statement. Evidently. Plaintiffs were unable to provide these documents because they transferred their shares to Arctic Investments and received nothing in return. According to Defendants, a contract was never formed because Plaintiffs failed to provide the required document(s).

According to Plaintiffs. they validly accepted the Offer from Defendants when they sent in the acceptance form despite their failure to provide Defendants with the requested documents and despite the fact that the Offer stated that Defendants reserve "...the absolute right to reject any or all acceptances of the Rescission Offer that are not in proper form. including for lack of satisfactory proof that the holder meets the definition of an Offeree..."

The Customer Agreement (Agreement) executed by the Parties when Plaintiffs opened their account with Defendants dictates that "any dispute...arising out of, relating to. or in connection with... any transaction [between the parties] shall be determined by arbitration or litigation..."

The Agreement also states "...when any dispute arises. any litigation must be instituted in the United States District Court for the Southern District of New York..." The Agreement includes a New York choice of law clause.

Evidently. Plaintiffs are residents of Boca Raton. Florida. which is located in the Southern District of Florida. Defendants are Delaware Corporations with their principal place of business in New York. New York. located in the Southern District of New York. According to

2

Defendants, the majority of the relevant witnesses and all of the relevant defense documents are located in the Southern District of New York.

In Defendants' motion to dismiss or transfer they argue that this action properly lies in the Southern District of New York because of the forum selection clause, the choice of law provision, and, additionally, because the nexus of the case is in New York.

Plaintiffs do not offer any explanation why this case's nexus is the Middle District of Florida but merely assert that they live in Florida and thus the Offer was made by Defendants to Plaintiffs in Florida and the contract was to be performed in Florida.

**Analysis**

As noted, the Parties entered into an Agreement containing a choice of forum and choice of law provision when the Plaintiffs opened their account(s).    The Eleventh Circuit has addressed choice of forum provisions in contracts:

> In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations. . .We conclude that when a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute. . . while factors [other than a forum selection clause] might 'conceivably' militate against a transfer ... the clear import of [ *Stewart* ] is that the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors.

*In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)

Plaintiffs counter that the Agreement is not the contract sued upon, the Offer does not

3

contain a forum selection clause and the Offer does not reference the Agreement  As to whether the Agreement is relevant to this case, on its face it applies to "any dispute...arising out of, relating to, or in connection with... any transaction [between the parties]."

Plaintiffs also make a rather unusual argument that Defendants "consider the Customer Agreement unenforceable as against it "because the trades fall outside the Florida Statutes five year statute of limitations."  Plaintiffs provide no case law to demonstrate that the passing of a particular statute of limitations voids a choice of forum clause in a contract.

Plaintiffs also contend that the Agreement is unenforceable because the last transaction pursuant to the Agreement took place in December of 2000 and thereafter any relationship was terminated.  Of course, Plaintiffs purchased the Petra shares under the Agreement in 2000. Thus, it appears that the share purchase and the rescission offer related to that purchase falls under the Agreement's "any dispute" language.

Defendants alternatively argue that even if the Agreement's forum and choice of law selection clauses are not applicable to this action, venue is improper.  Defendants note the rescission offer was made in New York and that its witnesses are located in New York.

As noted above, Plaintiffs assert that venue is proper in the Middle District of Florida because they entered into the "contract" in Florida.   While Plaintiffs allege a connection to Florida, Plaintiffs utterly fail to allege any kind of a tie to the Middle District of Florida. Curiously, Plaintiffs seek to have the case tried in Jacksonville merely because they "have established a relationship with Merrill Lynch in Jacksonville..."

In sum, even if the Court found that the Agreement's choice of forum was inapplicable

4

to the Offer, it appears this case has no relationship, much less its nexus, in the Middle District of Florida. This case will be transferred to the Southern District of New York. Accordingly, it is

**ORDERED:**

1. Defendants' Motion to Dismiss for Failure to State a Claim or in the Alternative to Transfer Case (Dkt. 8) is **GRANTED**;

2. The Clerk is directed to close the file and transfer this case to the United States District Court for the Southern District of New York.

**DONE AND ORDERED** at Jacksonville, Florida, this ___ day of ___ 2008.

**HENRY LEE ADAMS, JR.**
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record
Courtroom Deputy

5